**Exhibit A**



**Jarrod L. Schaeffer**
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

September 9, 2024

**By EMAIL**

Alexander Solomon, Esq.
Robert Pollack, Esq.
United States Attorney's Office
Eastern District of New York
Email:  Alexander.Solomon@usdoj.gov
              Robert.Pollack@usdoj.gov

> Re:    *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, 24 Cr. 346 (BMC) (TAM)

Counsel:

As you know, we represent Linda Hu in the above-referenced case.  We write pursuant to Federal Rule of Criminal Procedure 16(a) to request that the government promptly provide all discoverable material in this case including, but not limited to, any (*i*) oral, written, or recorded statements alleged to have been made by our client; (*ii*) reports or results of any examinations or tests; and (*iii*) copies of all books, papers, documents, data, photographs, and information regarding tangible objects, buildings, or places that were obtained from or belong to a defendant, that the government intends to use in its case-in-chief at trial, or that otherwise may be material to preparing the defense in this case.

Based on our review to date of the indictment in this case, we specifically request production of all information and material in the government's possession, custody, or control concerning or regarding the following:

1. Names and contact information for the following individuals and entities or, if represented, their counsel:

    - CC-1;
    - CC-2;
    - The Associate;
    - The Relative;
    - The Business Partner;
    - Association-1;
    - Association-2;
    - Company-1;
    - Company-1 Owner;

- The Director;
- Delegate-1;
- Delegate-2;
- Delegate-3;
- Delegate-4;
- The Consul;
- Office of Correspondence employee
- Financial Institution-1;
- Politician-1;
- Politician-2;
- PRC Official-1;
- PRC Official-2;
- PRC Official-3; and
- PRC Official-4.

2. Names and contact information for each person who supervised Linda Hu in each of the state government roles she performed or, if represented, their counsel;

3. All communications referenced in the indictment, including the full conversations of which those communications were a part;

4. All communications between federal authorities or agencies and principals, employees, or representatives of the New York State Executive Chamber concerning or regarding any matter referenced in the indictment;

5. All communications between federal authorities or agencies and principals, employees, or representatives of the New York State Inspector General concerning or regarding any matter referenced in the indictment;

6. All communications between federal authorities or agencies and principals, employees, or representatives of any state law enforcement agency concerning or regarding any matter referenced in the indictment;

7. All communications with or among principals, employees, or representatives of the New York State Executive Chamber concerning or regarding Linda Hu's authority, duties, and/or responsibilities in each of the state government roles she performed;

8. All communications with or among principals, employees, or representatives of the New York State Executive Chamber concerning or regarding all of the events referenced in the indictment;

9. All descriptions of authority, duties, and/or responsibilities of each state government role performed by Linda Hu;

10. All policies, rules, or guidance regarding any general protocols and procedures that were applicable to Linda Hu in each of her state government roles;

11. All training materials regarding any general protocols and procedures during the period relevant to the indictment, including any certifications or other confirmation of Linda Hu's receipt or completion of such training;

12. All policies, rules, or guidance regarding ethics and required disclosures that were applicable to Linda Hu in each of her state government roles;

13. All training materials regarding ethics and disclosure policies, rules, or guidance during the period relevant to the indictment, including the ethics presentations referenced in the indictment, along with any certifications or other confirmation of Linda Hu's attendance at those presentations;

14. All policies, rules, or guidance regarding the process or requirements for obtaining and/or presenting proclamations that were applicable to Linda Hu and operative during the period relevant to the indictment;

15. All training materials regarding the process or requirements for obtaining and/or presenting proclamations during the period relevant to the indictment, including any certifications or other confirmation of Linda Hu's receipt or completion of such training;

16. All policies, rules, or guidance regarding the process or requirements for obtaining and/or providing invitation letters that were applicable to Linda Hu and operative during the period relevant to the indictment;

17. All training materials regarding the process or requirements for obtaining and/or providing invitation letters during the period relevant to the indictment, including any certifications or other confirmation of Linda Hu's receipt or completion of such training;

18. All policies, rules, or guidance regarding the process or requirements for signing, stamping, and/or authorizing documents on behalf of any member of the New York State Executive Chamber that were applicable to Linda Hu and operative during the period relevant to the indictment;

19. All training materials regarding the process or requirements for signing, stamping, and/or authorizing documents on behalf of any member of the New York State Executive Chamber during the period relevant to the indictment, including any certifications or other confirmation of Linda Hu's receipt or completion of such training

20. All policies, rules, or guidance regarding positions taken by Politician-1, Politician-2, and/or their respective administrations regarding the People's Republic of China ("PRC") during the period relevant to the indictment;

21. All training materials regarding positions taken by Politician-1, Politician-2, and/or their respective administrations regarding the PRC, including any certifications or other confirmation of Linda Hu's receipt or completion of such training;

22. All policies, rules, or guidance regarding positions taken by Politician-1, Politician-2, and/or their respective administrations regarding Taiwan during the period relevant to the indictment;

23. All training materials regarding positions taken by Politician-1, Politician-2, and/or their respective administrations regarding Taiwan, including any certifications or other confirmation of Linda Hu's receipt or completion of such training;

24. All benefits alleged to have been received by Linda Hu, including any gifts, payments, or other incentives, along with the dates such benefits were supposedly received;

