UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

LINDA SUN,

    a/k/a "Wen Sun," "Ling Da Sun," and
    "Linda Hu," and

CHRIS HU,

                    *Defendants*.

24 Cr. 346 (BMC) (TAM)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF LINDA SUN'S MOTION TO DISMISS THE INDICTMENT**

ABELL ESKEW LANDAU LLP

Kenneth M. Abell
Jarrod L. Schaeffer
Scott Glicksman
256 Fifth Avenue, 5th Floor
New York, NY 10001

*Counsel for Linda Sun*

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    THE GOVERNMENT'S OPPOSITION APPLIES THE WRONG STANDARD ............ 2

II.    THE FARA COUNTS MUST BE DISMISSED ................................................ 4

    A.    The Indictment does not allege essential facts and elements ..................................... 5

    B.    The Indictment does not sufficiently allege willfulness .......................................... 12

    C.    The Indictment does not sufficiently allege efforts to influence ............................. 13

    D.    The Indictment does not sufficiently allege a conspiracy to violate FARA ............ 14

    E.    The government's opposition underscores the profound consequences resulting
        from its novel application of FARA ........................................................................ 15

III.    THE VISA FRAUD AND ALIEN SMUGGLING COUNTS MUST BE DISMISSED .. 19

IV.    THE MONEY LAUNDERING CONSPIRACY COUNT MUST BE DISMISSED ....... 21

CONCLUSION ..................................................................................................................... 23

# Table of Authorities

**Cases**

*Att'y Gen. of United States v. Irish N. Aid Comm.*, 668 F.2d 159 (2d Cir. 1982) .............. 6, 12, 18

*Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298 (1994)............................ 18

*Bryan v. United States*, 524 U.S. 184 (1998) ............................................................................... 12

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ................................................ 13

*French American Banking Corp. v. Flota Mercante Grancolombiana, S.A.*,
   752 F. Supp. 83 (S.D.N.Y. 1990) ............................................................................................ 20

*Gebardi v. United States*, 287 U.S. 123 (1932)............................................................................ 14

*Hamling v. United States*, 418 U.S. 87 (1974).............................................................................. 22

*Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018) ......................................................................... 16

*Jones v. United States*, 529 U.S. 848 (2000)................................................................................. 18

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013) ....................................................... 16

*Snyder v. United States*, 144 S. Ct. 1947 (2024).................................................................... 15, 16

*United States v. Alshahhi*, No. 21-CR-371 (BMC), 2022 WL 2239624
   (E.D.N.Y. June 22, 2022), *recons. denied*, 2022 WL 3595056 (E.D.N.Y. Aug. 23, 2022)......... 5

*United States v. Amen,* 831 F.2d 373 (2d Cir. 1987) .................................................................... 14

*United States v. Amirnazmi*, No. 08 Cr. 429-01, 2009 WL 32481 (E.D. Pa. Jan. 5, 2009),
   *aff'd*, 645 F.3d 564 (3d Cir. 2011) ............................................................................................ 9

*United States v. Foley*, 73 F.3d 484 (2d Cir. 1996) ............................................................. 3, 4, 10

*United States v. Gotti*, 457 F. Supp. 2d 411 (S.D.N.Y. 2006) ...................................................... 3

*United States v. Ho*, 984 F.3d 191 (2d Cir. 2020) ..................................................................... 5, 6

*United States v. Hoskins,* 902 F.3d 69, 77 (2d Cir. 2018) ........................................................... 14

*United States v. Lanier*, 520 U.S. 259 (1997) .............................................................................. 19

*United States v. Lira*, No. 22 Cr. 151 (LGS), 2022 WL 17417129
   (S.D.N.Y. Dec. 5, 2022)..................................................................................................... 13, 14

*United States v. Mariani*, 725 F.2d 862 (2d Cir. 1984) ................................................................ 3

*United States v. Menendez*, 720 F. Supp. 3d 301 (S.D.N.Y. 2024) ....................................... 17, 18

*United States v. Michel*, No. Cr. 19-148-1 (CKK), 2023 WL 2388501 (D.D.C. Mar. 6, 2023),
   *recons. denied*, 2023 WL 7140000 (D.D.C. Mar. 21, 2023), *op. clarified*, 2023 WL 7140057
   (D.D.C. Mar. 30, 2023)............................................................................................................ 13

*United States v. Nordlicht*, No. 16-CR-00640 (BMC),
   2019 WL 286895 (E.D.N.Y. Jan. 22, 2019)............................................................................... 4

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)............................................................... passim

*United States v. Rafiekian*, 991 F.3d 529 (4th Cir. 2021) ............................................................ 10

*United States v. Robare*, No. 07 Cr. 373 (FJS), 2011 WL 10583565 (N.D.N.Y. Jan. 3, 2011), *aff'd*, 469 F. App'x 38 (2d Cir. 2012) ........................................................................................ 7

*United States v. Santos*, 553 U.S. 507 (2008) .............................................................................. 18

*United States v. Serrano,* 191 F. Supp. 3d 287 (S.D.N.Y. 2016) .................................................. 7

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ................................................. passim

*United States v. Stringer,* 730 F.3d 120, 126 (2d Cir. 2013) ...................................................... 19

*United States v. Thompson*, 141 F. Supp. 3d 188 (E.D.N.Y. 2015), *aff'd*, 896 F.3d 155 (2d Cir. 2018) ...................................................................................... 3, 4, 6

*United States v. Tonelli*, 577 F.2d 194 (3d Cir. 1978) ................................................................ 19

*United States v. Vendetti*, No. 10 Cr. 360 (RJA) (JJM), 2013 WL 5522860 (W.D.N.Y. Jan. 22, 2013), *rep. and rec. adopted*, 2013 WL 5522434 (W.D.N.Y. Oct. 3, 2013) ............................ 7

*United States v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999) .............................................................. 22

**Statutes**

8 U.S.C. § 1324 ............................................................................................................................. 20

18 U.S.C. § 219 ............................................................................................................................. 17

18 U.S.C. § 921 ............................................................................................................................... 7

18 U.S.C. § 1546 ........................................................................................................................... 20

18 U.S.C. § 1956 ........................................................................................................................... 22

22 U.S.C. § 613 ..................................................................................................................... 8, 9, 18

**Other Authorities**

BLACK'S LAW DICTIONARY (12th ed. 2024) .................................................................................. 20

MERRIAM-WEBSTER.COM DICTIONARY ....................................................................................... 20

**Rules**

Fed. R. Crim. P. 7 ............................................................................................................................ 8

## PRELIMINARY STATEMENT

The government's opposition primarily pursues a single goal: reframe Ms. Sun's arguments as challenges to the sufficiency of the evidence. But the arguments in her motion do not, as the government claims, ask the Court to weigh the evidence in this case. Rather, the motion details essential facts and elements that the Indictment failed to allege, and which were necessary to state offenses or bring conduct that is alleged within the scope of the charged statutes. Those challenges are properly cognizable on a motion to dismiss.

