

**JARROD L. SCHAEFFER**
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

February 21, 2025

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:    *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, S1 24 Cr. 346 (BMC) (TAM)

Your Honor:

We represent Linda Sun in the above-referenced matter and write respectfully pursuant to the Court's order on February 11, 2025.

As the allegations in the superseding indictment with respect to Ms. Sun are nearly identical to those in the prior indictment (*see* Dkt. 66 at 1–2; *compare generally* Dkt. 65 ("S-1"), *with* Dkt. 4 ("Ind.")), all of her arguments for dismissal continue to apply with equal—if not greater—force with respect to the S-1.  Ms. Sun therefore renews her motion to dismiss as to the S-1, adopting and incorporating by reference her prior briefing on that motion.  (*See* Dkts. 46, 57.)

While the S-1 underscores ample reasons for dismissal, recent developments further highlight the serious constitutional concerns raised by this novel FARA prosecution.  On February 5, 2025, the Attorney General of the United States directed that "[t]o free resources to address more pressing priorities, and end risks of further weaponization and abuses of prosecutorial discretion . . . [r]ecourse to criminal charges under the Foreign Agents Registration Act (FARA) and 18 U.S.C. § 951 shall be limited to instances of alleged conduct similar to more traditional espionage by foreign government actors," and "[w]ith respect to FARA and § 951" enforcement instead "shall focus on civil enforcement, regulatory initiatives, and public guidance."  *Mem. on Gen. Pol'y Regarding Charging, Plea Negotiations, and Sent'g*, Att'y Gen. Mem. (Feb. 5, 2025) at 4, *available at* https://www.justice.gov/ag/media/1388541/dl (accessed Feb. 19, 2025).  The charges in this case, which do not allege that Ms. Sun violated § 951 or even accuse her of acting contrary to national or state foreign policy, cannot sensibly be equated with traditional espionage.  As a  result, Ms. Sun currently faces novel charges that have never been brought against any similarly situated state official, and which are prohibited from being brought in the future.

Count Ten in particular requires further discussion.  Except in one respect, it is unchanged from the prior indictment and does not add or delete any factual matter, broaden or reduce the

period of the alleged conspiracy, or remove the specified unlawful activities ("SUAs") previously alleged. (*Compare* S-1 ¶¶ 127–28, *with* Ind. ¶¶ 127–28.) Thus, all prior arguments regarding the deficiencies of Count Ten apply equally to the S-1. (*See* Dkts. 46 at 52–56; 57 at 21–22.) The only material change to Count Ten is the addition of two new SUAs: (*i*) FARA and (*ii*) New York Penal Law § 200.00. (S-1 ¶ 128.) Those are added through unadorned statutory citations bereft of additional factual allegations (*see id.*), and their inclusion raises additional legal issues.

## DISCUSSION

Count Ten charges Ms. Sun with conspiracy to commit money laundering, which "requires that two or more people agree to violate the federal money laundering statute, and that the defendant 'knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] the objects of the conspiracy.'" *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (quoting *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008)). The sole object alleged in Count Ten is violating 18 U.S.C. § 1956(a)(2)(B)(i), which requires the government to prove, among other things, knowledge "that the monetary instruments and funds involved . . . represented the proceeds of some form of unlawful activity," and "that such transportation, transmission and transfer was designed . . . to conceal or disguise the nature, the location, the source, the ownership and the control of the proceeds of" particular SUAs. (S-1 ¶ 128.) The government also must prove that "a charged transaction in fact involved the proceeds of" an SUA alleged in the indictment. *United States v. Santos*, 553 U.S. 507, 511 (2008) (cleaned up).

Perhaps the S-1's new SUAs could pass muster in another case. After all, a "specified unlawful act" for purposes of money laundering may include a "felony violation of the Foreign Agents Registration Act of 1938," as well as "any act or activity constituting an offense listed in [§] 1961(1) . . . except" certain title 31 offenses. 18 U.S.C. §§ 1956(c)(7)(A), (D). Section 1961, in turn, lists a plethora of offenses that may constitute "racketeering activity," including, as relevant here, "any act or threat involving . . . bribery . . . , which is chargeable under State law and punishable by imprisonment for more than one year." *Id.* § 1961(1)(A). But as alleged here, the new SUAs are legally invalid.

