

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM:AAS/RMP
F. #2020R00600

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 3, 2025

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Linda Sun
      <u>Criminal Docket No. 24-346 (BMC)</u>

Dear Judge Cogan:

   The government respectfully submits this letter in response to the defendant Linda Sun's February 21, 2025 letter in further support of her motion to dismiss and renewing her motion as to the superseding indictment (ECF No. 69) (the "Letter," or "Def. Let."). In the Letter, the defendant challenges as legally infirm the inclusion of violations of New York Penal Law § 200.00 and the Foreign Agents Registration Act ("FARA") as specified unlawful activities ("SUAs") underlying the money laundering conspiracy charged in Count Ten. For the reasons that follow, each of the defendant's arguments fails.

   *First*, the defendant argues that New York Penal Law § 200.00, which prohibits the payment of bribes to public servants, cannot be an SUA underlying a money laundering conspiracy because the payment of bribes generates only an expenditure, not proceeds (Def. Let. 2–4). It is true, of course, that the payment of a bribe constitutes an expenditure for the bribe payer—just as it reflects corresponding proceeds for the bribe recipient. The defendant effectively asserts that only the bribe payer's perspective matters, which might make sense if only the person who committed the SUA could be guilty of laundering proceeds of an SUA. But that is clearly not the law and the defendant does not (and cannot) suggest that it is. The defendant seems to draw this invalid inference from *United States v. Santos*, 553 U.S. 507 (2008), but that case stands for the proposition (immaterial here) that "proceeds" under the money laundering statutes are only profits and not gross receipts—and *even that proposition has been abrogated by statute* (which the defendant fails to acknowledge, despite citing *Santos* several times, including for the very proposition that has been abrogated). *See, e.g., United States v. Tolliver*, 949 F.3d 244, 248 (6th Cir. 2020) ("The Supreme Court once held that the government had to prove in certain cases that laundered money was profit, not just income. But Congress quickly amended the law so that was no longer true."); *Wooten v. Cauley*, 677 F.3d 303, 309 n.1 (6th Cir. 2012) ("Congress overruled *Santos* in 2009 when it amended 18 U.S.C.

§ 1956 to define 'proceeds' as 'gross receipts' in all contexts.").[1]  Today, the money laundering statute define "proceeds" very broadly to include "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."  18 USC § 1956(c)(9).  The recipient of a bribe necessarily receives proceeds, and those proceeds are "derived from or obtained . . . , directly or indirectly, through" the unlawful activity of bribe paying.  If a public servant receives a bribe that was paid in violation of New York Penal Law § 200.00 and then conspires to launder the proceeds, that public servant has violated the federal money laundering laws.  There is no legal infirmity in charging New York Penal Law § 200.00 as an SUA underlying a money laundering conspiracy.

*Second*, the defendant argues that including the state bribe-paying statute as an SUA is legally invalid because it supposedly "merges" the underlying offense (bribe paying) with the money laundering itself (Def. Let. 4–5).  The defendant also repeats this argument as to the inclusion of FARA as an SUA (Def. Let. 6).  This argument arises from a line of cases that established that a single transaction cannot be both the sole basis of consummating an SUA and also the laundering of its proceeds—*e.g.*, the transaction by which ones pays a bribe cannot also be a *per se* money laundering violation.  Of course the government has no quarrel with the legal principle.[2]  But the *factual* distinctness of the transactions that generate "proceeds" of SUA and the transactions that reflect the conspiracy to launder those proceeds is a trial issue, not a legal infirmity in the superseding indictment.

*Third*, the defendant argues that the inclusion of FARA as an SUA for the money laundering conspiracy count is legally invalid because FARA prohibits only "a failure to register" and—while the defendant concedes only that it is "theoretically possible for FARA [violations] to generate proceeds"—the superseding indictment supposedly fails to allege "facts linking FARA and any particular payments" (Def. Let. 5–6).  That is plainly false.  The Court need not indulge metaphysical speculations about whether FARA prohibits the affirmative conduct of *acting* as a foreign agent without registering or the negative conduct of *failing to register* while acting as a foreign agent (proving a criminal violation of the statute requires proving both) to conclude that the superseding indictment explicitly alleges the link between

