UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- X
  UNITED STATES OF AMERICA,      :
                                       :
                    Plaintiff,   :
                                       :
        - against -         :
                                       :
  LINDA SUN,                     :
      also known as "Wen Sun," "Ling Da  :
      Sun," and "Linda Hu," and    :
  CHRIS HU,                    :
                                       :
                  Defendants.  :
------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

24-cr-346 (BMC)

**COGAN**, District Judge.

      In August 2024, a grand jury returned a ten-count indictment against Linda Sun and her husband, Chris Hu. Sun was charged with acting as an agent of a foreign principal without registering with the Attorney General in violation of the Foreign Agents Registration Act ("FARA"), 22 U.S.C. §§ 612(a) and 618(a)(1) (Count Two) and conspiracy to commit the same in violation of 18 U.S.C. § 371 (Count One). Sun was also charged with visa fraud in violation of 18 U.S.C. §§ 1546(a) (Count Three) and four counts of illegally bringing aliens into the United States for commercial gain or advantage, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i) (Counts Four through Seven). Both Sun and Hu were charged with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Ten). Furthermore, Hu was charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 (Count Eight) and misuse of means of identification in violation of 18 U.S.C. § 1956(h) (Count Nine).

      Sun filed a pretrial motion seeking to dismiss the indictment. After the parties fully briefed this motion, a grand jury returned a first superseding indictment, charging Hu with three

counts of money laundering in violation of 18 U.S.C. § 1957 (Counts Eleven through Thirteen). Sun subsequently renewed her prior motion. Hu joined Sun's motion to dismiss Counts Eight through Thirteen of the superseding indictment.

For the reasons that follow, defendants' motion to dismiss the superseding indictment is denied.

## BACKGROUND

Sun previously served in a variety of roles for the New York State government, including as the Deputy Chief Diversity Officer for Politician-1 from February 2018 to July 2020; Deputy Chief of Staff for the New York State Executive Chamber, working for Politician-2, from September 2021 to September 2022; and Deputy Commissioner for Strategic Business Development for the New York State Department of Labor from September 2022 to March 2023. During that time, the Government alleges, Sun acted as an undisclosed agent of the government of the People's Republic of China ("PRC") and the Chinese Communist Party ("CCP").

According to the Government, Sun acted "at the request of PRC government officials and CCP representatives" in:

> blocking representatives of the Taiwanese government from having access to the NYS governor's office; changing Politician-1 and Politician-2's messaging regarding issues of importance to the PRC and the CCP; obtaining official NYS governor proclamations for PRC government representatives without proper authorization; attempting to facilitate a trip to the PRC by Politician-2; and arranging meetings for visiting delegations from the PRC government with NYS government officials.

Superseding Indictment, <u>United States v. Sun</u>, 24-cr-346 (E.D.N.Y. Feb. 4, 2025), ECF No. 65 ¶ 9 (hereinafter "Superseding Indictment").

In addition to "arranging meetings for visiting delegations from the PRC government with NYS government officials," <u>id.</u>, Sun is accused of "providing unauthorized invitation letters

from the office of the NYS governor that were used to facilitate travel by PRC government officials into the United States for meetings with NYS government officials." Id. ¶ 10. The Government alleges that in 2018 and again in 2019, Sun drafted and sent invitation letters from the governor's office, containing Politician-2's falsified signature, to a delegation from the Henan Province of China purporting to invite the delegation to visit New York. Id. ¶¶ 42-44, 61-69. In 2019, four members of the delegation attached the invitation letter Sun had drafted to their visa applications, which were approved by the U.S. Department of State. Id. ¶ 71.

The Government contends that for Sun's actions, she received benefits from the PRC government and the CCP, including "the facilitation of millions of dollars in transactions for the PRC-based business activities of SUN's husband, the defendant CHRIS HU; travel benefits; tickets to events; promotion of a close family friend's business; employment for SUN's cousin in the PRC; and Nanjing-style salted ducks prepared by PRC Official-1's personal chef." Id. ¶ 11. The Government asserts that Sun and Hu "laundered the monetary proceeds of this scheme to purchase, among other things, real estate property . . . and various luxury automobiles." Id. Furthermore, Hu allegedly "laundered unlawful proceeds through bank accounts opened in the name of a close relative but that were actually for HU's exclusive use. To open these accounts, HU unlawfully used an image of the relative's driver's license." Id. ¶ 12.

## LEGAL STANDARD

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000) (citations omitted). Otherwise, the indictment "offends both the Fifth and Sixth Amendments" – the Fifth Amendment because it does not ensure against double jeopardy and "the defendant cannot be assured that he is being tried on the evidence presented to the grand jury . . . or that the grand jury acted properly in indicting him;" the Sixth Amendment because the defendant would not "be

informed of the nature and cause of the accusation against him." Id. at 92 (citations and quotation omitted); United States v. Thompson, 141 F. Supp. 3d 188, 193 (E.D.N.Y. 2015), aff'd, 896 F.3d 155 (2d Cir. 2018). The Federal Rules of Criminal Procedure thus provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). These requirements are typically satisfied when an indictment "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Pirro, 212 F.3d at 92).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Id. (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). "[W]hen the definition of an offense includes 'generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, – it must descend to particulars.'" United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (quoting Russell v. United States, 369 U.S. 749, 765 (1962)). "Similarly, when one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." Pirro, 212 F.3d at 93 (internal quotation marks and quotation omitted).

Furthermore, an indictment cannot stand "if the facts alleged do not constitute an offense as a matter of law." United States v. Heicklen, 858 F. Supp. 2d 256, 262 (S.D.N.Y. 2012); see also United States v. Aleynikov, 676 F.3d 71, 75-76 (2d Cir. 2012) ("a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute" (citation and footnote omitted)). However, "at the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial." United States v. Dawkins, 999 F.3d 767, 780 (2d Cir. 2021) (cleaned up). In other words, if the actions alleged could not possibly form the basis of liability of the offenses charged in an indictment, such an indictment must be dismissed. But if an indictment includes allegations of actions that *could* satisfy all of the essential elements of a charged offense, the indictment will survive a motion to dismiss.

Notably, "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citing United States v. Nai Fook Li, 206 F.3d 56, 62 (1st Cir. 2000) (en banc)). Dismissal of charges is an "extreme sanction," United States v. Fields, 592 F.2d 638, 647 (2d Cir. 1978), that has been upheld "only in very limited and extreme circumstances," and should be "reserved for the truly extreme cases," "especially where serious criminal conduct is involved." United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979).

