

*U.S. Department of Justice*

*United States Attorney
Eastern District of New York*

| | |
|---|---|
| AAS | *271 Cadman Plaza East* |
| F. #2021R00600 | *Brooklyn, New York 11201* |

May 6, 2025

<u>By ECF and Email</u>

Kenneth Abell
Jarrod L. Schaeffer
Abell Eskew Landau LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001

Seth DuCharme
Nicole Boeckmann
Bracewell LLP
31 W. 52nd Street, Suite 1900
New York, NY, 10019-6118

    Re: United States v. Linda Sun, et al.
       <u>Criminal Docket No. 24-346 (S-1) (BMC)</u>

Dear Counsel:

    Enclosed please find a signed expert disclosure, provided in accordance with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.  The government is filing a redacted version of the expert disclosure on ECF that removes references to individuals and entities that have been anonymized in the above-referenced superseding indictment.  The government reserves the right to supplement and/or correct this disclosure if appropriate.  <u>See</u> Fed. R. Crim. P. 16(a)(1)(G)(vi).

The government also requests reciprocal discovery from the defendants pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure.

                Very truly yours,

                JOSEPH NOCELLA, JR.
                United States Attorney

By:   /s/ Alexander Solomon
       Alexander Solomon
       Robert M. Pollack
       Amanda Shami
       Assistant U.S. Attorneys
       (718) 254-7000

Enclosure

cc:    Clerk of the Court (BMC) (by ECF)

**Disclosure as to Expert Witness Julian Ku**

I.   Statement of Opinions, Bases and Reasons

Attached hereto is "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under [Rule 16](b)(1)(C), and the bases and reasons for them," Fed. R. Crim. P. 16(a)(1)(G)(iii):

II.   Qualifications

The following is a list of "the witness's qualifications, including a list of all publications authored in the previous 10 years," Fed. R. Crim. P. 16(a)(1)(G)(iii):

> I am the Maurice A. Deane Distinguished Professor of Constitutional Law and Faculty Director of International Programs at the Maurice A. Deane School of Law at Hofstra University in New York. I am a nationally recognized expert on the relationship between international law and domestic legal systems with a particular focus on the United States and China. I am the author of over forty articles, essays, and book chapters, several of which are focused on China and the interaction between China's domestic legal system with the international legal system. My academic work has appeared in leading peer-reviewed academic journals including the *American Journal of International Law*, *Supreme Court Review*, and *Constitutional Commentary*. I have presented academic papers at leading academic conferences including the Annual Meeting of the American Society of International Law. I am also a member of the American Law Institute, which is a select group of lawyers and scholars charged with developing authoritative principles and "restatements" of different areas of American law. Additionally, I have been quoted as an authority on China-related legal issues in more than a hundred news articles, including in the publications like the *Wall Street Journal*, the *New York Times*, the *Washington Post*, and the *Los Angeles Times.* I have also submitted testimony before the Congressional-Executive Commission on China, the Senate Judiciary Committee, Subcommittee on Border Security and Immigration and the House Foreign Affairs Committee, Subcommittee on Asia and the Pacific.

The following is a list of all publications I have authored in the previous 10 years:

1. *China's Diplomacy and International Law*, 119 Am. J. Int'l L. 372 (2025) (book review).
2. *Governor Newsom's Tariff Gambit Risks Violating Federal Law*, Daily Journal (April 8, 2025).
3. *The President's Unilateral Power to Defend America Abroad*, National Review Online (March 23, 2025).
4. *How Should Historical Gloss Inform Our Interpretation of the Constitution?: A Review of Historical Gloss and Foreign Affairs: Constitutional Authority in Practice,* FedSoc Blog (December 4, 2024).

