

JARROD L. SCHAEFFER
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

June 11, 2025

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, S1 24 Cr. 346 (BMC) (TAM)

Your Honor:

  We represent Linda Sun in the above-referenced matter and, on behalf of both defendants, respectfully submit this response to the government's adjournment request.[1] (Dkt. 109.)

  The government's reasons do not justify further delay. The defendants have already begun preparing for trial, they continue to endure unrelenting and unfair press coverage,[2] the government continues to restrain almost all of their assets, and their costs stemming from this prosecution—including those related to their legal representation—continue to mount. The defense has no desire to inconvenience the Court and would, of course, need to assess whether any actual superseding indictment requires an adjournment, but the current record does not justify overriding the defendants' rights to a speedy trial.[3]

  Before explaining why the government's request should be denied, a few key considerations—studiously ignored by the government—are worth highlighting:

- **The government asked to try this case in July 2025.** The current trial date was *the government's* proposal—one that surprised everyone. That unexpected proposal was welcomed by the defendants, who consistently have sought a

---

[1]  The defense submits this response promptly to be helpful and to avoid any inconvenience to the Court. Since the timing of the government's request is entirely the product of its own actions, however, we note the impropriety of its attempt to compel a response "in two days" purportedly to avoid disclosures due in more than two weeks. (Dkt. 109 at 1.)

[2]  Such publicity is highly prejudicial to the defendants and, at a minimum, will require substantial additional precautions during *voir dire*.

[3]  For all of the reasons articulated herein, the defense strenuously opposes any further exclusion of time under the Speedy Trial Act.

speedy trial. The Court was initially skeptical but ultimately so ordered the agreed trial date.

- **The government insisted at the outset that it had thoroughly reviewed all classified material.** The government filed its motion seeking a Section 2 hearing pursuant to the Classified Information Procedures Act ("CIPA") on September 23, 2024. (*See* Dkt. 36.) In that motion, it represented that "[t]he government has *already completed its review* of any potentially discoverable classified information." (*Id.* at 12 (emphasis added).)

- **The government's anticipated superseder is based on material it has had for almost a year.** The government's "new charges" are based on a new theory first articulated in a May 23, 2025 search warrant, which sought permission to *re-search* material seized back in July 2024. In sum, the government waited until shortly before trial to consider new charges based on material in its exclusive possession since before the defendants were arrested, before they were indicted, and before the first superseding indictment was obtained.

With that context, we proceed to the merits of the government's request. As discussed below, the adjournment should be denied and further relief against the government may be appropriate.

*First*, the government asks to delay the trial because it "is in the process of preparing a responsive submission ordered by the Court following the *ex parte* conference on May 30, 2025," and "it appears unlikely that the government can complete the submission with sufficient time for the Court to thoroughly adjudicate the motion before July 28, 2025." (Dkt. 109 at 1.)

The government's assertion tacitly concedes that it has not—and does not plan to—comply with its obligations in time for trial. That is remarkable given the government's bold claim more than eight months ago that it had "already completed its review of any potentially discoverable classified information." (Dkt. 36 at 12.) And it is galling as the government assured the Court six months ago that no classified materials were "helpful or material to the defense" or "discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, or Federal Rule of Criminal Procedure 16 . . . ." (Dkt. 58-2 at 3.)

While the defense cannot know everything that occurred during the *ex parte* conference on May 30, 2024, the government's statement that the Court required additional briefing to "adjudicate" the pending CIPA motion and is "considering" ordering the "dissemination of classified substitutions" strongly suggests that the government gave short shrift to its disclosure obligations when conducting its CIPA reviews. (Dkt. 109 at 1.) And having failed to exercise due care in discharging those obligations, the government should not be permitted to weaponize its failure.[4]

---

[4] On May 30, 2025, the defense requested that the Court require the government to make certain certifications to ensure that its efforts to collect and review classified material were sufficient. (*See* Dkt. 107.) Those certifications seem all the more appropriate in light of recent events and the government has not objected. As such, the defense respectfully renews its request.

***Second***, the government claims some delay is inevitable because "neither counsel for Linda Sun has the requisite security clearance" and "the clearance process . . . typically takes two months to complete." (*Id.*)  The undersigned previously held a TS/SCI clearance as recently as 2023.  And regardless how long it "typically takes" to obtain clearances, the government can certainly move more quickly when necessary to comply with court deadlines—particularly when both lead counsel for Ms. Sun are themselves former federal prosecutors.[5]  Nor does the government provide any explanation why it did not begin the process of seeking clearances many months ago when the CIPA proceedings began.