25. All financial records reflecting any benefits alleged to have been received by Linda Hu;

26. All electronic data obtained from any device or accounts owned, controlled, used, maintained, or subscribed to by Linda Hu;

27. All electronic data from any devices or accounts that the government has deemed to be lawfully seized pursuant to any search warrant;[1]

28. The interview that the Federal Bureau of Investigation ("FBI") allegedly conducted of Linda Hu on or about July 15, 2020, including any related reports, notes, records, recordings, and communications;

29. Any additional interviews that the FBI allegedly conducted of Linda Hu, including any related reports, notes, records, recordings, and communications;

30. The interview that the New York State Inspector General allegedly conducted of Linda Hu on or about February 14, 2023, including any related reports, notes, records, recordings, and communications;

31. Any additional interviews that the New York State Inspector General allegedly conducted of Linda Hu, including any related reports, notes, records, recordings, and communications;

32. The assertion that "[t]he position of the United States was to acknowledge that the PRC government claimed sovereignty over Taiwan and to not have formal

---

[1] *See, e.g.*, *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017); *United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012).

official diplomatic relations with Taiwan, while maintaining a robust unofficial relationship";[2]

33. The assertion that the Taipei Economic and Cultural Representative Office in the United States ('TECO') in Washington, D.C., served "as the de facto, but unofficial, embassy of Taiwan";[3]

34. The assertion that "TECRO representatives regularly met with high-ranking officials from the U.S. government";[4]

35. The assertion that "[n]either Politician-1 nor Politician-2 had a policy regarding whether to formally recognize Taiwan; accordingly, neither office had a policy or practice regarding whether to communicate or meet with Taiwanese representatives";[5]

36. The assertion that Linda Hu "obtained [a] proclamation . . . outside ordinary channels and did not follow protocol by seeking supervisory authorization to create such a proclamation";[6]

37. The assertion that the United Front Work Department ("UFWD") was a department of the Chinese Communist Party ("CCP") that "attempted to manage relationships with and generate support for the CCP among elite individuals inside and outside the PRC, including by gathering human intelligence";[7]

38. The assertion that the Overseas Chinese Affairs Office became directly managed by the UFWD after 2018;[8]

39. The assertion that the activities of CC-1 and CC-2 allegedly "were supervised, directed, and controlled by PRC government officials";[9]

40. The assertion that Linda Hu "acted at the order, direction, or request of representatives of the PRC government and the CCP to engage in political activities intended to influence the public, including the NYS government, with respect to the political or public interests of the PRC government and the CCP."[10]

---

[2] Ind. ¶ 22.
[3] *Id.*
[4] *Id.* ¶ 23.
[5] *Id.*
[6] *Id.* ¶ 36
[7] *Id.* ¶ 3.
[8] *Id.* ¶ 78.
[9] *Id.* ¶ 39.
[10] *Id.* ¶ 20.

41. Linda Hu's knowledge, if any, that the activities of CC-1 and CC-2 allegedly "were supervised, directed, and controlled by PRC government officials";[11]

42. The offense charged in Count One, as well as each of the overt acts alleged in connection with that count;

43. The offenses charged in Counts Two through Seven;

44. Linda Hu's knowledge, if any, of the alleged bank fraud conspiracy charged against Chris Hu in Count Eight;

45. Linda Hu's knowledge, if any, of the alleged of means of identification charged against Chris Hu in Count Nine; and

46. The offense charged in Count Ten.

The specific requests included above are provided in order to elucidate for the government particular matters that the defense considers relevant to its preparations for trial. *Cf. United States v. Agurs*, 427 U.S. 97, 104–06 (1985); *United States v. Vozzella*, 124 F.3d 389, 392 (2d Cir. 1997). For the avoidance of doubt, however, these specific requests are in no way exhaustive and do not waive any right to other discovery not explicitly referenced herein. Rather, we expressly request prompt production of all information and material required to be produced by the government pursuant to all applicable constitutional provisions, statutes, rules, and policies, including anything (in whatever form) that is potentially material to preparing the defense in this case.

In addition to the foregoing, we further request immediate production of all information and material required to be produced pursuant to Federal Rule of Criminal Procedure 5(f); *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, including any material that "could reasonably be taken to put the whole case in such a different light as to undermine confidence in [any] verdict" against our client. *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). We specifically request production of any communications, statements, documents, or other information that undermines, calls into question, or reflects a different understanding of any facts alleged in the indictment. In locating, reviewing, identifying, and producing such material, we encourage the government to abide by the Justice Manual requirements set forth in Section 9-5.001, which direct prosecutors, among other things, to make disclosures beyond a narrow interpretation of constitutional and other legal requirements.

We ask that the information and material requested herein be produced as soon as possible, and that the government respond to these requests no later than **September 20, 2024**, so that we will have sufficient time to bring any disputes to the attention of Judge Cogan at the parties' initial appearance on September 25, 2024.

---

[11] *Id.*

If you have any questions regarding these requests or would like to discuss any of the information or material sought, please do not hesitate to contact us.

        Very Truly Yours,

        *Jarrod L. Schaeffer*

        Jarrod L. Schaeffer

        ABELL ESKEW LANDAU LLP
        256 Fifth Avenue, 5th Floor
        New York, NY 10001
        (646) 970-7339
        jschaeffer@aellaw.com

cc:    Kenneth M. Abell, Esq.
       Scott Glicksman, Esq.