The counts against Ms. Sun must be dismissed because the law imposes baseline sufficiency requirements and does not stack the deck with favorable inferences like the government wants. While sufficiency requirements do not trip up the government often, that hardly means they are unimportant or that the government did not stumble here. And saying a lot is not the same as saying what the law requires. For Ms. Sun, getting to trial may be a long, arduous, and costly process during which she labors under a cloud of suspicion while the government hoards assets it seized from her family. Nor are the burdens confined to Ms. Sun herself, as ongoing publicity of the government's accusations damage her reputation and complicate the lives of her family members. The Constitution and the Federal Rules of Criminal Procedure forestall such hardships when an indictment does not meet a certain threshold. This one falls short in crucial ways.

For the sake of brevity, this reply does not reiterate every point in Ms. Sun's prior submission that the government failed to refute. Moreover, the government already conceded—either overtly or by avoiding them entirely—a number of revealing points:

- The Indictment never alleges that any actions supposedly taken by Ms. Sun were contrary to national or state foreign policy.

- The Indictment never alleges a quid pro quo linked to any action allegedly undertaken by Ms. Sun.

- The Indictment never alleges any particular orders, directions, or requests to Ms. Sun by anyone at the PRC consulate.[1]

- The Indictment never expressly alleges that Ms. Sun took actions pursuant to the authority of, or out of obligation to, anyone at the PRC consulate, CC-1, or CC-2.

- The Indictment never alleges that any actions supposedly taken by Ms. Sun predominantly served a foreign interest, as required under FARA.

- The Indictment's allegations regarding non-public actions or activities occurring outside the United States cannot constitute violations of FARA.

- The Indictment never alleges that Ms. Sun ever discussed FARA with anyone at the PRC consulate, CC-1, or CC-2, nor does it allege facts about making any agreement to violate FARA.

- The Indictment never alleges that the Invitation Letter was material, let alone materially false. Nor does the Indictment allege that Ms. Sun knew the Invitation Letter was supposedly unauthorized or unapproved.

With those concessions and omissions out of the way, we turn to arguments that the government did make. For the reasons that follow, all of them lack merit.

## ARGUMENT

## I. THE GOVERNMENT'S OPPOSITION APPLIES THE WRONG STANDARD

The government's opposition uses the wrong standard for evaluating the sufficiency of an indictment. Everyone agrees that even where factual allegations are mistaken or wrong, the defense is stuck with them for purposes of this motion. But the government demands fealty not only to allegations that *are* in the Indictment, but also to ones that are *not*—including some essential allegations that the government felt forced to add in its opposition. That is not the law.

---

[1]    For the Court's convenience, all names and abbreviations used in this reply are the same as in Ms. Sun's prior submission. As before, case text quotations omit all internal alterations, citations, footnotes, and quotation marks unless otherwise indicated.

The government gets there by asserting two things. First, it says that "[o]n pretrial motions to dismiss, factual allegations are accepted as true." (Dkt. 52 ("Opp.") at 10.) Fair enough; Ms. Sun already agreed that the Court must assume the Indictment's allegations are true. (*See* Dkt. 46 ("Br.") at 5 n.2.) Second, however, the government claims the Indictment must be construed "in the light most favorable to the [g]overnment." (Opp. 10.) That is wrong. If that framing sounds suspiciously like the standard for evaluating the sufficiency of evidence after trial, that is because it is. Indeed, the government got to that standard by quietly swapping "evidence" for "allegations" while quoting from a decision discussing "the rare circumstance in which the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." *United States v. Gotti*, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006).[2] (*See* Opp. 10.) But that standard is markedly different from how courts assess the sufficiency of an indictment.

In fact, "a defendant who objects to the indictment before trial . . . is entitled to a more exacting review of the indictment than one who waits until after trial to object." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *United States v. Thompson*, 141 F. Supp. 3d 188, 195 (E.D.N.Y. 2015), *aff'd*, 896 F.3d 155 (2d Cir. 2018) (same). By seeking the benefit of every inference, the government also ignores that implicit elements must be alleged "explicitly," *United States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996), and it fails to appreciate that "in 'certain statutes specification of how a particular element will be met (as opposed to categorical recitation of the element) is of such importance to the fairness of the proceeding that it must be spelled out in the indictment.'" *Thompson*, 141 F. Supp. 3d at 194 (quoting *United States v. Stringer*, 730 F.3d 120, 126 (2d Cir. 2013)).

---

[2]     *Gotti*, in turn, quoted *United States v. Mariani*, 725 F.2d 862 (2d Cir. 1984), which recounted the standard for reviewing a judgment of acquittal entered pursuant to Fed. R. Crim. P. 29, not the standard for a motion to dismiss an indictment. *See id.* at 865.

Under the correct standard, the Court assumes the Indictment's allegations to be true. *United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2019 WL 286895, at \*1 (E.D.N.Y. Jan. 22, 2019). However, it also evaluates the Indictment "as it was actually drawn, not as it might have been drawn." *Pirro*, 212 F.3d at 92 (citing *Sanabria v. United States*, 437 U.S. 54, 65–66 (1978)). The Court does not put its thumb on the scale by "[v]iewing the Indictment's allegations in the light most favorable to the government" (Opp. 11), nor—as the government later implies—does it invoke "circumstantial evidence" to supply missing allegations. (*Id.* at 16.) To the contrary, the Indictment is deemed to include only those "facts which are *necessarily* implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)) (emphasis added). Finally, the Court evaluates whether an indictment has explicitly alleged all implicit elements and essential facts. *See Foley*, 73 F.3d at 488; *Thompson*, 141 F. Supp. 3d at 194–95.