## I.   Count Ten Fails to Allege a Valid Specified Unlawful Activity With Respect to N.Y. Penal Law § 200.00

New York Penal Law § 200.00 criminalizes the state law offense of Bribery in the Third Degree. In relevant part, the statute governing that offense provides as follows:

> A person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.

N.Y. Penal Law § 200.00. While some state offenses can serve as SUAs for federal money laundering, the S-1's inclusion of § 200.00 is unusual.[1] More importantly, relying on § 200.00 in this case does not state an offense in the context of Count Ten. *See* Fed. R. Crim P. 12(b)(3)(B)(v).

The new legal infirmity stems from the difference between federal and state bribery laws in New York. Unlike their federal counterparts, New York's statutes divide bribery crimes into separate offenses committed by an alleged bribe-giver and an alleged bribe-receiver. In contrast, the federal bribery law applicable to state public officials applies both to someone who "corruptly solicits or demands . . . or accepts or agrees to accept, anything of value," 18 U.S.C. § 666(a)(1)(B), and to whomever "gives, offers, or agrees to give anything of value to any [covered] person, with intent to influence or reward." *Id.* § 666(a)(2).

Put differently, under New York state law, § 200.00 criminalizes "confer[ring], or offer[ing] or agree[ing] to confer" a bribe, *id.*, but not the *receipt* of that bribe, which is prohibited as a separate offense under a separate statute. *See* N.Y. Penal Law § 200.10 ("A public servant is guilty of bribe *receiving* in the third degree when he or she solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his or her vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." (emphasis added)). This is an important distinction, because § 200.00 also allows a conviction to be predicated on an "understanding" of influence that is "unilateral" and unknown to the person receiving something intended as a bribe. *People v. Bac Tran*, 603 N.E.2d 950, 954 (N.Y. 1992). When it comes to bribe-receiving, on the other hand, the focus is squarely on the receiver's state of mind, because the "[t]he gist of the crime is not the payment of money, but rather the 'agreement or understanding' under which" he or she "accepts or agrees to accept a benefit." *People v. Harper*, 552 N.E.2d 148, 150 (N.Y. 1990) (interpreting similar language in N.Y. Penal Law § 215.05).

All that is to say that § 200.00 concerns exclusively the state law crime of bribe-giving and not the inverse offense of bribe-receiving. In the context of the S-1, that imposes two insurmountable legal obstacles for the government.[2]

*First*, adding § 200.00 as an SUA fails because the federal money laundering provision charged in Count Ten is concerned solely with the "proceeds" of an SUA, *see* 18 U.S.C. § 1956(a)(2)(B)(i), which means "property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); *see also Santos*, 553 U.S. at 524 (defining "proceeds" as "profits"). But bribes *paid* by a bribe-giver logically will never be "property derived . . . or obtained or retained" in the course of that offense. 18 U.S.C. § 1956(c)(9). Rather, from the perspective of a bribe-giver—and it is that perspective that is relevant given the state law offense charged—any bribes are not proceeds but *expenditures* made to complete the offense. *See Santos*, 553 U.S. at 516 n.4

---

[1] After all, the federal bribery statute applicable to state public officials, 18 U.S.C. § 666, is also a recognized SUA for money laundering. *See* 18 U.S.C. § 1956(c)(7)(D).

[2] In addition to the issue discussed more fully herein, there is another problem with this SUA. Count Ten alleges a conspiracy that lasted from 2016 through 2024. (*See* S-1 ¶ 128.) But § 200.00 only applies to bribes of public officials, and the S-1 elsewhere acknowledges that Ms. Sun stopped being a public official as of 2023. (*See id.* ¶ 1.)

(explaining that "when the 'loot' comes into the hands of the later distributing felon[,] his confederates' shares are (as to him) not profits but mere receipts subject to his payment of expenses"); *see also United States v. Gushlak*, 495 F. App'x 132, 134 (2d Cir. 2012) (acknowledging a potential "merger problem to the extent that [the defendant] used securities fraud proceeds to pay kickbacks to stock brokers who were instrumental to the scheme, insofar as those payments were expenses associated with carrying out the fraud conspiracy"). Because § 200.00 focuses exclusively on the conduct of bribe-*giving*, any alleged bribes are not "proceeds" for purposes of that SUA.