---

[1]    The Second Circuit has continued to apply *Santos* to conduct predating the statute's amendment.  *See, e.g.*, *United States v. Quinones*, 635 F.3d 590, 599 n.4 (2d Cir. 2011) ("Congress subsequently amended the money laundering statute to define proceeds to include gross receipts.  Our task therefore is to determine how the *Santos* Court would interpret 'proceeds' with respect to money laundering charges based on offenses . . . committed prior to the money laundering statute's amendment in May 2009." (citation omitted)); *United States v. Gushlak*, 495 F. App'x 132, 134 (2d Cir. 2012) (citing *Quinones* and applying *Santos* to pre-2009 conduct).  The relevant conduct in the present case post-dates the statute's amendment so the distinction made in *Santos* between profits and gross receipts is inapplicable here.

[2]    The government notes, however, that the defendant suggests that these cases stand for a broader rule than they do when she emphasizes that the SUA must be completed.  In fact, the Second Circuit has held that a completed crime *or* a "discrete phase" of the crime can generate "proceeds" within the contemplation of the money laundering statutes.  *United States v. Szur*, 289 F.3d 200, 214 (2d Cir. 2002).

FARA violations and payment.  Indeed, the superseding indictment summarizes the conduct that the defendant undertook as an unregistered agent (ECF No. 65, ¶¶ 9–10) and then expressly alleges that "[i]n return for these and other actions, the defendant LINDA SUN received substantial economic and other benefits from representatives of the [People's Republic of China ("PRC")] government and the [Chinese Communist Party], including the facilitation of millions of dollars in transactions for the PRC-based business activities of SUN's husband, the defendant CHRIS HU . . . ." (*id.* ¶ 11).  On a pretrial motion to dismiss, that is the end of the analysis.  *See generally, e.g.*, *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("We have often stated that an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (internal quotation marks omitted)); *United States v. Gotti*, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006) ("On a motion to dismiss pursuant to Rule 12(b), a court must accept all factual allegations in the indictment as true.").

*Fourth*, the defendant argues that the superseding indictment fails to allege that the purpose of the money laundering that was the object of the conspiracy was to conceal or disguise a listed attribute (that is, "the nature, the location, the source, the ownership, or the control of the proceeds of" SUA, *see* 18 U.S.C. § 1956(a)(2)(B)(i)).  That is wrong.  The superseding indictment alleges that the defendant conspired "to transport, transmit and transfer monetary instruments and funds . . . knowing that such transportation, transmission and transfer was designed in whole and in part to conceal or disguise the nature, the location, the source, the ownership and the control of the proceeds of" SUA (ECF No. 65, ¶128).  As discussed at length in the government's opposition to the defendant's motion (ECF No. 52), the pleading standard requires no more.  The cases that the defendant cites are about *proof*, not pleading.  *Cf. United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018) ("[T]he civil summary judgment mechanism does not exist in federal criminal procedure . . . ."); *United States v. Laurent*, 861 F. Supp. 2d 71, 110 (E.D.N.Y. 2011) (ruling that a technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial").  Arguments about whether concealment of a listed attribute was in fact the purpose of the conduct that was the object of the money laundering conspiracy is an argument for trial, not a pretrial motion to dismiss.

Finally, the defendant asserts that the addition in the superseding indictment of new SUAs discussed above "shines new light" on a supposed legal infirmity of the SUAs that were already included in the underlying indictment (Def. Let. 7–8)—specifically, that the conduct underlying the bank fraud and misuse of identification charged as Counts Eight and Nine (which are also listed as SUAs) was domestic, and the money laundering conspiracy charged in Count Ten alleges international money laundering conspiracy.  But this, too, is a question of proof, not pleading.  For the reasons argued in prior briefing, the money laundering conspiracy is sufficiently alleged.  The defendant has identified no legal infirmity.

3

For all of these reasons, and those already argued in earlier briefing, the government respectfully submits that the defendant's motion should be denied in its entirety.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By:    /s/
Alexander A. Solomon
Robert M. Pollack
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of the Court (BMC) (by ECF)
Counsel of record (by ECF)

4