Indictments generally do not "have to specify evidence or details of how the offense was committed." United States v. Wey, No. 15-cr-611, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017). In reviewing a motion to dismiss an indictment, the court must take the allegations of the indictment as true. Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).

**DISCUSSION**

I.    **Counts One and Two – FARA Violations**

FARA provides that "[n]o person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement . . . or unless he is exempt from registration under the provisions of this subchapter." 22 U.S.C. § 612(a).

Count Two of the superseding indictment tracks the language of FARA and identifies the time and place where the charged offense was committed:

> In or about and between August 2019 and December 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LINDA SUN, also known as "Wen Sun," "Ling Da Sun," and "Linda Hu," together with others, knowingly and willfully acted and caused others to act as an agent of a foreign principal, namely, the Government of the People's Republic of China and the Chinese Communist Party, without registering with the Attorney General, as required by law.

Superseding Indictment ¶ 118. The superseding indictment also identifies actions that Sun took "at the order, direction, or request of representatives of the PRC and the CCP":

- "SUN worked to prevent representatives of the Taiwanese government from meeting with highly-ranked NYS officials,"

- "SUN worked . . . to shape the public statements of Politican-1 and Politician-2 to align with the PRC government's political priorities,"

- "SUN . . . obtained and publicly presented an official NYS proclamation for PRC Official-1 without authorization from her employer," and

- "SUN attempted to arrange visits by Henan provincial officials to the United States to meet with NYS officials, as well as a visit by Politician-2 to the PRC."

Superseding Indictment ¶ 20. The superseding indictment then provides details about each of the above alleged activities, including their approximate time and location.

The superseding indictment thus clearly provides facts "specific enough to describe a particular criminal act, rather than a type of crime," for Count Two. Pirro, 212 F.3d at 93. The superseding indictment "adequately tie[s] the government to the evidence presented to the grand

jury, and . . . permit[s] [Sun] to anticipate the acts and conversations that the government will

assert at trial violated the statutory prohibition against [acting as an unregistered agent of a

foreign principal]." United States v. Urso, 369 F. Supp. 2d 254, 266 (E.D.N.Y. 2005).

Similarly, Count One alleges that Sun, "together with others, did knowingly and

intentionally conspire to" commit the underlying offense and identifies numerous overt acts in

furtherance. Superseding Indictment ¶¶ 115-16. Under Second Circuit law, that is all that is

required. See United States v. LaSpina, 299 F.3d 165, 177-78 (2d Cir. 2002); see also United

States v. Frias, 521 F.3d 229, 235 (2d Cir. 2008).

Sun asserts that, despite the superseding indictment tracking the language of the relevant

statutes and identifying much more than the time and place of the alleged FARA violations, the

superseding indictment fails to state several essential elements of a FARA violation and fails to

allege a FARA violation as a matter of law. With the exception of the superseding indictment's

allegations as to Sun's conspiracy with various PRC consular officials, Sun's arguments fail.

## A.    Agency Relationship

As noted above, FARA prohibits acting "as an agent of a foreign principal unless he has

filed with the Attorney General a true and complete registration statement . . . or unless he is

exempt from registration under the provisions of this subchapter." 22 U.S.C. § 612(a). Under

FARA, the term "agent of a foreign principal" is defined as:

> any person who acts as an agent, representative, employee, or servant, or any
> person who acts in any other capacity at the order, request, or under the direction
> or control, of a foreign principal or of a person any of whose activities are directly
> or indirectly supervised, directed, controlled, financed, or subsidized in whole or
> in major part by a foreign principal, and who directly or through any other person
> . . . engages within the United States in political activities for or in the interests of
> such foreign principal.

22 U.S.C. § 611(c)(1)(i). Sun argues that the superseding indictment does not specify that she

acted "at the order, request, or under the direction or control, of a foreign principal." But the

superseding indictment amply satisfies the agency relationship requirement. It states that, "[w]hile working for the NYS government, including in high-ranking posts for Politician-1 and Politician-2 and in multiple state agencies, the defendant LINDA SUN . . . acted as an undisclosed agent of the Government of the PRC and the CCP." Superseding Indictment ¶ 9. The allegation that plaintiff "acted as an undisclosed agent of the Government of the PRC and the CCP" satisfies the agency relationship requirement: the definition of an agent of a foreign principal includes "any person who acts as an agent . . . *or* any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal. . . ." 22 U.S.C. § 611(c)(1) (emphasis added).

Even though indictments do not "have to specify evidence or details of how the offense was committed," Wey, 2017 WL 237651, at *5, the superseding indictment does not stop there. It also alleges several instances of agents of foreign principals or their agents exercising "direction or control" over Sun, including:

- "[O]n or about April 3, 2020, PRC Official-1 wrote to the defendant LINDA SUN that several Chinese foundations would donate 1,000 ventilators to the Greater New York Hospital Association. . . . PRC Official-1 *instructed* SUN to remind Politician-1 to thank the PRC government for facilitating the donation. On April 4, 2020, Politician-1 publicly thanked PRC Official-1, both in public remarks and in a post on Twitter, for helping arrange the donation. . . ." Superseding Indictment ¶ 28 (emphasis added).

- "In or about January 2023, at the *request* of PRC government representatives, the defendant LINDA SUN arranged for the Executive Chamber's Office of Correspondence ('Office of Correspondence') to produce a framed gubernatorial proclamation for SUN to present to PRC Official-1, celebrating the Lunar New Year. SUN obtained this proclamation from an Office of Correspondence employee outside ordinary channels and did not follow protocol by seeking supervisory authorization to create such a proclamation. . . ." Id. ¶ 36 (emphasis added).

- "On or about February 14, 2023, the defendant LINDA SUN submitted to a voluntary interview with the NYS Office of the Inspector General. . . . [S]he admitted that she had requested a proclamation for PRC Official-1, *after receiving a request* from the PRC Consulate in New York." Id. ¶ 37 (emphasis added).

- "In the spring of 2018, CC-1 *tasked* the defendant LINDA SUN with arranging for a delegation from Henan Province, PRC, to travel to the United States and to meet with Politician-2. . . . On or about March 29 and April 5, 2018, the defendant LINDA SUN provided CC-1 two versions of an invitation letter from the governor's office that Sun had drafted," even though "Sun lacked authorization to either issue or sign any new invitation letters." Id. ¶¶ 42, 44 (emphasis added).