5. *The Anti-Secession Law in Comparative Context: A Sign of Weakness and Insecurity* in EMPLOYING "NON-PEACEFUL" MEANS AGAINST TAIWAN: THE IMPLICATIONS OF CHINA'S ANTI SECESSION LAW, Bonny Lin & I-Chung Lai, ed. 58 (2024).
6. *Time up for TikTok? A ChinaFile Conversation*, CHINAFILE (March 15, 2024).
7. *The Rise of China, the United States, and the Limits of International Law*, 49 N.C. J. INT'L L. 1 (2023).
8. *How China's Spies Fooled an America That Wanted to be Fooled*, LAWFARE (March 29, 2023).
9. *China Has Ditched Its Own Principles to Back Russia*, FOREIGN POLICY (April 7, 2022).
10. *Considering the Consequences of an Unchecked Presidential Recognition Power for U.S. Taiwan Policy*, 13 GEORGE MASON INT'L L.J. 55 (2022).
11. *China's Successful Foray into Asymmetric Lawfare*, LAWFARE (September 29, 2021).
12. *How the Law of Collective Self-Defense Undermines the Peace and Security of the Taiwan Strait*, in STRENGTHENING THE US-JAPAN ALLIANCE: PATHWAYS FOR BRIDGING LAW AND POLICY, Ishizuka, Kurosaki, and Waxman ed. 76 (2020).
13. *What to Make of Secretary Pompeo Decertifying Hong Kong Autonomy*, LAWFARE (May 28, 2020).
14. *Nicaragua v. Colombia*, in MARITIME DISPUTE RESOLUTION PROJECT, NYU Asia Law Institute (2020).
15. *The Hong Kong Human Rights and Democracy Act Is Redundant, but Still Worthwhile*, LAWFARE (November 25, 2019).
16. *The U.S. Recently Erected a New Hurdle to U.S.-China Academic Cooperation. Here's What It Might Mean,* CHINAFILE (August 8, 2019).
17. *The Taiwan Travel Act is Legally Binding*, 36 CHINESE (TAIWAN) YEARBOOK OF INTERNATIONAL LAW 116 (2018).
18. *The Detention of Huawei's CFO is Legally Justified. Why Doesn't the U.S. Say So?,* LAWFARE (December 12, 2018).
19. *Why China's Disappearance of Interpol's Chief Matters*, LAWFARE (October 9, 2018).
20. *It's Time for South China Sea Economic Sanctions*, LAWFARE (June 1, 2018).
21. *Ignore the Hype: The Taiwan Travel Act is Legally Binding*, LAWFARE (March 20, 2018).
22. *Tracking Compliance with the South China Sea Arbitral Award: China's 2017 Summer Fishing Moratorium May Rekindle Conflict with the Philippines*, LAWFARE (Mar. 7, 2017).
23. *One Less Thing to Worry About: Secretary of State Rex Tillerson Didn't Actually Call for a Blockade of China's South China Sea Islands*, LAWFARE (Feb. 7, 2017).
24. *President Trump Can Legally End the One China Policy and Station U.S. Troops in Taiwan*, LAWFARE (Jan. 17, 2017).
25. *How China's Views on the Law of Jus ad Bellum Will Shape Its Legal Approach to Cyberwarfare,* HOOVER INSTITUTION AEGIS PAPER SERIES (August 2017).
26. *The Significance of China's Rejection of the South China Sea Arbitration for Its Approach to International Dispute Settlement and International* Law, 34 CHINESE (TAIWAN) YEARBOOK OF INTERNATIONAL LAW AND AFFAIRS 73 (2016).
27. *Perceptions and Reality: The Enforcement of Foreign Arbitral Awards in China*, 33 UCLA PACIFIC BASIN LAW JOURNAL 1 (2016).

28. *The Nonexistent Legal Basis for China's Seizure of the U.S. Navy's Drone in the South China Sea*, Lawfare (Dec. 16, 2016).
29. *Will President-elect Trump Fire the First Shot in the U.S.-China (Economic Sanctions) War?*, Lawfare (Nov. 24, 2016).
30. *U.S. Defense Department Confirms USS Decatur Did Not Follow Innocent Passage and Challenged China's Excessive Straight Baselines*, Lawfare (Nov. 5, 2016).
31. *Tracking China's Compliance with the South China Sea Arbitral Award: Scarborough Shoal Update*, Lawfare (Oct. 31, 2016).
32. *The Latest US Freedom of Navigation Operation Opens the Legal Door to More Aggressive US Challenges to China's Artificial Islands*, Lawfare (Oct. 24, 2016).
33. *Tracking China's Compliance with the South China Sea Arbitral Award*, Lawfare (Oct. 3, 2016).
34. *Whether the South China Sea Arbitral Award Matters Will Depend Almost Entirely On the U.S.*, Lawfare (Sept. 12, 2016).
35. *More Possible U.S. Responses to the South China Sea Award: Why Not Economic Sanctions?*, Lawfare (July 27, 2016).
36. *U.S. Response to the South China Sea Arbitration and the Limits of the Diplomatic "Shamefare" Option*, Lawfare (July 19, 2016).
37. *Possible U.S. Responses to the South China Sea Arbitration Award: The Aggressive FONOPs Option*, Lawfare (July 13, 2016).
38. *Short, Quick Take on the Philippines' Sweeping Victory in the South China Sea Arbitration*, Lawfare (July 12, 2016).
39. *The Philippines Should Dare China to Challenge the Arbitral Award in the ICJ*, Lawfare (July 5, 2016).
40. *A Guide to Countering Chinese Government Spin on the Fairness of the South China Sea Arbitration Tribunal*, Lawfare (June 20, 2016).
41. *China's Ridiculously Weak Legal Argument Against Complying with the South China Sea Arbitration Award*, Lawfare (June 6, 2016).
42. *We've Seen This Movie Before: The Latest U.S. "Innocent Passage" Freedom of Navigation Operation in the South China Sea*, Lawfare (May 11, 2016).
43. *Does the U.S. Have a Legal Obligation to Defend the Scarborough Shoal for the Philippines? Not Until It Decides Who Owns It*, Lawfare (Apr. 27, 2016).
44. *Is a U.S.-China "Face-Saving Compromise" Possible in the South China Sea?*, Lawfare (Apr. 8, 2016).
45. *Is the Nine Dash Line a Super-Sized Exclusive Economic Zone?*, Lawfare (Mar. 25, 2016).
46. *The U.S. Government's Continued Indecision on the South China Sea: Can We Get Past the FONOP Debate?*, Lawfare (Mar. 17, 2016).
47. *Isolating China: Why the Latest U.S. Freedom of Navigation Operation May Have Already Succeeded*, Lawfare (Feb. 1, 2016).
48. *Taiwan President Ma's "Unhelpful" Visit to the South China Sea*, Lawfare (Jan. 29, 2016).
49. *Why Does the U.S. Demand Innocent Passage in the South China Sea, But Not in the Persian Gulf?*, Lawfare (Jan. 22, 2016).