***Third***, the government omits that its potential "new charges" are based on a new theory that conflicts with the current charges and undermines both the government's forfeiture allegations and its prior asset seizures.[6]  (Dkt. 109 at 1.)  Given clear inconsistencies despite purported "substantial overlap of facts and witnesses" (*id.*), only the most myopic review could miss how the government's new theory (and any evidence related thereto) constitutes textbook exculpatory material as to the current charges.  And to top it off, this newest theory flows from material that the government seized almost a year ago.

After finally reviewing material in its possession before trial, the government apparently discovered serious flaws in the current charges.  So mere weeks before its pretrial disclosures are due, the government went back to the drawing board and crafted a new theory for new charges that it likes better—leaving for another day the uncomfortable fact that its new theory is inconsistent with the charges already pending against the defendants.[7]  "The United States Attorney," however, "is the representative not of an ordinary party to a controversy, but of a sovereignty" bound to "govern impartially," and a prosecutor's interest "in a criminal prosecution is not that [he] shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).  Shoehorning contradictory theories into yet another superseding indictment at the last minute is inconsistent with that obligation.

***Fourth***, as noted above, the government's new theory conflicts with the current charges and, in at least the defense's view, material supporting the new theory clearly constitutes material

---

[5] Lead counsel for Mr. Hu currently have active security clearances.

[6] The government's new theory is articulated in the May 23, 2025 search warrant, which sought authority to re-search material seized in July 2024.  As we understand that theory, the contemplated charges are likely to have other serious legal and factual flaws, but we put those aside temporarily for purposes of this letter.

[7] In light of the significant inconsistencies between the current charges and the government's new theory, it is specious to suggest that "the conduct that forms the basis for the anticipated new charges would be admissible to show the defendants' motive, intent, knowledge, and lack of accident under Federal Rule of Evidence 404(b)(2) with respect to the existing charges." (Dkt. 109 at 1–2.)  It is possible some facts might be contorted to portray them in such a manner, but doing so here would be inconsistent with the government's obligations.  *Cf. Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness.").

required to be produced pursuant to *Brady*, *Giglio*, and their progeny. Accordingly, the defense request that the Court order the immediate production of all evidence—including documents, testimony, witness statements, and other material—related to the government's potential new charges based on its new theory.

***Fifth***, despite ongoing efforts to liquidate the defendants' few unrestrained assets, they continue to labor under serious financial difficulties ensuring continued representation by their counsel of choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–148 (2006) (recognizing constitutional right to counsel of choice); *United States v. Bonventre*, 720 F.3d 126, 128 (2d Cir. 2013) (affording adversarial pre-trial hearing to defendants seeking to use restrained funds for legal representation). To the extent the government's conduct occasions any delay of this trial, it will only force the defendants to incur additional legal costs. At the same time, the government's new theory further undermines the already tenuous basis supposedly justifying its indiscriminate asset seizures under its existing theory.

As the Court is aware, the defense has attempted to resolve those issues with the government; however, the further delays sought by the government and its new inconsistent theories have forced their hand. The defense therefore requests one week in which to file a motion for a hearing pursuant to *United States v. Monsanto*, 491 U.S. 600 (1989), and asks that the government be given an equal period in which to respond so that a hearing can be scheduled expeditiously. *See United States v. Monsanto*, 924 F.2d 1186, 1191 (2d Cir. 1991), *abrogated in part on other grounds by Kaley v. United States*, 571 U.S. 320 (2014) (stating that "a pre-trial adversary hearing is required where the question of attorney's fees is implicated").

***Sixth***, as the past few months have shown, the government's repeated representations regarding whether discovery was complete have been aspirational at best. (*See, e.g.*, Dkts. 101, 105, 106.) To the extent the government's conduct occasions any delay of this trial, the defense asks that material required to be produced pursuant to 18 U.S.C. § 3500 and *Giglio* be provided at least eight weeks in advance of trial. The additional time should forestall any similar completeness issues, while also addressing the prejudice to the defendants resulting from any adjournment and the attendant disruption to their trial preparations.

***

The government's adjournment request is the latest in a series of questionable and prejudicial actions that includes efforts to impose pre-indictment bail conditions, unwarranted seizures of property, the unexplained destruction of case records and evidence, and violations of Ms. Sun's Fourth Amendment rights. The request is "narrowly tailored" only in the sense that it

ensures the government will benefit not only from those actions but from inexplicable inaction and delay. The Court should deny the government that windfall at the expense of the defendants.

We thank the Court for its consideration of this request, and are happy to provide any additional information it may require.

Respectfully submitted,

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

*Counsel for Linda Sun*

cc: Counsel of Record (via ECF)