Applying its standard, the government repeatedly mischaracterizes Ms. Sun's arguments and opposes a sufficiency-of-the-evidence motion that was never made. Applying the correct standard, it is clear that the Indictment's allegations are deficient.

## II. THE FARA COUNTS MUST BE DISMISSED

Ms. Sun's prior submission detailed essential facts and elements that were missing from this Indictment. The government does not seriously suggest those were alleged; it argues instead that other allegations, when supplemented by every favorable inference one might draw, are sufficient to do the bare minimum required of an indictment.[3] The government is incorrect.

---

[3] The government repeatedly suggests that the Indictment is sufficient because it is long. (*See, e.g.*, Opp. 15, 25.) But as Ms. Sun pointed out before, length is no substitute for substance. (*See* Br. 1.) Yes, the Indictment contains 113 paragraphs, but that does not mean those paragraphs contain what is legally required to render the Indictment sufficient.

### A. The Indictment does not allege essential facts and elements

At most, this Indictment alleges generically that Ms. Sun "took actions at the order, request, or direction of [the] PRC government and CCP representatives."[4] (Ind. ¶ 13; *see also id.* ¶¶ 20, 113.) That is not enough because "when the definition of an offense includes 'generic terms,'" an indictment "must descend to particulars," *Stavroulakis*, 952 F.2d at 693 (quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)), and "describe a particular criminal act, rather than a type of crime." *Pirro*, 212 F.3d at 93. This Indictment also never expressly alleges foreign agency within FARA's scope, because it never alleges that the PRC exercised "power" over Ms. Sun or that there was "some sense of obligation on [her] part . . . to achieve the [PRC]'s request," DOJ Guidance at 3; *see also United States v. Alshahhi*, No. 21-CR-371 (BMC), 2022 WL 2239624, at *5 (E.D.N.Y. June 22, 2022), *recons. denied*, 2022 WL 3595056 (E.D.N.Y. Aug. 23, 2022), which is necessary to satisfy even the lowest "request" rung of FARA's statutory ladder. Those limitations are essential aspects of a "request," because otherwise FARA "would sweep within . . . [its] scope many forms of conduct that Congress did not intend to regulate," causing absurd results.[5] *Att'y Gen. of United States v. Irish N. Aid Comm.* ("*INAC*"), 668 F.2d 159, 161 (2d Cir. 1982). And regardless of whether its counts otherwise "track[] the language of the statute," the Indictment is

---

[4]    As Ms. Sun previously observed, "federal pleading requires that an indictment charge in the conjunctive to inform the accused fully of the charges." *United States v. Ho*, 984 F.3d 191, 211 (2d Cir. 2020) (quoting *United States v. McDonough*, 56 F.3d 381, 390 (2d Cir. 1995)). Allegations that she acted "at the order, request, *or* direction" of a foreign principal do not conform to that requirement. (Br, 21 n.21.) The government offered no response to that deficiency.

[5]    The government says the Second Circuit misunderstood the need to cabin FARA because the statute already "exempts contributions solely for 'medical aid and assistance' as covered conduct." (Opp. 12 (quoting 22 U.S.C. § 613(d)(3); *see also id.* at 15.) There are a couple problems with that argument. First, the Second Circuit expressed concern about sweeping in "general plea[s] for *political or financial* support," *INAC*, 668 F.2d at 161–62 (emphasis added), so the government's response falls short. Second, irrespective of the government's views about the wisdom of limiting FARA, that is what the Second Circuit did.

insufficient because it "fails to allege the implicit element explicitly." *Pirro*, 212 F.3d at 93 (quoting *Foley*, 73 F.3d at 488). As discussed previously and below, the Second Circuit's limiting construction takes on special significance in this case because the government's arguments raise serious constitutional questions.

Although the government studiously avoids those issues, courts in this circuit do not.[6] Consider *United States v. Thompson*. In that case, Judge Glasser dismissed several counts from the indictment as insufficiently alleged. *See* 141 F. Supp. 3d at 195, 198. Although those counts "essentially track[ed] the statutes,"[7] *id.* at 192, they were deficient because the statutory language—in particular, the phrase "sexual activity for which any person can be charged with a criminal offense"—did not provide sufficient particularity. *Id.* at 196. Here, the phrase "at the order, request, or under the direction or control" similarly defines "the very core of criminality" and is "central to every prosecution under" FARA, so the Indictment must particularize the orders, requests, or directions allegedly spawning the charged offenses. *Id.*; *see also United States v. Vendetti*, No. 10 Cr. 360 (RJA) (JJM), 2013 WL 5522860, at *7 (W.D.N.Y. Jan. 22, 2013), *rep. and rec. adopted*, 2013 WL 5522434 (W.D.N.Y. Oct. 3, 2013) (citing *Pirro* and dismissing counts because individual acts were necessary to advise the defendant of the "core of criminality" and the allegations left "the government with the power to 'roam at large' in selecting the transactions to

---

[6]     The only case the government even references is *Pirro*, which is cited in passing and only to dismiss it as irrelevant to willfulness because it was about "tax charges." (Opp. 20.)