*Second*, even if funds constituting bribes under § 200.00 could be "proceeds" within the meaning of the relevant money laundering provision, relying on that SUA here impermissibly merges the alleged money laundering offense with the underlying SUA. "Put plainly, the laundering of funds cannot occur in the same transaction through which those funds first become tainted by crime." *United States v. Butler*, 211 F.3d 826, 830 (4th Cir. 2000); *accord United States v. Hall*, 613 F.3d 249, 254 (D.C. Cir. 2010), *amended*, No. 07-3036, 2019 WL 6794225 (D.C. Cir. Dec. 12, 2019) ("The offense of money laundering must be separate and distinct from the underlying offense that generated the money to be laundered."); *United States v. Szur*, 289 F.3d 200, 213 (2d Cir. 2002) (agreeing that "proceeds of unlawful activity" must "exist before money laundering can occur"); *United States v. Mankarious*, 151 F.3d 694, 706 (7th Cir. 1998) (stating that "a money laundering transaction . . . must be separate from any transaction necessary for the predicate offense to generate proceeds"). Count Ten fails that test, because it purports to charge as money laundering the same transactions that would constitute the alleged bribery.

Because the S-1 contains no factual allegations whatsoever regarding Ms. Sun's involvement in Count Ten, it remains unclear what she is actually accused of doing.[3] As best she can surmise, Count Ten charges a conspiracy to launder the "millions of dollars in transactions for the PRC-based business activities of [her] husband" allegedly facilitated by the PRC "[i]n return for" actions she supposedly took on the PRC's behalf.[4] (S-1 ¶ 11.) So it would appear that, with respect to § 200.00, Count Ten alleges a conspiracy to "transport, transmit, and transfer" funds allegedly constituting bribe payments "to a place in the United States from and through a place outside the United States." (S-1 ¶ 128.) But assuming the truth of the S-1's allegations, that would mean such transfers were also the payment of alleged bribes and thus an inseparable part of the underlying offense.

---

[3] This highlights and reinforces the deficiencies in Count Ten that Ms. Sun already identified, as it fails to provide sufficient "factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)).

[4] Perhaps Count Ten was also intended to concern other benefits that Ms. Sun supposedly received, such as "salted ducks" and event tickets, but those are not "monetary instrument[s] or funds." 18 U.S.C. § 1956(a)(2). Nor does the S-1 allege that funds used to purchase such items involved international transfers—an essential element of the object charged in Count Ten. *See id.* A similar deficiency is discussed later with respect to other SUAs.

While these issues arise from intricacies in the statutes that the government charged, they are anything but technicalities. Consider the upshot of what the government is attempting to do. By inserting § 200.00 as an SUA, the government seeks to hold Ms. Sun responsible for conspiring to launder purported bribes that, under state law, might be bribes only because of a "unilateral" expectation of the person paying them. *Bac Tran*, 603 N.E.2d at 954. Conversely, the federal bribery statute would require evidence of a quid pro quo to establish that funds were bribery proceeds.[5] *See, e.g.*, *United States v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006) ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." (emphasis in original)). And because money laundering only requires knowledge by a defendant of "some form of unlawful activity," 18 U.S.C. § 1956(a)(2)(B), unfair prejudice results to Ms. Sun absent specific evidence at trial regarding *what* unlawful activity she supposedly knew about. (*But see, e.g.*, Dkt. 52 at 32–33 (suggesting the government may take a more general approach).) The above limitations on "proceeds" avoid that injustice by preventing liability for transacting in funds that might be criminal proceeds solely because of another's subjective belief.

## II.  Count Ten Fails to Allege a Valid Specified Unlawful Activity With Respect to FARA

As noted above, a felony FARA violation can constitute an SUA for purposes of money laundering. *See* 18 U.S.C. §§ 1956(c)(7)(D). As alleged in the S-1, however, the attempt to include FARA as an SUA in Count Ten also fails.