- "In late 2018 and 2019, CC-1 *tasked* the defendant LINDA SUN with coordinating a trip to Henan Province, PRC for Politician-2, because CC-1 understood that it was in the PRC government's political interest to be seen as having received an important U.S. public official in Henan Province. On or about November 26, 2018, CC-1 wrote the defendant LINDA SUN that Henan Province was planning to send an invitation letter to Politician-2 and *directed* SUN to provide Politician-2's resume and a proposed itinerary in the PRC. . . . In response, SUN ultimately provided a short resume as well as the email address for Politician-2." Id. ¶¶ 54-55 (emphasis added).

- "On or about May 17, 2019 . . . CC-1 *directed* SUN to change the date of the delegation's visit on the invitation letter. . . . On or about September 16, 2019 . . . CC-1 *directed* SUN to reissue the letter for the third time. . . ." Id. ¶¶ 65-66 (emphasis added).

These allegations include what Sun herself states is necessary for an agency relationship: "a foreign principal establish[ing] a particular course of conduct to be followed and the defendant respond[ing] to and compl[ying] with that specific course of conduct." The superseding indictment thus adequately alleges an agency relationship under FARA.

The superseding indictment is also not defeated by its failure to allege that Sun does not fall into any of FARA's exemptions. FARA provides several exemptions to the requirement that agents of foreign principals register with the Attorney General, one of which encompasses "[a]ny person engaging or agreeing to engage only . . . in other activities not serving predominantly a foreign interest." 22 U.S.C. § 613(d). In other words, if an individual is not acting to serve "predominantly a foreign interest," she will not violate FARA by failing to register with the Attorney General.

Despite Sun's argument to the contrary, it was not necessary for the superseding indictment to specify that Sun's actions were taken predominantly to serve a foreign interest. Indictments need not refute the application of exemptions to a statute; rather "it is incumbent on

one who relies on such an exception to set it up and establish it." McKelvey v. United States, 260 U.S. 353, 357 (1922) ("By repeated decisions it has come to be a settled rule . . . that an indictment . . . founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere.") (citations omitted); see also United States v. Abrams, 29 F.R.D. 178, 181 (S.D.N.Y. 1961) (same); United States v. Guterma, 189 F. Supp. 265, 271 (S.D.N.Y. 1960) ("where, as here, the statute states a clear, definite, and general offense, and then excepts certain classes or acts from its scope, the exception need not be negatived." (quotation omitted)).

Any other challenges to Sun's status as an agent of a foreign principal are appropriate for trial or post-trial motions, not a motion to dismiss the indictment. See United States v. Angwang, No. 20-cr-442, 2022 WL 3223187, at *2 (E.D.N.Y. Aug. 8, 2022) (argument that indictment "lacked any indicia whatsoever of direction or control . . . is a challenge to the sufficiency of the government's evidence, not the contours of the indictment under Rule 7 or Rule 12. . . . Angwang's contention that he was working in parallel with the PRC officials rather than at their direction presents a question for the jury." (cleaned up)); United States v. Ji, No. 21-cr-265, 2022 WL 595259, at *4 (E.D.N.Y. Feb. 28, 2022) ("McMahon argues that the additional factual allegations in the Superseding Indictment 'show only that' he engaged in legal work as a private investigator, and 'not that [he] agreed to, or was even aware, that the investigation was at the direction or control of a foreign government or official.' . . . Again, however, 'there is no requirement that an indictment contain such detail,' Wedd, 993 F.3d at 121, and the language in the Superseding Indictment 'track[ing] the language of [18 U.S.C. § 951(a)] and stat[ing] the time and place' of the alleged violation in approximate terms . . . is sufficient.").

Assessing the superseding indictment's compliance with the Fifth Amendment, it includes more than "enough detail so that [Sun] may plead double jeopardy in a future prosecution based on the same set of events." Stringer, 730 F.3d at 124 (quoting De La Pava, 268 F.3d at 162). And the Government will not be able to "fill in elements of its case with facts other than those considered by the grand jury," having stated clearly the basis for the grand jury's indictment in the charging document. Pirro, 212 F.3d at 92 (quotation omitted). As for the Sixth Amendment, the superseding indictment clearly informs Sun of "the nature and cause of the accusation against [her]." Id. (quotation omitted).

## B.      Influence

In addition to the requisite agency relationship with a foreign principal, for an individual to violate FARA she must also take steps in the interest of that foreign principal. An agent of a foreign principal violates FARA if she does not register with the Attorney General and, as relevant here, "engages within the United States in political activities for or in the interests of such foreign principal." 22 U.S.C. § 611(c)(1)(i). "Political activities," in turn, are defined as "any activity that the person engaging in believes will, or that the person intends to, in any way influence . . . any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party." 22 U.S.C. § 611(o). Sun asserts that the superseding indictment "does not allege legally sufficient efforts to exert 'influence' under FARA."

Relying on Black's Law Dictionary, Sun defines "influence" as "the '[u]se of pressure, authority, or power,' whether directly or indirectly, 'to induce action or change the decisions or acts of another,' such as efforts seeking to 'alter, sway, or affect the will of another, but falling short of coercion.'" The Government takes issue with this definition, arguing that the usual

dictionary definition of "influence" is "to affect or alter by indirect or tangible means." But even proceeding under Sun's definition, the superseding indictment more than sufficiently alleges efforts to exert influence under FARA. The superseding indictment includes several allegations of Sun using her authority or power to "induce action or change the decisions or acts of another," including the following:

- "[I]n repeated written communications with PRC Consular representatives, including PRC Official-1 and PRC Official-3, SUN bragged that she had successfully prevented TECO [Taiwan's representative economic and culture office] from meeting with Politician-1 and Politician-2." Superseding Indictment ¶ 23 (footnote omitted).

- "In January 2019, the defendant LINDA SUN wrote to PRC Official-3, '. . . Certainly I have managed to stop all relations between the TECO and the state. I have denied all [r]equests from their office.'" Id. ¶ 23(b).

- "On or about February 27, 2019, the defendant LINDA SUN directed a member of Politician-1's staff to decline a request for a meeting between a mayor of a Taiwanese city and Politician-1. SUN instructed the staff member, 'No to the request. Explain in person.'" Id. ¶ 23(d).