50. *Taiwan's U.S. Defense Guarantee is Not Strong, But It Isn't That Weak Either*, LAWFARE (Jan. 15, 2016).
51. *Why Ratification of the U.N. Convention on the Law of the Sea May Violate Article III of the U.S. Constitution*, 25 MINN. J. INTL. L. 1 (Winter 2016).
52. *Trump Might Be Stuck with NAFTA*, LOS ANGELES TIMES (November 29, 2016) (with John Yoo). (Republished in the Chicago Tribune, the Cleveland Plain Dealer, the Houston Chronicle, and the St. Paul Pioneer Press).
53. *It is Beijing's fault that China lost big in the South China Sea ruling*, QUARTZ (July 17, 2016).
54. *While the Courts Have Ruled, China Is Not Leaving the South China Sea*, THE NATIONAL INTEREST (July 15, 2016).
55. *China's Legal Scholars Are Less Credible After South China Sea Ruling*, FOREIGN POLICY (July 14, 2016).
56. *China's Ridiculously Weak Legal Argument for Not Complying with the South China Sea Arbitration*, *Financial Times* (Chinese edition) (July 1, 2016) (中国抵制南海仲裁的理由成立吗?).
57. *Differing interpretations of international law could spark major naval conflict between the US and China*, *Quartz* (October 20, 2015).
58. *The U.S. Isn't Challenging China's Claims in the South China Sea, Yet*, *Defenseone* (May 29, 2015)
59. *Bond, the Treaty Power, and the Overlooked Value of Non-Self-Executing Treaties*, 90 NOTRE DAME L. REV. 1607 (2015) (with John Yoo).
60. *Striking the Right Balance Between Sovereign Debt Impunity and Market Chaos: Argentina and the Foreign Sovereign Immunities Act*, 36 U. PA. J. INT'L L 433 (2015).
61. *China's Harassment of Civilian Ships and Aircraft in the South China Sea Reminds Us Why We Need More U.S. Freedom of Navigation Operations*, LAWFARE (Dec. 16, 2015).
62. *Be Careful What You Wish For: The Risks of Taiwan Shifting Its South China Sea Policy Against China*, LAWFARE (Dec. 11, 2015).
63. *The U.S. Should Hold Its Fire Over China's Boycott of UNCLOS Arbitration*, LAWFARE (Nov. 26, 2015).

III.   List of Cases

Regarding "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition," Fed. R. Crim. P. 16(a)(1)(G)(iii), I have not testified at trial or deposition during the previous 4 years. However, I have been retained as an expert in the matters below since 2021:

4

| Approximate Date of Testimony | Case Name & Docket No. | Court |
|---|---|---|
| No testimony, retained as expert in 2021 | AlJabri v. Mohammed Bin Salman, Civil Action No. 1:20-cv-02146 | U.S. District Court for the District of Columbia |
| No testimony, retained as expert in 2023 | United States v. Quanzhong An, et. al., CR No. 22-460 | U.S. District Court for the Eastern District of New York |

Respectfully submitted,

*/s/ Julian Ku*

_____

Julian G. Ku