[7]     The sole difference noted in the decision was that the *Thompson* indictment charged offenses in the conjunctive, while the relevant statutes stated those offenses in the disjunctive. As noted, such modifications are necessary to provide adequate notice. *See Ho*, 984 F.3d at 211.

submit to the trial jury, including those that may have never been presented to the grand jury"). It does not.[8]

Or take *United States v. Serrano*, in which Judge Pauley dismissed a count for "failure to allege [an] essential element." 191 F. Supp. 3d 287, 289 (S.D.N.Y. 2016). Again, the dismissed count had tracked the relevant statute. *See id.* But what the defendant was accused of illegally possessing—"body armor"—was in fact "a defined term." *Id.* at 289–90. The applicable statute only covered "body armor" that was "sold or offered for sale, in interstate or foreign commerce," 18 U.S.C. § 921(a)(35), and since that "essential jurisdictional element . . . [wa]s concealed in an unreferenced, subsidiary statutory provision," it "[wa]s not sufficient for the grand jury's [i]ndictment to 'track' the 'generic terms' of the overarching statute, and omit mention of the element." *Serrano*, 191 F. Supp. 3d at 290; *see also United States v. Robare*, No. 07 Cr. 373 (FJS), 2011 WL 10583565, at *2 (N.D.N.Y. Jan. 3, 2011), *aff'd*, 469 F. App'x 38 (2d Cir. 2012) (dismissing count for "failing to include the specific fact that [a] shotgun had been modified to make it a firearm within the meaning of the statute," because it was "an essential element of the crime" and "[n]ot all shotguns are firearms as that term is defined in the statute"). Here, a subsidiary statutory provision likewise contains an important limitation: FARA does not cover "activities not serving predominantly a foreign interest." 22 U.S.C. § 613(d)(2). The Indictment was required to do more than provide a bare statutory recitation missing essential aspects of the charged offenses.

---

[8] The government complains that it cannot provide further allegations because its "proof does not include recorded telephone calls in which PRC Officials direct [Ms.] Sun's actions." (Opp. 16.) But *alleging* that legally sufficient orders, directions, or requests occurred is not the same as *proving* them in any particular manner. At trial, the government may seek to offer appropriate circumstantial evidence short of "recorded" communications. (*Id.*) If the Indictment cannot even allege that Ms. Sun acted pursuant to some foreign authority or obligation, however, then it does not charge offenses within FARA's scope and no trial is warranted.

*Thompson* and *Serrano* would have come out differently if they had accepted what government argues here: that "a jury will be entitled to hear the evidence . . . and determine for itself whether that evidence proves beyond a reasonable doubt" (Opp. 9) that alleged "sexual activity" was conduct "for which any person can be charged with a criminal offense" (*Thompson*) or that "body armor" was "sold or offered for sale, in interstate or foreign commerce" (*Serrano*). As the dismissals in those cases show, while the truth of such allegations is a question for trial, whether all "essential facts constituting the offense charged" are sufficiently alleged, Fed. R. Crim. P. 7(c), is a legal question about an indictment's sufficiency. And courts properly address such questions on motions to dismiss.

The government never addresses any of that. Instead it tries a few different arguments, all of which reduce to the same strategy: recast Ms. Sun's arguments as challenges to the sufficiency of the evidence. For instance, the government suggests that Ms. Sun's motion is "premature" because it "is not required at this stage of the case to present factual evidence in support of [her] guilt" and an indictment need not "include all of the government's factual evidence." (Opp. 1, 4.) Those arguments are red herrings. Ms. Sun's motion never claimed that the government had made a full factual proffer or demanded that it substantiate the Indictment's factual allegations. Rather, she showed that the Indictment failed to *allege* essential facts and elements necessary to locate her purported conduct within the scope of the governing criminal statutes. Next, the government argues that it "has not made such a full proffer of its evidence," so the Court should "revisit this question in the form of a Rule 29 motion at the close of the government's case." (Opp. 7.) But this is just another distraction, as Ms. Sun is not challenging the "sufficiency of the evidence." (*Id.* at 9.) Her motion focused on legally deficient facts and elements bearing on the Indictment's sufficiency, not whether the government's factual allegations are wrong or unsupported by

evidence. Properly recognizing that distinction sidelines practically all of the government's arguments.[9]

When it finally turns to the "merits," the government summons straw men. It claims, for example, that Ms. Sun "argue[d] that unless the Indictment cites verbatim taskings from the PRC government or the CCP, pretrial dismissal of the FARA charges is appropriate." (Opp. 11.) Not so. Ms. Sun's motion did not argue that the government must allege exactly what a foreign principal said, but rather that the Indictment must allege some qualifying order, direction, or request *occurred*. Without that, the Indictment omits an essential element and fails to provide "enough detail" so that Ms. Sun "may plead double jeopardy in a future prosecution based on the same set of events."[10] *Stavroulakis*, 952 F.2d at 693. Another straw man appears when the government claims that Ms. Sun asked the Court "to construe as a matter of law" that her alleged actions "constitute 'other activities not serving predominantly a foreign interest.'" (Opp. 16 (quoting 22 U.S.C. § 613(d)(2)).) She did nothing of the kind. Ms. Sun merely pointed out that because only activities predominantly serving a foreign interest are *within the scope of the statute*, the Indictment was required to allege as much. (*See* Br. 19.) Whether or not the evidence actually proves that allegation is a matter for trial, but whether her alleged conduct comes within FARA's

---

[9]     For instance, it makes clear that Ms. Sun is not arguing, as the defendant did in *United States v. Amirnazmi*, No. 08 Cr. 429-01, 2009 WL 32481 (E.D. Pa. Jan. 5, 2009), *aff'd*, 645 F.3d 564 (3d Cir. 2011), that certain "counts should be dismissed as the factual allegations . . . do not *demonstrate* that [she] acted subject to the direction or control of a foreign government or official," *id.* at *3 (emphasis added), but rather that the Indictment does not sufficiently *allege* those counts given the legal principles governing their scope, elements, and application.

[10]     This becomes clear if one asks, "What set of events"? Failing to allege any orders, directions, or requests necessarily omits anything about who they came from, what they concerned, and when, where, or how they happened. Without any of those essential facts, the government could freely substitute one alleged order, direction, or request for another to defeat any double jeopardy assertion—especially where, as here, both FARA offenses cover years-long periods.

scope is properly resolvable on a motion to dismiss. Ms. Sun clearly argued the latter, to which the government offered no response.