*First*, for the reasons already discussed in Ms. Sun's prior briefing, FARA is a statute that criminalizes a failure to register under a unique statutory regime. (*See* Dkts. 46 at 27–29; 57 at 12.) While theoretically possible for FARA to generate proceeds, *see, e.g.*, *United States v. Michel*, No. CR 19-148-1 (CKK), 2024 WL 1603362, at *21 (D.D.C. Apr. 12, 2024) (identifying as FARA proceeds funds charged for unregistered lobbying services), in this case the S-1 alleges no facts linking FARA and any particular payments. (*See* Dkt. 45 at 44–45.) That fails to supply "sufficient factual particularity such that the defendant is able to prepare to meet the government's charges, and . . . all concerned parties, including the court, can be confident that the government's case at trial will reflect the evidence presented to the grand jury." *United States v. Urso*, 369 F. Supp. 2d

---

[5]     Section 200.00 thus raises other issues should the government try to prove funds were bribery proceeds without proving any quid pro quo. *See, e.g.*, *United States v. Mangano*, No. 22-861, 2025 WL 479623, at *16 (2d Cir. Feb. 13, 2025) (quoting *United States v. Ng Lap Seng*, 934 F.3d 110, 131 (2d Cir. 2019)) ("Although there is 'no uniform definition' for the word 'bribe' in the federal code, 'bribery is generally understood to mean the corrupt payment or offering of something of value to a person in a position of trust with the intent to influence his judgment or actions.'"); *United States v. Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002) (quoting *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404–05 (1999))) ("The 'corrupt' intent necessary to a bribery conviction is in the nature of a *quid pro quo* requirement; that is, there must be 'a specific intent to give something of value *in exchange* for an official act.'"). If the government tries to prove this SUA based on some unilateral expectation, it would become necessary to decide whether § 200.00, however described under state law, can constitute "bribery" for purposes of the federal code. *See* 18 U.S.C. § 1961(1)(A). Since the government has disclaimed any need to prove quid pro quo (*see* Dkt. 52 at 15–16), and would be hard-pressed to do so based on the allegations and discovery to date, that eventuality seems likely unless Count Ten is dismissed.

254, 267 (E.D.N.Y. 2005). At a minimum, it also leaves Ms. Sun guessing as to what the government believes might be "proceeds" of FARA, which is an essential element of Count Ten.

*Second*, assuming that violating FARA could generate proceeds based on the allegations here, such proceeds would not include the transfers and transactions at issue in Count Ten. As discussed, the Second Circuit has held that culpable conduct under FARA must "fall[] somewhere between a command and a plea," such that "a particular individual . . . is . . . in some way authorized to act for or to represent the foreign principal." *Att'y Gen. of United States v. Irish N. Aid Comm.* ("*INAC*"), 668 F.2d 159, 161 (2d Cir. 1982); *accord* Scope of Agency, DEP'T OF JUST. (May 2020), at 3–4, *available at* https://www.justice.gov/nsd-fara/page/file/1279836/dl (last accessed Feb. 21, 2025) (stating that "circumstances must evince some level of power by the principal over the agent or some sense of obligation on the part of the agent to achieve the principal's request").

Assuming the truth of the S-1's allegations (and spotting the government some missing key allegations), the most that can be said is that the S-1 alleges these transfers and transactions were used by the PRC to influence or compensate Ms. Sun. (*See, e.g.*, S-1 ¶ 11.) But since such those would, in the government's review, constitute the manner in which the PRC established agency over or funded Ms. Sun's alleged violations of FARA, they cannot *also* form the predicate for a money laundering charge. *Cf. Michel*, 2024 WL 1603362 at *20 ("[T]he offense of money laundering must be separate and distinct from the underlying offense (here, FARA violations) that generated the money to be laundered." (citation omitted)). In other words, because the theory alleged in the S-1 is that the funds were paid to Ms. Sun in order to procure or ensure her agency, they are part and parcel of the alleged FARA offenses and cannot also be "proceeds" of that offense for purposes of money laundering. *Cf. Santos*, 553 U.S. at 517 ("[A] criminal who enters into a transaction paying the expenses of his illegal activity cannot possibly violate the money-laundering statute, because by definition profits consist of what remains after expenses are paid."); *United States v. McCarthy*, 271 F.3d 387, 395 (2d Cir. 2001) ("[W]hen the underlying crime is *completed*, a transaction conducted with the proceeds from that crime may provide the basis for a money laundering conviction." (emphasis added).).