- "In or about early 2021, the defendant LINDA SUN provided the PRC Consulate with access to shape the content of Politician-2's public remarks, including by providing a PRC government official with an advance preview of content. Based on feedback from a PRC government official, SUN took action to ensure that Politician-2 did not publicly address the detention of Uyghurs in PRC state-run camps in Xinjiang Province." Id. ¶ 30.

- "In the summer and fall of 2019, the defendant LINDA SUN facilitated the travel of another delegation from Henan Province to the United States through [a] fraudulent invitation letter; this fraudulent letter was submitted by four members of the delegation to the U.S. Department of State in support of their applications for travel visas to enter the United States. The proposed travel had two purposes: first, to facilitate economic exchange, including joining with two New York-based universities to 'join together to build a satellite campus in Henan, China,' towards which project the Henan provincial government or Henan private interests would contribute $1 billion; and second, to continue to try to persuade Politician-2 to visit Henan Province." Id. ¶ 61.

The above are examples of Sun using her position in the New York State government (in other words, her authority and power) to "alter, sway, or affect the will of another," namely other employees in the New York State government, by blocking "all formal and informal meetings

between [Politician-1, Politician-2] and TECO," as Sun allegedly stated herself in a message to PRC Official-1, id. ¶ 23(h); altering Politician-2's public remarks to avoid topics that were not favorable to the foreign principal Sun allegedly served; and facilitating a relationship between a province of China and New York. Because these actions, as alleged, demonstrate Sun using her authority and power to induce action or change the decisions or acts of another, they are sufficient to constitute the "influence" element of a FARA offense, even as Sun defines it.

### C. Willfulness

To impose criminal liability under FARA, an individual must have "willfully" violated the statute. 22 U.S.C. § 618(a). The superseding indictment alleges that Sun "knowingly and willfully acted and caused others to act as an agent of a foreign principal, namely, the Government of the People's Republic of China and the Chinese Communist Party, without registering with the Attorney General, as required by law." Superseding Indictment ¶ 118.

The superseding indictment also includes allegations that the FBI advised Sun that her activities could be a violation of FARA, such that "[t]he defendant LINDA SUN was reminded on multiple occasions regarding the unlawfulness of the types of activity in which she engaged on behalf of and at the request of the PRC government and the CCP." Id. ¶ 109. "On or about July 15, 2020, during the defendant LINDA SUN's voluntary interview with the FBI, the interviewing agents advised SUN of the FARA requirements." Id. ¶ 112. Specifically, "[t]he agents told SUN," among other things, that "if someone operated on behalf of the Chinese government without registering as a foreign agent, they could be in violation of FARA." Id. And much of the conduct forming the basis of Sun's alleged violation of FARA occurred after Sun's voluntary interview with the FBI, including her "(a) [r]epeated actions to influence NYS government officials and the public regarding policy with respond to Taiwan at the request of PRC Consular officials; (b) [p]roviding access to the PRC Consulate to shape the content of

13

Politician-2's Lunar New Year message for 2021; and (c) [p]rocuring and presenting a framed proclamation for PRC Official-1." Id. ¶ 113. These allegations are sufficient to plead willfulness and, contrary to Sun's argument, that she knew "her purported conduct was unlawful under FARA."

### D. Conspiracy to Commit FARA Violation

The superseding indictment adequately alleges that Sun conspired with others to violate FARA. "An indictment charging conspiracy is sufficient if it tracks the language of the statute and alleges all of the essential elements of conspiracy." United States v. Mermelstein, 487 F. Supp. 2d 242, 251 (E.D.N.Y. 2007). The essential elements of conspiracy under 18 U.S.C. § 371, the statute at issue here, are: "(1) an agreement among two or more persons, the object of which is an offense against the United States; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators." United States v. Svoboda, 347 F.3d 471, 476 (2d Cir. 2003). Although "[a]n indictment charging conspiracy 'need only put the defendants on notice that they are being charged with a conspiracy to commit the underlying offense,'" Urso, 369 F. Supp. 2d at 268 (quoting United States v. Wydermyer, 51 F.3d 319, 325, 326 (2d Cir. 1995)), the facts alleged in an indictment need still "constitute an offense as a matter of law." Heicklen, 858 F. Supp. 2d at 262 ("argument that the facts alleged do not constitute an offense as a matter of law" is a separate basis for a motion to dismiss from "a claim that the indictment is not pled with sufficient specificity"). Here, the indictment clearly identifies the violation of FARA as the underlying offense Sun is charged with conspiring to commit, and there are sufficient facts to constitute the offense of conspiracy as a matter of law.

Turning first to Sun's alleged co-conspirators CC-1 and CC-2, the superseding indictment adequately alleges that Sun conspired with them to violate FARA. Sun's arguments, that the

superseding indictment fails to allege that Sun agreed with CC-1 and CC-2 to violate FARA and that she understood them to be agents of the PRC government and the CCP, are unavailing. The superseding indictment states that Sun "engaged in political activities at the request of CC-1 and CC-2, whose activities were supervised, directed, and controlled by PRC government officials." Superseding Indictment ¶ 39. In other words, CC-1 and CC-2, alleged agents of the PRC government, requested Sun to (and Sun did) engage in political activities on behalf of the PRC government while she was not registered with the Attorney General pursuant to FARA. They agreed, and indeed requested, that Sun "act[ ] . . . at the order, request, or under the direction or control, of . . . a person any of whose activities are directly or indirectly supervised, directed, [or] controlled . . . by a foreign principal" to "influence" a "section of the public" about "domestic or foreign policies" or "the political or public interests, policies, or relations of a government of a foreign country or a foreign political party" without registering with the Attorney General, in violation of FARA. 22 U.S.C. §§ 611(c)(1) and (o), 612(a). According to the superseding indictment, Sun complied with these requests. As is required for conspiracy liability under 18 U.S.C. § 371, this is sufficient to allege that CC-1 and CC-2 "knowingly and willfully" agreed with Sun to commit an offense against the United States and that at least one co-conspirator took "an overt act in furtherance of the conspiracy." Svoboda, 347 F.3d at 476 (citations omitted).

Sun's argument that the superseding indictment fails because it does not allege that CC-1 and CC-2 "willfully" violated FARA is of no moment. "[I]n an indictment for conspiring to commit an offense – in which the conspiracy is the gist of the crime – it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." United States v. Bout, 731 F.3d 233, 240 (2d Cir. 2013) (quoting LaSpina, 299 F.3d at 177); see United States v. Kozeny, 493 F. Supp. 2d 693, 711 (S.D.N.Y.