The government's remaining arguments trade on deflection. Noting that "an agency relationship may be proved through . . . circumstantial evidence" (Opp. 12), the government cautions that "savvy operators" like "PRC consular officials" tend to "cover their tracks," and so "direct evidence of a foreign principal's request" is not required. (*Id.* at 14–15.) Who said it was? Of course the government can rely on appropriate circumstantial evidence to prove its case at trial. *Cf. United States v. Rafiekian*, 991 F.3d 529, 545 (4th Cir. 2021) ("[I]f the prosecution is to prove that a defendant acted as an 'agent of a foreign government,' it may need to rely on circumstantial evidence and reasonable inferences to make its case—as it is entitled to do."). But—and this is the important bit—this is not trial. *Compare id.* at 544 (considering grant of acquittal entered after trial). Just because the government may try to *prove* its case through circumstantial evidence does not mean it has *alleged* what is legally required.

At bottom, the government is really asking the Court to supply missing allegations based on inferences from other facts alleged in the Indictment; that, ultimately, is what the government means when it claims victory based on "[v]iewing the Indictment's allegations in the light most favorable to the government."[11] (Opp. at 11.) And that is improper for a host of reasons. First, as noted above, essential elements—even those "implicit" in a statute—must be alleged "explicitly," *Foley*, 73 F.3d at 488, and the government cannot get around that rule by transmuting evidentiary inferences into new allegations. Second, courts will only infer "facts which are *necessarily implied* by the specific allegations made." *Stavroulakis*, 952 F.2d at 693 (emphasis added). As

---

[11]     Notably, the government never says whether it would prevail should the Court evaluate the Indictment "as it was actually drawn, not as it might have been drawn." *Pirro*, 212 F.3d at 92.

demonstrated throughout Ms. Sun's prior submission, none of the Indictment's omissions are "necessarily implied" by other allegations (to the contrary, some of the government's favored inferences are internally contradictory or downright illogical). Third, the Fifth Amendment requires sufficient "factual particularity" precisely "to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Pirro*, 212 F.3d at 92 (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)). Adding essential facts supposedly inferable from other allegations or circumstantial evidence to be unveiled at trial runs counter to that rule.

The government's own opposition underscores this point. While arguing that "the Indictment includes numerous allegations of the existence of an agency relationship between [Ms.] Sun . . . and the PRC government and the CCP," the government attempted to assemble a list. (Opp. 13–14.) But in doing so, it was compelled to rewrite the Indictment's allegations— including, conspicuously, by repeatedly adding assertions that Ms. Sun took particular actions while "[a]cting pursuant to the order, direction, or request of a PRC consular official."[12] (*Id.*) The government had to expand and editorialize because the language it added is necessary to make its point but missing from the Indictment. And in doing so, it made Ms. Sun's point for her: nowhere does *the Indictment* allege that any "PRC consular officials" issued any "order, direction, or request" to Ms. Sun, let alone one that meets the statutory threshold. *See INAC*, 668 F.2d at 161–62.

---

[12] The first, sixth, and seventh items in the list are even more attenuated. Those items purport to provide examples of "repeated communications" and "evidence of [] trust with principals of the PRC government and/or the CCP," which the government hopes will support further inferences of foreign agency. (Opp. 13–14.) Perhaps a jury could draw the government's inferences from evidence presented at trial, but right now relying on inferences from inferences only demonstrates that something was not alleged.

### B. The Indictment does not sufficiently allege willfulness

As discussed in Ms. Sun's prior submission, the Indictment fails to allege that she had specific knowledge of FARA and its requirements at the time of her alleged conduct. (*See* Br. 26–30.) The government insists that is not required, arguing that Ms. Sun could "willfully" violate FARA so long as she was "generally aware that [such] conduct violates the law," even if she has no idea "that it violates a particular law or how it does so." (Opp. 19.) For all of the reasons articulated previously, that argument is wrong when it comes to specialized registration regimes like FARA. (Br. 26–30, 39–40). But beyond that, even the government's argument reduces to the same thing under these circumstances. If "willfulness" only requires "act[ing] with knowledge that . . . conduct was unlawful,'" *Bryan v. United States*, 524 U.S. 184, 191–92 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)), it begs the question how Ms. Sun could know that some law prohibited her alleged conduct.[13] FARA imposes unique, purely statutory obligations that did not exist at common law. And it is the failure to register, not even the underlying conduct itself, that is prohibited. (*See* Br. 27, 39–40.) So the only way that Ms. Sun could have been "generally aware that [her] conduct violate[d] the law" (Opp. 19) is if she had some understanding of FARA—the only statute actually proscribing such conduct. And the Indictment does not allege that she did.

The government's only substantive response is criticizing Ms. Sun for not "addressing or citing" a district court decision from another circuit and instead relying on cases interpreting willfulness from the Supreme Court and the Second Circuit. (Opp. 20.) The language on which the government relies is a single footnote. *See United States v. Michel*, No. Cr. 19-148-1 (CKK),

---

[13] At one point, the government appears to suggest that specific intent for a FARA charge is shown so long as Ms. Sun had any knowledge that any of her alleged conduct violated any law. (*See* Opp. 20–21.) The government understandably provides no authority for that position.

2023 WL 2388501, at *7 n.6 (D.D.C. Mar. 6, 2023), *recons. denied*, 2023 WL 7140000 (D.D.C. Mar. 21, 2023), *op. clarified*, 2023 WL 7140057 (D.D.C. Mar. 30, 2023). That footnote was tangential to the decision, which did not address willfulness directly and concerned whether to grant motions to exclude witnesses and to quash testimonial subpoenas. *See generally id.* And the footnote itself makes clear that it flowed from the court's assumption that FARA is not a failure-to-register offense. *See id.* at *7 n.6 (quoting *United States v. Manafort*, 318 F. Supp. 3d 1, 4 (D.D.C. 2018)). Ms. Sun has already explained—and the government has not disputed—why that assumption is incorrect. (*See* Br. 39–40 & n.31.) Cases from the Supreme Court and the Second Circuit interpreting willfulness in analogous contexts thus appear to be better and more instructive authority.