*Third*, even putting all of that aside, nothing in the S-1 sufficiently alleges another essential element of Count Ten. The object of the charged conspiracy "requires proof that the purpose— not merely effect—of the transportation was to conceal or disguise a listed attribute of the funds." *Garcia*, 587 F.3d at 516 (quoting *Regalado Cuellar v. United States*, 553 U.S. 550, 567 (2008) (internal quotation marks omitted)). Even if someone "was concealing the nature, location, or source of the [] proceeds, [that] does not prove that his purpose in transporting the proceeds was to conceal these attributes." *United States v. Ness*, 565 F.3d 73, 78 (2d Cir. 2009). In other words, "*how* one moves the money is distinct from *why* one moves the money." *Garcia*, 587 F.3d at 517 (emphasis in original). While "[t]he distinction may sound narrow and verbal, [] it goes to the heart of the very idea of money laundering, which is that the transaction itself operates in some way to conceal the nature, source or ownership or the like of the funds, and thus to 'launder' the illicit proceeds." *Garcia*, 587 F.3d at 517. And that remains true "even if substantial efforts have been expended to conceal the money." *Id.* at 516 (quoting *Cuellar*, 553 U.S. at 563).

As Ms. Sun has demonstrated, nothing in the S-1 alleges anything with respect to communications among supposed co-conspirators concerning FARA, any agreement to violate FARA, or any connections between FARA and particular funds. Indeed, except for the single

roundabout conversation alleged between Ms. Sun and FBI agents well into the supposed conspiracy, the S-1 contains no meaningful factual allegations regarding FARA. (*See* S-1 ¶ 112.) That silence reveals the absence of sufficient allegations that the purpose—and not just the effect— of any transactions or transfers was to conceal FARA proceeds. It is especially so here, as the S-1 expressly alleges that funds received in the United States by Mr. Hu were the product of "transactions for [his] PRC-based business activities." (*Id.* ¶ 11.) *Cf. United States v. Law*, 528 F.3d 888, 896 (D.C. Cir. 2008) ("[I]t is generally the case that if transactions are engaged in for present personal benefit, and not to create the appearance of legitimate wealth, they do not violate the money laundering statute." (cleaned up)); *Michel*, 2024 WL 1603362 at *20 (citing same principle while discussing FARA); *see also* 22 U.S.C. § 613(d)(1) (exempting "bona fide trade or commerce").

## III. Revisions to Count Ten Underscore the S-1's Failure to Allege Other Specified Unlawful Activities

Finally, the addition of the above SUAs shines new light on another flaw in the original SUAs that are preserved in the S-1 and based on Counts Eight and Nine, in which Ms. Sun is not charged.[6]

Count Ten alleges that Ms. Sun conspired to violate the prohibitions against money laundering in "Title 18, United States Code, [s]ection 1956(a)(2)(B)(i)." (S-1 ¶ 128.) In relevant part, that portion of the money laundering statute provides as follows:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds *from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States* . . . knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . [shall be guilty of a crime].

18 U.S.C. § 1956(a)(2)(B)(i) (emphasis added). As that language makes plain, § 1956(a)(2)(B)(i) only covers alleged money laundering involving *international* transfers and transactions. Domestic transactions are covered by § 1956(a)(1), which is not charged in Count Ten.

The problem for the government is that all of the conduct alleged in connection with Counts Eight and Nine is purely domestic. (*See* S-1 ¶¶ 12, 124, 126.) And nowhere does the S-1 allege that proceeds allegedly generated by Counts Eight and Nine moved "from a place in the United

---

[6] Although it is not clearly alleged, the government has confirmed that the SUAs relating to bank fraud and misuse of identification in Count Ten are supposed to refer to Counts Eight and Nine. (*See* Dkt. 52 at 31.)

States to or through a place outside the United States."[7]  18 U.S.C. § 1956(a)(2).  Indeed, the "to wit" clause in Count Ten only alleges transfers in the opposite direction.  (S-1 ¶ 128.)  Failing to allege an international transfer or transaction with respect to the purported proceeds of the original SUAs—a necessary element of § 1956(a)(2)(B)(i)—fails to set forth "the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1); *see also Stavroulakis*, 952 F.2d at 693 (quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)) (explaining that an indictment "must descend to particulars" because "it is not sufficient" to "charge the offence in the same generic terms as in the definition").

## CONCLUSION

For these reasons and those articulated previously, the counts alleged against Ms. Sun in the S-1—including Count Ten—should be dismissed.

Respectfully submitted,

*Jarrod L. Schaeffer*

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

*Counsel for Linda Sun*

cc:     Counsel of Record (via ECF)

---

[7]     While the S-1's attempted inclusion of FARA and § 200.00 fail for the reasons articulated above, one can guess how those SUAs *might* involve international transfers or transactions.  Still, that is a far cry from being "necessarily implied by the specific allegations made."  *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (quoting *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970)).