2007), aff'd, 541 F.3d 166 (2d Cir. 2008) (rejecting motion to dismiss conspiracy charge for failing "to allege that [the defendant] possessed the specific intent to violate the FCPA" because "intent to join a conspiracy and an overt act by any co-conspiratory is sufficient to allege a conspiracy" (footnote omitted)).

Furthermore, the superseding indictment adequately alleges that Sun knew that CC-1 and CC-2 were "directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal." 22 U.S.C. § 611(c)(1). The superseding indictment states exactly that: "SUN understood that CC-1 and CC-2 were themselves acting as agents of the PRC government and the CCP when they made requests of SUN." Id. ¶ 40. Any argument that the superseding indictment remains insufficient on this point is an argument about the sufficiency of the evidence, which is not appropriately addressed on a motion to dismiss before the Government has provided a "full proffer of the evidence it intends to present at trial." United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss.").

In addition to conspiring with CC-1 and CC-2, the superseding indictment alleges that Sun acted at the direction of "high-ranking government official[s] at the PRC Consulate" (PRC Official-1 and PRC Official-2) and "PRC government official[s] assigned to the Political Section of the PRC Consulate" (PRC Official-3 and PRC Official-4) to violate FARA. Superseding Indictment ¶¶ 5-8, 20, 23-24. As the basis for charging Sun with conspiracy to violate FARA, the superseding indictment identifies several overt acts that Sun "together with others, did commit and cause the commission of," in which the "others" are officials of the PRC Consulate and PRC government officials assigned to the PRC Consulate (PRC Officials-1 through -4).

Foreign government officials, diplomatic and consular officers of foreign governments, and their staff – such as the PRC officials discussed in the superseding indictment – are not themselves required by FARA to register with the Attorney General as foreign agents.  22 U.S.C. §§ 613(a)-(c).  As a general rule, "[a] person . . . may be liable for conspiracy even though he was incapable of committing the substantive offense."  Salinas v. United States, 522 U.S. 52, 64 (1997) (citation omitted).  And although there is an exception to this rule when there is an "affirmative legislative policy to leave [the person's] acquiescence unpunished," Gebardi v. United States, 287 U.S. 112, 123 (1932), that does not prohibit Sun from facing a conspiracy charge even if her co-conspirators could not face the same charge.

This Court agrees it is quite likely that PRC Officials-1 through -4 could not be charged with conspiracy to violate FARA.[1]  But that does not mean they could not be considered unindicted co-conspirators with Sun.  The only cases Sun cites for the argument that she cannot be charged with conspiring with PRC Officials-1 through -4 either extend an exemption from punishment for an underlying offense to *that person's* charge with conspiring to violate the same statute (the parallel here would be if PRC Officials-1 through -4 were charged with conspiracy instead of Sun).  Thu, a perpetrator of a crime cannot be charged with conspiring with her own

---

[1] Courts will find an "affirmative legislative policy" to exempt people from punishment under a statute when (1) the "statute focuses on certain categories of persons at the exclusion of others," and (2) there is "something more" indicating "a policy basis for Congress to exclude [the] category of defendants from criminal liability."  United States v. Hoskins, 902 F.3d 69, 80, 85 (2d Cir. 2018).  Here, the text of FARA goes further than "focus[ing] on certain categories of persons at the exclusion of others."  Id. at 85.  FARA explicitly exempts diplomatic or consular officers, officials of foreign governments, and staff members of diplomatic or consular officers from the requirements of FARA as long as they meet certain requirements.  22 U.S.C. § 613(a)-(c).  And the legislative history indicates a policy basis for Congress to exclude these officials: when asked during a hearing before the House Subcommittee of the Committee of the Judiciary in 1937 why diplomatic representatives were not covered by FARA, Representative John W. McCormack (D-Mass), the introducer of the bill, explained that "that presents a situation where naturally we assume that the diplomatic agent is going to abide by international law and of course we have another way of meeting that situation because of the relations that exists between the nations.  In other words, that would not require legislation and *that is not the kind of subject which the new legislation is directed towards* and if that difficulty arises we can take care of that through our diplomatic relations."  Hearing on H.R. 1591 before Subcommittee No. 1 of the House Committee on the Judiciary, 75th Cong., 1st Sess., pp. 7-8 (1937).

victim (the paradigmatic example of this is statutory rape); or hold that if one alleged co-conspirator is found not guilty of conspiracy, the other co-conspirator's conviction cannot stand because he would have no one with whom to conspire.  See Gebardi, 287 U.S. at 123 ("On the evidence before us the woman petitioner has not violated the Mann Act and, we hold, is not guilty of a conspiracy to do so.  As there is no proof that the man conspired with anyone else to bring about the transportation, the convictions of both petitioners must be [r]eversed."); Hoskins, 902 F.3d 69 (reversing district court's denial of a foreign national's motion to dismiss a charge of conspiracy to violate the FCPA because Congress had demonstrated "a desire to leave *foreign nationals* outside the FCPA when they do not act as agents, employees, directors, officers, or shareholders of an American issuer or domestic concern" (emphasis added)); United States v. Amen, 831 F.2d 373, 381 (2d Cir. 1987) (reversing aiding and abetting conviction for low-level drug dealer because statute he was charged with aiding a violation of was only supposed to create liability for kingpins).

The cases stand for the proposition that the Government may not circumvent the substantive inability to indict a person under a statute by indicting that person for conspiracy to violate the statute.  That is not what is happening here because PRC Officials 1-4 are not charged with conspiracy.  But that doesn't mean they did not conspire. Even if PRC Officials-1 through -4 could not themselves be charged with conspiracy to violate FARA, Sun points to no cases which would prevent them from being considered unindicted co-conspirators for purposes of a conspiracy charge against Sun.

Finally, Sun's argument that Count One must be dismissed because it alleges "multiple separate and distinct conspiracies in a single count," United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992), is unavailing.  On a "superficial reading," Count One alleges a single

conspiracy. United States v. Gabriel, 920 F. Supp. 498, 504 (S.D.N.Y. 1996), aff'd, 125 F.3d 89

(2d Cir. 1997). "[T]he Court of Appeals has repeatedly cautioned that the determination of

whether a conspiracy is single or multiple is an issue of fact 'singularly' well suited to

determination by a jury." Id. Accordingly, "the Court cannot conclude on the basis of the

pleadings alone that there is *no* set of facts falling within the scope of Count [One] that could

warrant a reasonable jury in finding a single conspiracy." Id. at 505 (emphasis in original).