### C.  The Indictment does not sufficiently allege efforts to influence

The government's arguments about the meaning of "influence" are unpersuasive and require little response. Faulting Ms. Sun for consulting a widely cited "law dictionary," the government merely identifies other definitions that it likes better. (Opp. 18.) And the government prefers them because they are broader and more generic. (*See id.*) But using those definitions runs counter to how courts interpret such terms in cases involving public officials, and here it would sweep in all conduct by state government employees who deal with foreign nations. *Cf. Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 359 (2010) (stating that "[r]eliance on a 'generic favoritism or influence theory is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle'" in the context of public officials). Even the government's cases weigh against that proposition. In *United States v. Lira*, No. 22 Cr. 151 (LGS), 2022 WL 17417129 (S.D.N.Y. Dec. 5, 2022), for example, the challenged statute "d[id] not prohibit the whole range of imaginable conduct that might affect or alter a competition," but rather "only efforts to 'influence' *that involve[d] a specifically defined list of prohibited substances and*

*prohibited methods.*" *Id.* at *5 (emphasis added). FARA contains no such list and a broader reading would improperly capture conduct that is routine for public servants dealing with foreign parties.

### D. The Indictment does not sufficiently allege a conspiracy to violate FARA

The government's arguments regarding the sufficiency of the Indictment's conspiracy allegations are also meritless. With respect to whether PRC consular officials can conspire to violate FARA, the government accuses Ms. Sun of "conflat[ing] the elements of conspiracy liability and the factors that trigger a FARA registration requirement." (Opp. 26.) But Ms. Sun clearly delineated between the two and, applying the guidance articulated in *Gebardi v. United States*, *United States v. Amen*, and *United States v. Hoskins*, showed why the affirmative legislative policy exception applies here. (Br. 42–45.) For its part, the government simply asserts that "FARA is not analogous" to the statutes in those cases. (Opp. 27.) The basis for that assertion, however, is the government's subjective view of policies underlying FARA and not the language of the statute or any decisional authority. Certainly, the government cites none. (*See id.*) And it does not otherwise respond to Ms. Sun's application of the governing precedents. (*See* Br. 43–44.)[14]

Finally, it is worth noting that the government never denies that Count One improperly alleges multiple separate and distinct conspiracies in a single count. (*See id.* at 46.) Nor does the government ever genuinely dispute that the Indictment failed to sufficiently allege that Ms. Sun knew activities by CC-1 or CC-2 were on behalf of a foreign principal, such that acting pursuant

---

[14] At one point, the government suggests that "identifying particular co-conspirators with a high degree of specificity . . . is sometimes not even necessary (or possible) at trial." (Opp. 25.) Presumably, the government meant to say *all* co-conspirators; if the government does not expect to identify any particular co-conspirators even at trial, that raises other questions.

to *their* orders, directions, or requests constituted some agreement to violate FARA.  (*Id.* at 45–46.)  As Ms. Sun already demonstrated, the conspiracy count is improper on those bases as well.

**E.  The government's opposition underscores the profound consequences resulting from its novel application of FARA**

The government denies that this case risks criminalizing the conduct of anyone who agrees to any foreign request.  (Opp. 16 (quoting Br. at 23).)  It claims that Ms. Sun was not charged with violating FARA "simply by virtue of 'preventing meetings with representatives of Taiwan,'" but because she also "receiv[ed] taskings pursuant to the direction, orders, and requests of the PRC government and the CCP" and "receiv[ed] significant economic benefits from those foreign principals."[15]  (*Id.* at 16–17.)  But that rationalization quickly falls apart.  The government elsewhere insists that no exchange of benefits must be proven under FARA, arguing that neither "a quid pro quo" nor any "specific timing and linkage of any bribe or gratuity" is relevant.  (*Id.* at 15.)  And whatever "taskings" are (that is not a statutory term), nothing the government says forecloses FARA charges against anyone who agrees to a foreign request.  Notably, the government does not deny that the hypotheticals in Ms. Sun's prior submission—*i.e.* prosecutions for merely agreeing to meeting requests from Taiwan, Israel, or Palestine, as well as for supporting funding requests from Ukraine—follow from its position.  (*See* Br. 23, 35–37.)  That is because they are fair game under the government's view of FARA.  Indeed, the government doubles down on the possibility of bringing criminal charges against "public officials . . . under FARA based on political

---

[15]     If the government is saying that it brought charges against Ms. Sun because she supposedly received economic benefits, that only confirms her suspicions.  (*See* Br. 1.)  And at best, the government's justification is why it thought this case was a proper exercise of prosecutorial discretion, which is irrelevant to the statute's proper construction.  *See, e.g.*, *Snyder v. United States*, 144 S. Ct. 1947, 1958 (2024) (rejecting the argument that "federal prosecutors can be trusted not to enforce [a] statute" in unfair ways).

activities." (Opp. 19.)  The instant charges, which are predicated on political activities common to any foreign bilateral coordination, exemplify the fundamental risks of that approach.

The government helpfully (if inadvertently) underscores this point in its opposition, when it describes FARA as a "foreign malign influence statute." (Opp. 15.)  As enacted, FARA is a just foreign influence statute; it makes no distinction between benign or malign influence, and ostensibly applies as equally in cases involving the United Kingdom and Canada as in cases involving China and Russia.[16]  Characterizing FARA as a "foreign *malign* influence statute" tips the government's hand (*id.* (emphasis added)), confirming that its reading converts disfavored "political activities" by state officials into FARA violations that require courts to "weigh foreign-policy concerns." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 265 (2018); *cf. Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (observing that courts seek to avoid "erroneously adopt[ing] an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches").  But while government components that advance the national interest through policy and diplomacy might make such value judgments, it is not how criminal statutes are construed.  *See, e.g.*, *Snyder*, 144 S. Ct. at 1958.

Similarly misleading is the government's claim that "[t]he Indictment does not charge Sun with advancing improper policies (which is not what FARA prohibits), but with conspiring to act and acting as an unregistered agent of a foreign principal (which is what FARA prohibits)."[17] (Opp. 22.)  Because the Indictment never actually alleges that Ms. Sun acted pursuant to some foreign

---

[16]    As noted previously, the only caveat is a statutory exemption that is currently unused. (*See* Br. 36 n.30.)