### E.  Constitutional Implications

Sun next argues that "stretching FARA to criminalize political and policy activities by

state officials contravenes important constitutional principles." If political and policy activities

by state officials, with nothing more, was all that the superseding indictment sought to

criminalize, this Court would agree. However, that is not what the superseding indictment

charges. The superseding indictment charges Sun with acting as an agent for a foreign principal

without registering with the Attorney General, as FARA requires. This Court passes no

judgment on whether the Government will be able to prove that Sun did, in fact, act as an agent

for a foreign principal, but for purposes of the superseding indictment, the Government has

adequately pled this allegation. Accordingly, this is not a "prosecution of political and policy

choices by a state official expected to conduct foreign relations on the state's behalf," as Sun

claims; it is a prosecution of failing to register as a foreign agent (as well as conspiring to do so).

Put another way, if the Government fails to prove at trial that Sun was acting as an agent of the

Government of the PRC and the CCP, then all of her same "political and policy choices" will not

form the basis of criminal liability under FARA.

### F.  Rule of Lenity

Sun's final argument for dismissal of Counts One and Two is that the rule of lenity

requires dismissal: she "and legions of state officials had no notice that simply doing their jobs

could land them in federal prison," because "it is hardly clear from FARA's text that it covers political activities by state officials that are consistent with federal and state foreign policies." Again, if all the superseding indictment alleged was that Sun engaged in political activities consistent with federal and state foreign policies, this Court would agree. But the superseding indictment charges Sun with acting as an agent for a foreign principal without registering with the Attorney General, which FARA plainly and unambiguously prohibits.

Sun asserts that "the lack of either notice or a showing of probability of knowledge of the statute . . . violate[s] fundamental precepts of due process." United States v. Mancuso, 420 F.2d 556, 557 (1970). But, as discussed above, the superseding indictment adequately alleges that Sun had notice of the unlawfulness of her actions and that she knowingly violated FARA. See supra Section I.C.

Because the superseding indictment charges Sun with the exact conduct covered by FARA – that is, knowingly acting as a foreign agent without registering with the Attorney General – there is no novel application of the statute that requires the Court to dismiss the superseding indictment based on the rule of lenity.

## II.     Count Three – Visa Fraud

In addition to the above FARA offenses, Sun is charged with visa fraud based on the alleged falsification, in 2019, of an "invitation letter for a delegation from Henan Province, PRC, purportedly signed by Politician-2." Superseding Indictment ¶ 120. The statute under which Sun is charged prohibits "knowingly present[ing] [an] application, affidavit, or other document [required by the immigration laws or regulations prescribed thereunder] which contains any . . . false statement or which fails to contain any reasonable basis in law or fact." 18 U.S.C. § 1546(a). False statements covered by this statute are those made "with respect to a material fact." United States v. Khalje, 658 F.2d 90, 92 (2d Cir. 1981); 18 U.S.C. § 1546(a).

Additionally, "[t]he requirement of a knowing presentment assures that the presenter is liable only when he knows the statement is false." Khalje, 658 F.2d at 92.

Sun argues that the superseding indictment fails to allege that Sun knowingly committed visa fraud and that the invitation letter contained a materially false statement.

### A. Knowledge

The superseding indictment alleges that:

> LINDA SUN . . . together with others, did *knowingly and intentionally* present one or more applications and other documents required by the immigration laws and regulations prescribed thereunder which contained one or more false statements with respect to one or more material facts, to wit: a falsified invitation letter for a delegation from Henan Province, PRC, purportedly signed by Politician-2.

Superseding Indictment ¶ 120 (emphasis added). Additionally, under the heading "SUN Drafts Fraudulent Invitation Letter for Henan Delegation's 2019 Visit," the superseding indictment alleges that Sun "facilitated the travel of [a] delegation from Henan Province to the United States through [a] fraudulent invitation letter." Superseding Indictment ¶ 61. Specifically, CC-1 requested that Sun draft an "invitation letter for the Director of the Henan Foreign Affairs Office to visit New York." Id. ¶ 62 (internal quotation marks omitted). Sun drafted such an invitation letter not once but three times, based on changing dates and personnel involved in the visit. Id. ¶¶ 64-68. The superseding indictment alleges that "[n]either Politician-1, Politician-2, nor their respective staffs authorized the defendant LINDA SUN to draft or issue an invitation letter in support of the Henan Province delegation's proposed visit to the United States," and that "SUN lacked authorization to issue an invitation letter without necessary approvals." Id. ¶ 69. Furthermore, Politician-2's "handwritten signature [on the invitation letter] was falsified." Id.

Given these allegations, Sun's argument that the superseding indictment "does not allege that she actually lacked the necessary approvals to issue the Invitation Letter, knew or believed

she lacked such approvals, forged Politician-2's signature, knew or believed Politician-2's signature was inauthentic, or otherwise thought the Invitation Letter was false in any way" is disingenuous. A case on which Sun relies illustrates the futility of her argument. In <u>United States v. Berlin</u>, 472 F.2d 1002, 1007-08 (2d Cir. 1973), the Second Circuit dismissed a count with a knowledge requirement – for which the indictment alleged that the defendant "aided, abetted, counseled and caused [another] to submit . . . a 'false' application for mortgage insurance" – because the indictment did not allege that the defendant knew the application was false. However, the Second Circuit upheld the defendant's conviction on another count in the same indictment because the indictment included, for that count, an allegation that the defendant knew information in an application was false. <u>Id.</u> at 1008. Here, the superseding indictment alleges that Sun "*knowingly* . . . present[ed] one or more . . . documents . . . *which contained one or more false statements* with respect to more or more material facts, to wit: [the] falsified invitation letter." Superseding Indictment ¶ 120. As the Second Circuit held in <u>Berlin</u>, this is enough.