[17]    The government insists that "far from a purportedly novel 'expansion' of FARA, the conduct alleged in the Indictment is squarely at the core of the statute's prohibition . . . ." (Opp. 21.)  Strange, then, that neither Ms. Sun nor the government can identify any remotely similar case brought against a state government political appointee among the fewer than eighty FARA prosecutions in the statute's history.

authority or obligation, the instant charges actually are based on *inferences* the government wants to draw from the policies and positions that Ms. Sun allegedly advanced as a public official.[18] (*Id.*) In other words, the government's distinction makes no difference in this case.[19] And as the government admits, a "parade of horribles follows naturally" from that proposition. (*Id.*)

Despite these serious concerns, the government never meaningfully engages with the constitutional issues discussed in Ms. Sun's motion. (*See* Br. 28–38.) It never addresses, for instance, how its interpretation of FARA undermines federalism principles or threatens the free speech interest associated with political and policy discussions among state officials. Nor does the government even mention, let alone dispute, that its application of FARA in this case raises serious overbreadth questions—despite the fact that its framing of FARA as a "foreign malign influence statute" while endorsing prosecutions of "public officials . . . under FARA based on political activities" it disfavors should raise eyebrows. (Opp. 15, 19.) That silence speaks volumes.

On the separation of powers issue, the government deflects by claiming that Ms. Sun's argument was recently rejected in *United States v. Menendez*. (Opp. 23.) That suggestion prompts instant skepticism because the issue here is usurpation of Congress's power to regulate *state* conduct and Menendez was a federal official. Such skepticism is confirmed by even a cursory review of the issue in *Menendez*, which was whether a separate statute—18 U.S.C. § 219— "violate[d] the Constitution's separation of powers doctrine when applied to Members of Congress by delegating to the Executive and Judiciary the power to supervise the daily functioning of the

---

[18]    Here, it is worth reiterating that Ms. Sun is not alleged to have done anything that conflicted with any national or state foreign policy. (*See* Br. 8–9.)

[19]    The government also argues that 18 U.S.C. § 219 "lacks any carveout for political activities" by federal officials, so FARA should reach any state political activity. (Opp. 19.) But Section 219 does not apply to state public officials, and there are good reasons why Congress might subject federal officials—who directly shape federal foreign policy—to different rules.

Legislative." 720 F. Supp. 3d 301, 314 (S.D.N.Y. 2024). Judge Stein concluded that it did not

because "Congress itself [had] enacted Section 219, and explicitly provided in that statute that it

applies to its Members," and so "Congress specifically decided that its Members should be

prohibited from acting as foreign agents and, if they do, should be fined or imprisoned." *Id.* at

315. Ms. Sun does not suggest that state government employees are categorically exempt from

FARA on separation-of-powers grounds,[20] or that the Executive Branch should be precluded from

enforcing strictures that Congress approved by statute. Here, the government's expansion of

FARA to include any mundane accession to a foreign party is *not* what Congress endorsed when

enacting the statute.[21] (*See* Br. 31–33.) And absent congressional authorization, the Executive

Branch cannot take upon itself the power of *de facto* regulation. *See, e.g.*, *Barclays Bank PLC v.*

*Franchise Tax Bd. of California*, 512 U.S. 298, 324 (1994).

Each of these issues is reason enough to reject the government's expansive reading of

FARA. *See Jones v. United States*, 529 U.S. 848, 857 (2000) (quoting *United States ex rel. Att'y*

*Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)) ("[W]here a statute is susceptible of

two constructions, by one of which grave and doubtful constitutional questions arise and by the

other of which such questions are avoided, our duty is to adopt the latter."). And in light of all the

serious questions raised by the government's arguments, lack of fair notice and the rule of lenity

counsel the same. *See United States v. Santos*, 553 U.S. 507, 514 (2008) (observing that lenity

---

[20]     Contrary to the government's arguments, Ms. Sun never "claim[ed] that public officials cannot be charged under FARA based on political activities" (Opp. 19), just that more is required of an indictment bringing such charges because FARA does not swallow all legitimate political activity. *See INAC*, 668 F.2d at 161–62; 22 U.S.C. § 613(d)(2) (excluding "activities not serving predominantly a foreign interest").

[21]     Judge Stein also noted that "while Section 219 may create an opportunity for abuse by the Executive, that risk is substantially mitigated by the fact that the Legislative Branch is uniquely positioned to amend the statute and exempt Members of Congress if it so chooses." *Menendez*, 720 F. Supp. 3d at 315. This case also differs in that respect.

"requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them");

*United States v. Lanier*, 520 U.S. 259, 266 (1997) ("[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.").

## III. THE VISA FRAUD AND ALIEN SMUGGLING COUNTS MUST BE DISMISSED

More than half of the counts against Ms. Sun rest entirely on the supposed falsity of a single document. Counts Three through Seven are all based on the Invitation Letter that the government alleges was somehow "fraudulent." (Ind. ¶ 61.)[22] Although the government conspicuously fails to allege how or why the Invitation Letter was fraudulent, *contra Stringer*, 730 F.3d at 126–27 (collecting cases requiring, *inter alia*, that "criminal falsity" charges "specif[y] what statements are alleged to be false, and in what respect they are false"); *United States v. Tonelli*, 577 F.2d 194, 200 (3d Cir. 1978) (vacating conviction "[b]ecause the indictment in this case did not set forth the precise falsehood(s) alleged and the factual (bases) of (their) falsity with sufficient clarity to permit a jury to determine (their) verity and to allow meaningful judicial review of the materiality of those falsehoods"), its arguments seem to rely on the assertion that the Invitation Letter was "unauthorized." (Ind. ¶ 69; *see also* Opp. 28–31.) The Indictment, however, contains nothing to suggest that the Invitation Letter was anything other than what it purported to be: a document inviting a Henan delegation to New York to discuss economic issues with state representatives (which is, the Indictment also says, exactly what the delegation wound up doing).

---

[22] As noted previously, the delegates referenced in these counts were part of a larger delegation from Henan province, the rest of whom already had approved visas and came to New York to discuss economic issues. (*See* Br. 47 n.38; *see also* Ind. ¶ 71 ("the other members of the delegation already had visitor's visas"). Thus, there is no question that the delegation itself was properly authorized to come to New York.