Nor do the other cases Sun cites require more than what the superseding indictment alleges. In <u>United States v. Tonelli</u>, 577 F.2d 194 (3d Cir. 1978), the Third Circuit dismissed an indictment against the defendant after trial because the indictment cherry-picked portions of the defendant's grand jury testimony to make it seem like he had perjured himself, but a full review of the grand jury testimony showed that the defendant clarified his statements to make them true or that the prosecutor asked the questions so ambiguously that the defendant's answers were not false. Reviewing the adequacy of the evidence, the court held that the indictment failed "to specify in what particular the defendant's reply was false" as to one statement because the phrasing of the false statement in the indictment was "conclusory and not contrary to what the

defendant had said before the grand jury." Id. at 198.  As to another statement, the court held that "[t]he indictment *and proof*" were "deficient" because "the prosecutor chose to leave the record in an equivocal condition [such that] it [could not] be the basis of a false swearing conviction."  Id. at 200 (emphasis added).

Tonelli thus considered the adequacy of the evidence presented at trial and found that, based on the evidence, the indictment did not sufficiently specify the false statements that would constitute perjury.  Such a conclusion has no application here, where the Government has not made a "full proffer of the evidence it intends to present at trial."  Alfonso, 143 F.3d at 776-77 ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").  Instead, at this stage, the Court considers whether the superseding indictment "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling, 418 U.S. at 117 (citations omitted).  The superseding indictment alleges that Sun knew that the invitation letter was unauthorized (rendering the "invitation" in the letter false), thus including the "knowing" element of visa fraud, informing Sun of the charge against her, and enabling Sun to plead double jeopardy in future prosecutions for the same offense.

Finally, even considering the standard used in Tonelli and recited briefly in United States v. Stringer, 730 F.3d 120 (2d Cir. 2013), that indictments must "set forth the precise falsehoods alleged and the factual bases of their falsity," the superseding indictment does specify "what statements are alleged to be false, and in what respect they are false."  Stringer, 730 F.3d at 126-27 (citing Tonelli, 577 F.2d at 200).  In terms of the specific statements alleged to be false, the

superseding indictment alleges that the authenticity of the invitation letter was false, similar to the sham contract the defendant knew was false in the charge that was allowed to stand in <u>Berlin</u>, 472 F.2d at 1007.  <u>See</u> Superseding Indictment ¶ 69.  And the superseding indictment alleges that the authenticity was false in the respect that Sun drafted the letter without authorization and that Politician-2's signature was falsified.  <u>Id.</u>  This is enough.

### B.     Materially False Statement

Sun's claim that the superseding indictment does not allege that the invitation letter contained any materially false statements also fails.  The superseding indictment alleges that the falsified nature of the invitation letter was a "false statement[ ] with respect to one or more material facts."  <u>Id.</u> ¶ 120.  No more is needed.  "[M]ateriality is a mixed question of law and fact that the Second Circuit has repeatedly held is properly reserved for jury determination."  <u>United States v. Watson</u>, No. 23-cr-82, 2024 WL 1858199, at *4 (E.D.N.Y. Apr. 29, 2024) (citing <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1298 (2d Cir. 1991); <u>United States v. Litvak</u>, 808 F.3d 160, 175-76 (2d Cir. 2015)).  Thus, any suggestion that the superseding indictment need do more than "track the language of the statute charged" as to the materiality element, <u>Stringer</u>, 730 F.3d at 124 (quoting <u>Pirro</u>, 212 F.3d at 92), "is a challenge to the sufficiency of the government's evidence, not to the contours of the indictment under Rule 7 or Rule 12, and as such it falls short."  <u>Watson</u>, 2024 WL 1858199, at *4 (citing <u>United States v. Alshahhi</u>, No. 21-cr-371, 2022 WL 2239624, at *4 (E.D.N.Y. June 22, 2022)).

Because the facts alleged in the superseding indictment are sufficiently specific and can form the basis of liability for visa fraud, Sun's motion to dismiss Count Three is denied.

### III.    Counts Four through Seven – Bringing in Aliens

Because four members of the Henan Province delegation attached the above discussed invitation letter to their visa applications, which the U.S. Department of State eventually

approved, and they then used those visas to enter the United States, the superseding indictment includes four counts of alien smuggling. The relevant statute states that "[a]ny person who . . . encourages or induces an alien to come to, enter, or reside in the United States, knowingly or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished. 8 U.S.C. § 1324(a)(1)(A)(iv). The superseding indictment includes an enhanced penalty, which applies when "the offense was done for the purpose of commercial advantage or private financial gain." 8 U.S.C. § 1324(a)(1)(B)(i).

For the reasons discussed above as to Count Three, Sun's argument that the superseding indictment fails to allege that she knew the invitation letter was unauthorized, and therefore false, is unavailing. Sun's other argument, that Counts Four through Seven must be dismissed because the superseding indictment does not "allege that Ms. Sun knew or had any reason to believe that the Invitation Letter – or the delegation's subsequent visit to New York – was somehow in violation of the law," also fails. The superseding indictment specifically alleges that Sun, "together with others, encouraged and induced [four members of the Henan Province delegation] to come to and enter the United States, *knowing and in reckless disregard of the fact that such coming to and entry was and would be in violation of the law*, for the purpose of commercial advantage and private financial gain." Superseding Indictment ¶ 122 (emphasis added). Nothing more is required. See Hamling, 418 U.S. at 117.

## IV. Count Ten – Conspiracy to Commit Money Laundering

Count Ten charges both Sun and Hu with conspiracy to commit money laundering, specifically conspiring to transport, transmit, or transfer:

> a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States knowing that the monetary instrument or funds involved . . . represent the proceeds of some form of unlawful activity and

knowing that such transportation, transmission, or transfer is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity.

18 U.S.C. §§ 1956(a)(2)(B)(i), 1956(h).  The superseding indictment identifies the following "specified unlawful activities" ("SUAs"): bank fraud (18 U.S.C. § 1344), misuse of means of identification (18 U.S.C. §§ 1028(a)(7), (c)(3)(A)), violation of FARA (22 U.S.C. § 612), and bribery in the third degree under New York state law (N.Y. Penal Law § 200.00).

Sun first argues that the New York state law offense of bribery in the third degree cannot serve as an SUA because the specific statute cited in the superseding indictment criminalizes giving bribes, but not the receipt of bribes, which is covered by a separate statute.[2]  Thus, Sun contends, any money involved in the violation of N.Y. Penal Law § 200.00 would be considered an *expenditure* to complete the offense, not "*proceeds* of some form of unlawful activity" that the defendants knowingly transported, transmitted, or transferred "to conceal or disguise [their] nature."  18 U.S.C. § 1956(a)(2)(B)(i) (emphasis added).  There is some common sense to this argument, and the Court must wonder why the Government did not choose to include the receipt of bribes, as prohibited by N.Y. Penal Law § 200.10, as the SUA for this money laundering conspiracy charge.