The government's theory is fundamentally undermined by what the Indictment does not (and apparently could not) allege about the Invitation Letter. It did not allege that Ms. Sun forged the letter by falsifying Politician-2's signature, tricked someone into signing, or surreptitiously bypassed normal authorization procedures. The government clings to the claim that the Invitation Letter was "unauthorized" without specifying why, but that allegation, without more, is insufficient because material falsity is not "necessarily implied by the specific allegations made." *Stavroulakis*, 952 F.2d at 693 (quoting *Silverman*, 430 F.2d at 111).

Moreover, if the Invitation Letter later was approved for issuance, then it would not be "in violation of law," 8 U.S.C. § 1324(a)(1)(A)(iv), or "contain . . . [a] false statement," 18 U.S.C. § 1546(a), for purposes of the charged offenses. Put another way, if the Invitation Letter was signed by an authorized representative of Politician-2 or went through the normal approval process— possibilities that the Indictment carefully leaves open—then by definition it was not fraudulent. *See, e.g.*, *French American Banking Corp. v. Flota Mercante Grancolombiana, S.A.*, 752 F. Supp. 83, 90 (S.D.N.Y. 1990) (holding that an "unauthorized" signature under the UCC "means one made without actual, implied or apparent authority and includes a forgery"); *see also* "Unauthorized," MERRIAM-WEBSTER.COM DICTIONARY (Dec. 6, 2024), *available at* https://www.merriam-webster.com/dictionary/unauthorized (last accessed Dec. 17, 2024) (defining "unauthorized" as "without authority or permission").[23] The government's backup reliance on the allegation that Ms. Sun "draft[ed] the fraudulent invitation letter" also misses the point. (Opp. 30.) Even assuming that she initially drafted the Invitation Letter without permission, when later signed by an

---

[23] Though apparently disfavored by the government, Black's Law Dictionary provides a comparable definition. *See* BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "unauthorized" as "[d]one without authority" or "made without actual, implied, or apparent authority, as by forgery").

authorized representative it would, of course, no longer be "unauthorized" for purposes of the charged offenses. Indeed, it "strains credulity" (*id.* at 31) to assume that an official letter signed by someone other than Ms. Sun, which invited foreign delegates to a public event that proceeded as planned, was ultimately unauthorized.

In all events, the scant allegations underlying all five of these counts—which are all based on the Invitation Letter alone—do not provide Ms. Sun with sufficient detail to defend herself against these charges. They certainly do not allege that Ms. Sun "knowingly" presented any false statement, or encouraged or induced aliens to enter the country illegally.

## IV.   THE MONEY LAUNDERING CONSPIRACY COUNT MUST BE DISMISSED

As to the money laundering conspiracy, the government's opposition fails to identify any allegations providing factual particularity sufficient to ensure that it "will not fill in elements of its case with facts other than those considered by the grand jury." *Pirro*, 212 F.3d at 92 (quoting *Walsh*, 194 F.3d at 44). Here, any evidence at trial would do just that because the Indictment does not allege any facts whatsoever about the offense in Count Ten. The government responds (again) that tracking the statute and adding "to wit" clauses supposedly "specify[ing] both the funds at issue . . . and the specifically identified SUA" is enough. (Opp. 31.) That might be more convincing if the "funds at issue" were not "expressly" (*id.*) alleged against Mr. Hu but omitted as to Ms. Sun, the "specifically identified SUA[s]" were offenses connected to Ms. Sun (*id.*), or some other allegations linked Ms. Sun to any money laundering. But that is not what the Indictment alleges.

Nonetheless, the government insists that the Indictment fairly informs Ms. Sun of the nature of the charge in Count Ten. How remains a mystery, because the government waves off Ms. Sun's arguments without engaging them at all. For instance, it is unclear how "to wit" clauses tersely referencing offenses alleged exclusively against another defendant would put Ms. Sun on

notice of the nature of the charges against her. Against this backdrop, more than a bare statutory recitation is required to allow Ms. Sun "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Moreover, contrary to the government's contention, Ms. Sun did not "elide[] an important statutory distinction" regarding terms used in the money laundering statute. (Opp. 32.) Her motion did not dispute the government's observation that it need not allege or prove that she committed the charged SUAs, but rather that "the money to be laundered was proceeds of the charged SUA and that [Ms.] Sun knew it was proceeds of something unlawful." (*Id.*) *See* 18 U.S.C. § 1956(a)(2)(B). Here, however, that does nothing to change the fact that, evaluating the Indictment "as it was actually drawn," *Pirro*, 212 F.3d at 92, the only potential "something unlawful" relevant to the money laundering charge is either bank fraud or some misuse of means of identification. In other words, the government's problem is that the "something unlawful" must be the SUAs based on the Indictment's allegations, not that it must be the SUAs as a matter of law. And regardless, there are no factual allegations regarding Ms. Sun's knowledge at any time—or even conscious avoidance of the fact (*see* Opp. 33)—that any proceeds came from something unlawful.

At bottom, the government argues that a statutory recitation—especially if paired with any additional information—inevitably resolves any concerns about adequate notice. (*See id.* at 32.) That simply is not the law. *See Hamling*, 418 U.S. at 117; *Pirro*, 212 F.3d at 92; *Walsh*, 194 F.3d at 44. And common sense reinforces what the law requires. Could the government prepare Count Ten for trial without the essential facts missing from the Indictment? Of course not. Both the Constitution and Rule 7 prevent Ms. Sun from being put in that same impossible position.

## CONCLUSION

For the foregoing reasons, as well as those articulated in Ms. Sun's principal memorandum of law, her motion to dismiss should be granted.

Dated: December 19, 2024
      New York, New York

Respectfully submitted,

/s/ *Jarrod L. Schaeffer*

Kenneth M. Abell
Jarrod L. Schaeffer
Scott Glicksman

ABELL ESKEW LANDAU LLP

256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7341 / -7339 / -7338
kabell@aellaw.com
jschaeffer@aellaw.com
sglicksman@aellaw.com

*Counsel for Linda Sun*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on December 19, 2024, this document was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will then serve notification of the filing to all registered parties of record.

/s/ *Jarrod L. Schaeffer*

Jarrod L. Schaeffer