However, the statutory definition of "proceeds" in the money laundering statute is broad enough to encompass money related to giving a bribe, in addition to receiving one.  The term "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."

---

[2] Compare N.Y. Penal Law § 200.00 ("A person is guilty of bribery in the third degree when he confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced.") with N.Y. Penal Law § 200.10 ("A public servant is guilty of bribe *receiving* in the third degree when he or she solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that his or her vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced." (emphasis added)).

18 U.S.C. § 1956(c)(9).  Money used to bribe a public servant, which is the money at issue in

N.Y. Penal Law § 200.00, is certainly money "derived from" a form of unlawful activity,

namely, bribing a public servant.  Accordingly, the laundering of this money, knowing it was

derived from an unlawful activity, which the superseding indictment adequately alleges, is

sufficient to form the basis of a conspiracy to commit money laundering charge.[3]

Next, Sun argues that listing bribery as an SUA in the context of money laundering

"impermissibly merges the alleged money laundering offense with the underlying SUA,"

because it would mean the laundering of funds occurred in the same transaction through which

those funds became tainted by crime.  This argument misunderstands the superseding indictment.

The superseding indictment charges that Sun obtained "numerous gifts and benefits from CC-1

and CC-2," Superseding Indictment ¶ 102, presumably in violation of N.Y. Penal Law § 200.00

and therefore becoming tainted by crime.  Then, in a separate step, the superseding indictment

alleges that Sun and Hu conspired to transport, transmit, or transfer that money, knowing that it

derived from a violation of N.Y. Penal Law § 200.00, and knowing that the transportation,

transmission, or transfer was "designed in whole or part to conceal or disguise the nature [or]

source" of the money, 18 U.S.C. § 1956(a)(2)(B)(i), including by transferring money to a

"Financial Consultancy account," "structuring cash payments into multiple accounts associated

with HU's family and business, including into an account associated with the Wine Store," and

"conducting layering activities, that is, moving funds between multiple family and business

accounts, to conceal the original provenance of the funds."  Superseding Indictment ¶ 104.  Thus,

---

[3] As Sun concedes, the crime of money laundering conspiracy does not require the defendant to have committed the predicate crime yielding the illegal proceeds, see United States v. Bodmer, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004) (citation omitted), so it is not fatal that the superseding indictment fails to allege that Sun herself committed a violation of N.Y. Penal Law § 200.00.

the money laundering transactions alleged are not "the same transactions that would constitute the alleged bribery."

Sun also challenges the inclusion of a violation of FARA as an SUA in Count Ten. Sun argues that the superseding indictment does not link the alleged violation of FARA with any particular payments that could constitute proceeds under the money laundering statute. However, the superseding indictment explicitly states that, "[i]n return for" Sun's actions that violated FARA, as summarized in paragraphs 9 and 10 of the superseding indictment, Sun "received substantial economic and other benefits from representatives of the PRC government and the CCP, including the facilitation of millions of dollars in transactions for the PRC-based business activities of SUN's husband, the defendant CHRIS HU; travel benefits; tickets to events; promotion of a close family friend's business; employment for SUN's cousin in the PRC; and Nanjing-style salted ducks prepared by PRC Official-1's personal chef that were delivered to the residence of SUN's parents." This clearly links the FARA violation with particular payments that could constitute proceeds under the money laundering statute.

Sun then repeats her impermissible merger argument: that any money Sun received from the PRC for her violation of FARA cannot also form the predicate for a money laundering charge. A case Sun cites, and indeed quotes the relevant part of, defeats her argument: "when the underlying crime is completed, a transaction conducted with the proceeds from that crime may provide the basis for a money laundering conviction." United States v. McCarthy, 271 F.3d 387, 395 (2d Cir. 2001). When Sun allegedly agreed to and did serve as an agent for the PRC without registering with the Attorney General, and the PRC provided her with economic and other benefits for this conduct, Sun completed a violation of FARA. Laundering those economic

benefits, then, as the superseding indictment alleges, "may provide the basis for a money laundering conviction."  Id.

Sun's last argument as it relates to the inclusion of a FARA violation as an SUA is that the superseding indictment fails to allege that the purpose of transporting the proceeds from the FARA violation was to conceal them.  But the superseding indictment alleges just that: that Sun and Hu "conspire[d] to transport, transmit and transfer monetary instruments and funds . . . knowing that [they] represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission and transfer was *designed* in whole and in part *to conceal or disguise* the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity."  Superseding Indictment ¶ 128 (emphasis added).  This argument thus fails as well.

Finally, Sun asserts that the money laundering statute charged in Count Ten only covers money laundering involving international transfers and transactions, and the superseding indictment alleges purely domestic transfers and transactions.  Contrary to Sun's assertion, the superseding indictment states that, after receiving proceeds from SUAs, "HU repatriated this wealth [from the PRC] to the United States."  Id. ¶ 104.  That the specific allegations concerning Counts Eight and Nine do not allege international transfers or transactions does not defeat Count Ten, or the violations alleged in Counts Eight and Nine from serving as SUAs in Count Ten. Because it is "logically possible that some of the alleged transactions" occurred internationally, any further argument on this point "implicates the nature of the Government's trial proof and not the sufficiency of the indictment."  United States v. An, 733 F. Supp. 3d 77, 96 (E.D.N.Y. 2024) (footnote omitted).

This Court acknowledges that the superseding indictment is not a model of clarity. Nevertheless, because the superseding indictment "contains the elements of the offense[s] charged," informs defendants "of the charge[s] against which [they] must defend," and "enables [them] to plead an acquittal or conviction in bar of future prosecutions for the same offense," the Court rejects most of Sun's arguments for dismissal.

## V. Counts Eight, Nine, and Eleven through Thirteen – Conspiracy to Commit Bank Fraud, Misuse of Means of Identification, and Money Laundering

Hu states that he "join[s] in Ms. Sun's motion to dismiss Counts Eight through Thirteen of the superseding indictment as alleged against Mr. Hu for the reasons stated therein," but Sun only raises arguments for dismissal as to Count Ten, as discussed above. For the reasons stated in Section IV, Count Ten survives Sun's motion to dismiss. Finding no arguments or independent basis for the dismissal of Counts Eight, Nine, or Eleven through Thirteen, the Court declines to dismiss these counts.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      May 5, 2025