```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
 UNITED STATES OF AMERICA,                        :
                                                  :
                           Plaintiff,             :   **MEMORANDUM DECISION AND**
                                                  :   **ORDER**
                    - against -                   :
                                                  :   24-cr-346 (BMC)
 LINDA SUN,                                       :
    also known as "Wen Sun," "Ling Da             :
    Sun," and "Linda Hu," and                     :
 CHRIS HU,                                        :
                                                  :
                           Defendants.            :
----------------------------------------------------------X
```

**COGAN**, District Judge.

In August 2024, a grand jury returned a ten-count indictment against Linda Sun and her husband, Chris Hu, charging them with various offenses relating to fraud, immigration, money laundering, and the Foreign Agents Registration Act ("FARA"). Before the Court could rule on defendants' motion to dismiss, the Government filed the first superseding indictment (S-1) on February 4, 2025. The Court denied defendants' renewed motion to dismiss the S-1 on May 5, 2025. The Government then filed the second (S-2), third (S-3), and fourth (S-4) superseding indictments on June 25, 2025, September 4, 2025, and October 2, 2025, respectively.

Defendants' motion to dismiss has been fully briefed and renewed as to each indictment. For the reasons that follow, defendants' motion is denied.

## BACKGROUND

Sun previously served in the New York State ("NYS") government in various roles, including Deputy Chief Diversity Officer, Deputy Chief of Staff for the NYS Executive Chamber, and Deputy Commissioner for Strategic Business Development for the NYS Department of Labor. As part of her routine duties, Sun liaised with components of the People's

Republic of China ("PRC"), such as the Jiangsu Trade & Business Representative Office ("JTBRO"). The Government alleges that Sun acted as an undisclosed agent of PRC and the Chinese Communist Party ("CCP").

During the onset of the COVID-19 pandemic, Sun was a member of a team of NYS government employees responsible for procuring personal protective equipment ("PPE"). The U.S. representative to JTBRO recommended to Sun several PRC-based PPE vendors that could meet NYS's PPE needs. But Sun independently had connections to two business entities that also made PPE: one operated by Sun's cousin (the "Cousin Company") and another operated by Hu and a business associate (the "Associate Company"). Ostensibly, it was Sun's job to forward the JTBRO representative's list of recommended PPE vendors to NYS procurement officials. And she did, but before doing so, allegedly Sun doctored the JTBRO representative's list of PPE vendors, substituting one of those vendors for the Cousin Company.

The indictment's description of this is not subtle. It alleges that Sun represented "to NYS procurement officials that the Cousin Company 'came recommended by the Jiangsu Chamber of Commerce,' that the [JTBRO] representative had helped 'screen potential vendors,' and that the Cousin Company's surgical mask was the 'gold standard.'" Separately, the indictment alleges that Sun stated in another document that the Associate Company was "referred by the Chinese chamber of commerce." Thereafter, NYS entered into several multi-million-dollar contracts with the Cousin Company and Associate Company. Between 2020 and 2021, because of those contracts, Sun and Hu allegedly received kickback payments worth a combined $2.3 million, which Hu allegedly laundered through bank accounts opened in the name of a close relative.

Sun moves for dismissal on two grounds. First, the indictment fails to sufficiently allege facts supporting the offenses charged in Counts Eight through Eleven. Second, the acts charged in Counts Eight through Eleven fall outside the statute of limitations.

**LEGAL STANDARD**

"A criminal defendant is entitled to an indictment that states the essential elements of the charge against him." United States v. Pirro, 212 F.3d 86, 91 (2d Cir. 2000) (citations omitted). Otherwise, the indictment "offends both the Fifth and Sixth Amendments" – the Fifth Amendment because it does not ensure against double jeopardy and "the defendant cannot be assured that he is being tried on the evidence presented to the grand jury . . . or that the grand jury acted properly in indicting him;" the Sixth Amendment because the defendant would not "be informed of the nature and cause of the accusation against him." Id. at 92 (citations and quotation omitted); United States v. Thompson, 141 F. Supp. 3d 188, 193 (E.D.N.Y. 2015), aff'd, 896 F.3d 155 (2d Cir. 2018). The Federal Rules of Criminal Procedure thus provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). These requirements are typically satisfied when an indictment "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Pirro, 212 F.3d at 92).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the

elements necessary to constitute the offence intended to be punished.'" Id. (quoting United States v. Carll, 105 U.S. 611, 612 (1882)). "[W]hen the definition of an offense includes 'generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, – it must descend to particulars.'" United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) (quoting Russell v. United States, 369 U.S. 749, 765 (1962)). "Similarly, when one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." Pirro, 212 F.3d at 93 (internal quotation marks and quotation omitted).

Furthermore, an indictment cannot stand "if the facts alleged do not constitute an offense as a matter of law." United States v. Heicklen, 858 F. Supp. 2d 256, 262 (S.D.N.Y. 2012); see also United States v. Aleynikov, 676 F.3d 71, 75-76 (2d Cir. 2012) ("a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute" (citation and footnote omitted)). However, "at the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial." United States v. Dawkins, 999 F.3d 767, 780 (2d Cir. 2021) (cleaned up). In other words, if the actions alleged could not possibly form the basis of liability of the offenses charged in an indictment, such an indictment must be dismissed. But if an indictment includes allegations of actions that *could* satisfy all of the essential elements of a charged offense, the indictment will survive a motion to dismiss.

Notably, "[t]he dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citing United States v. Nai Fook Li, 206 F.3d 56, 62 (1st Cir.

4

2000) (en banc)). Dismissal of charges is an "extreme sanction," United States v. Fields, 592 F.2d 638, 647 (2d Cir. 1978), that has been upheld "only in very limited and extreme circumstances," and should be "reserved for the truly extreme cases," "especially where serious criminal conduct is involved." United States v. Broward, 594 F.2d 345, 351 (2d Cir. 1979).

Indictments generally do not "have to specify evidence or details of how the offense was committed." United States v. Wey, No. 15-cr-611, 2017 WL 237651, at *5 (S.D.N.Y. Jan. 18, 2017). In reviewing a motion to dismiss an indictment, the court must take the allegations of the indictment as true. Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952).

## DISCUSSION

The S-2 added the following counts against both Sun and Hu, all of which remain in the S-4: Conspiracy to Commit Honest Services Wire Fraud, 18 U.S.C. §§ 1346, 3551 et seq. (Count Eight); Honest Services Wire Fraud, 18 U.S.C. §§ 2, 1343, 1346, 3551 et seq. (Count Nine); Federal Program Bribery, 18 U.S.C. §§ 2, 666(a)(1)(B), 3551 et seq. (Count Ten); and Conspiracy to Commit Offenses Against the United States, 18 U.S.C. §§ 371, 3551 et seq. (Count Eleven). The S-4 also added against Hu two counts of Tax Evasion, 18 U.S.C. § 3551 et seq., 26 U.S.C. §§ 7201 (Counts Eighteen and Nineteen). Hu does not challenge the tax evasion counts.

### I. Counts Eight and Nine – Honest Services Wire Fraud

The indictment charges Sun and Hu with conspiring to commit and committing honest services wire fraud. Specifically, it alleges that they "conspire[d] to devise a scheme and artifice to defraud NYS of its intangible right to the honest services of SUN through kickbacks." The offenses are predicated on Sun's alleged misrepresentations that components of the PRC government had recommended the Cousin Company and Associate Company as PPE vendors. Sun argues that the Government failed to sufficiently allege the elements of materiality and

5

fraudulent intent. Because the facts alleged are sufficiently specific and can form the basis of liability for honest services wire fraud, Sun's motion to dismiss Counts Eight and Nine is denied.

A.     **Materiality**

Sun argues that the Government fails to sufficiently allege that the above representations were material by pointing to other counts in the indictment where "the government *did* allege materiality" by using the phrases "material facts" and "materially false," and that the "conspicuous lack of any similar allegations" in Counts Eight and Nine "is telling—and dispositive." Sun appears to argue that if the Government had included the word "material" in Counts Eight and Nine, these counts would be sufficiently alleged. But that is not the case.

As Sun correctly points out, because materiality is "implicit in the statute, rather than explicit," the Government must explicitly allege materiality. See United States v. Pirro, 212 F.3d 86, 93 (2d Cir. 2000). But designating a representation "material" does not make it so, and failing to designate a representation "material" does not make it immaterial. See United States v. Klein, 476 F.3d 111, 113-14 (2d Cir. 2007), as corrected (Mar. 8, 2007). To reconcile Klein and Pirro, the logical conclusion is that the requirement to explicitly allege materiality does not translate to "explicitly using the word material in the indictment." What must be explicitly alleged, rather, is the content of the representation itself. Indeed, this is what enables a defendant to challenge, and a court to rule on, the representation's materiality. Put differently, the question is not whether the Government explicitly used the word "material" in the indictment, but whether the representation explicitly referenced in the indictment is material. As stated in Kousisis, which Sun heavily relies on, materiality "[r]esemble[s] a but-for standard" asking "whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." Kousisis v. United States, 145 S. Ct. 1382, 1396 (2025).

Here, the representations explicitly referenced in the indictment are Sun's representations that the Cousin Company and Associate Company were recommended as PPE vendors by a component of the PRC government. Sun correctly notes that the "crux of the alleged misrepresentation is" whether they were "not, in fact, promoted to Ms. Sun by an organ of the PRC."[1] The relevant inquiry therefore is whether the NYS procurement officials would be induced or motivated to contract with the Cousin Company and Associate Company but for Sun's alleged misrepresentation that they were PRC-promoted. The only logical answer is "no" because, without the alleged misrepresentation, the NYS procurement officials would have never known the Cousin Company or Associate Company existed. The indictment thus sufficiently alleges materiality as to Counts Eight and Nine.

B.   **Fraudulent Intent**

Sun argues that that the standard for alleging fraudulent intent under 8 U.S.C. § 1346 is governed by United States v. Jabar, 19 F.4th 66, 79 (2d Cir. 2021), and that honest services wire fraud was not abrogated by the Supreme Court in Kousisis, 145 S. Ct. at 1396. As discussed below, the Court need not answer whether Kousisis abrogated the Second Circuit's standard for alleging honest services wire fraud because Sun is wrong under either standard.

Relying on Jabar, Sun states the Government "must allege some 'contemplated harm to the victim." But that is not entirely correct. The Government must only do so if the alleged "misrepresentations amount[] only to a deceit." Id. at 76-77. Indeed, Jabar itself, in the same paragraph Sun quotes, outlines other ways the Government may allege fraudulent intent without the allegation being "coupled with a contemplated harm" to the victim:

---

[1] Sun then states it would be "farcical to infer that her alleged misstatement was material based on an assumption that New York would contract *only* with companies specifically sponsored by the PRC." That is a red herring. Forgetting for a moment that this is a FARA case, Counts Eight and Nine have nothing to do with FARA, and the but-for question is not whether New York would otherwise contract only with PRC-promoted companies.

7

> Essential to a scheme to defraud is fraudulent intent. Fraudulent intent may be inferred "[w]hen the 'necessary result' of the actor's scheme is to injure others. Intent may also be proven "through circumstantial evidence, including by showing that defendant made misrepresentations to the victim(s) with knowledge that the statements were false. "Because an intent to deceive alone is insufficient to sustain a wire fraud conviction, "[m]isrepresentations amounting only to a deceit . . . must be coupled with a contemplated harm to the victim." "Such harm is apparent where there exists a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver." Proof of actual injury to the victim is not required because the scheme need not have been successful or completed.

Id. (cleaned up). Relevant here, the S-4 alleges in detail that Sun doctored an email to induce NYS officials to enter a contract with the Cousin Company, and falsely stated that the Associate Company was recommended by a component of the PRC government. For that reason, the S-4 sufficiently alleges Sun "made misrepresentations to the victim(s) with knowledge that the statements were false," see id., and fraudulent intent is sufficiently alleged under Jabar.

Assuming Kousisis changed anything, post-Kousisis cases from the Second Circuit compel the Court to reject Sun's argument as well. United States v. Lopez, 143 F.4th 99, 109 (2d Cir. 2025), provides a concise guide to sufficient allegations under § 1346:

> First, for § 1346 to apply, the conduct at issue must involve bribery and/or kickbacks . . . Second, the requisite fiduciary relationship [can be] an employer-employee relationship, or a similar relationship . . . Third, an employee's violation of his employer's codes of conduct . . . may establish such a breach . . . Fourth, the presence of foreign defendants or an international component to a scheme does not categorically remove an offense from the ambit of § 1346.

The Government thus may allege, irrespective of any international component, that defendants received kickbacks through a scheme executed during an employee-employer relationship if the scheme violated the employee's code of conduct. The S-4 clearly does so by alleging that defendants "received a portion of the profits from the contracts with the Cousin Company as kickbacks … [that Sun] was a member of a team of NYS government employees responsible for

8

procuring [PPE] from around the world", and that the scheme was made "[d]espite her ethics training" from the "Comprehensive Ethics Training Course." Under either Jabar or Lopez, the S-4 sufficiently alleges fraudulent intent.

Hu separately argues that Count Nine (the substantive honest services wire fraud) cannot apply to him under Percoco because he is "a private person with no agency-based fiduciary duty to the public." But as Hu admits, "Percoco does not preclude aiding-and-abetting liability." Still, Hu asserts that "[n]o other allegations claim – or provide any factual particularity – regarding whether, what, or how Mr. Hu supposedly aided or abetted Count Nine." That is not true. The indictment alleges that as part of this kickback scheme, the Associate Company – which Hu in part operated – "sold 'millions of dollars' worth of PPE sourced in the PRC to the NYS government." It further alleges that Hu "laundered the unlawful proceeds from the Cousin Company" that also stemmed from the scheme. The indictment does not paint Hu as an innocent bystander – it more than adequately alleges that Hu aided, abetted, induced, or procured the offense committed by Sun, as required by 18 U.S.C. § 2(a).

## II.  Counts Ten and Eleven – Federal Program Bribery

Sun argues that Counts Ten and Eleven remain defective but simultaneously concedes that Count Ten "now contains language . . . recognized as sufficiently alleging an explicit quid pro quo." Sun only seriously takes issue with Count Eleven, arguing that it fails to "allege an offense as to the first object of its conspiracy." The facts underlying Counts Ten and Eleven are virtually the same as those underlying Counts Eight and Nine: Sun's allegedly doctored email and false statements that enabled the Cousin Company and Associate Company to secure contracts with NYS, and from those contracts Sun and Hu received kickbacks. Because the

Court already found that the facts alleged are sufficiently specific and can form the basis of liability of Counts Eight and Nine, Sun's motion to dismiss Counts Ten and Eleven is denied.[2]

## III. Statute of Limitations

Sun argues that Counts Eight through Eleven must be dismissed as violating the statute of limitations. These counts were added in the S-2 dated June 25, 2025, alleging conduct that occurred "about and between March 2020 and August 2020." Defendants argue that these counts are "barred by the statute of limitations [because under 18 U.S.C. § 3282,] offenses charged in both counts must be brought 'within five years next after such offense shall have been committed.'"

"Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment." United States v. Grady, 544 F.2d 598, 601 (2d Cir. 1976). Filing a superseding indictment "at any time while the first indictment is still validly pending, if and only if it does not broaden the charges[,] cannot be barred by the statute of limitations." Id. Assuming without deciding that Counts Eight through Eleven broadened the charges in the S-1, the statute of limitations for Counts Eight through Eleven were tolled when the S-2 was filed on June 25, 2025. The Court need not answer whether the S-3 and S-4 broadened the charges (and thus whether the tolling reset on October 2, 2025) because, even if they did, the offenses charged would still fall within the five-year statute of limitations. In short, Sun's arguments about whether these counts "relate back" to corresponding language in the S-1 are without merit.

---

[2] Sun's argument is basically this: Because Sun had no authority to "select vendors, approve contracts, authorize payments, or exercise control over state funds," it is legally impossible for her to "embezzlement, theft, fraud, or conversion of state funds." For support, Sun points out that the indictment "never alleges that she had the *ability* – let alone that she did – misapply any state funds." That argument is contradicted by the language of 18 U.S.C. § 666 itself.

As Sun points out, a "crime is complete as soon as every element in the crime occurs." United States v. Sampson, 898 F.3d 270, 279 (2d Cir. 2018). Further, because the "conspiracy to commit honest services fraud is not the sort of conspiracy which requires an overt act . . . the government can satisfy the relevant statute of limitations up until an honest services fraud conspiracy's objectives have either been accomplished or abandoned, not when its last overt act was committed." United States v. Mangano, 128 F.4th 442, 478 (2d Cir. 2025) (internal quotation marks omitted). The S-4 alleges that, in "connection with the Cousin Company contracts with the NYS government . . . Cousin provided payments to [defendants] totaling approximately $2.3 million during 2020 and 2021." The kickback scheme involving the Cousin Company predicates all of Counts Eight through Eleven. Thus. the S-4's allegation that the kickback payments – the object of the conspiracy – continued into 2021 is enough to survive dismissal because any date in 2021 falls within five years of October 2, 2025, when the S-4 was filed. Of course, at trial, the Government will bear the burden of proving these facts beyond a reasonable doubt (i.e., that the honest services fraud conspiracy's objectives were accomplished or abandoned within the statute of limitations). But pretrial dismissal is unwarranted.

## IV. Previously Decided Counts

Although Sun states she "accepts that the Court's prior determinations remain the law of the case," Sun dedicates much of her renewed motion to dismiss challenging the Court's May 5, 2025 decision denying Sun's first motion to dismiss, as it relates to Count One (Conspiracy to Violate FARA) and Count Fourteen (Money Laundering Conspiracy). But that ruling is the law of the case, from which the Court will not deviate absent "cogent and compelling reasons." See Johnson v. Holder, 564 F.3d 95, 99 (2d Cir. 2009). Defendants fail to offer any cogent or compelling reason to revisit that ruling.

11

### A. Count One – Conspiracy to Violate FARA

Sun argues that an unindictable person cannot be an unindicted coconspirator. Sun attempts to distinguish between (1) a person immune from prosecution and (2) a person who by statute cannot commit the crime. The former, Sun says, is still culpable despite being immune, and thus can properly be an unindicted coconspirator; but the latter cannot be culpable and thus cannot be an unindicted coconspirator. The argument is still unavailing.

As the cases Sun relies on points out, even "a person who cannot commit a substantive offense may guiltily conspire with another who can commit it." Farnsworth v. Zerbst, 98 F.2d 541 (5th Cir. 1938) (citing United States v. Holte, 236 U.S. 140 (1915)) (emphasis added). This makes sense, because culpability is necessary to indictability, not the other way around. Whether someone is culpable surely bears on their indictability, but whether someone is indictable has no bearing on their culpability. Put differently, whether someone cannot be prosecuted because of diplomatic immunity, or cannot commit the offense because of an "express legislative policy," that person can still be culpable in a conspiracy. Thus, even if "PRC consular officials are affirmatively excluded from FARA's scope by express legislative policy," they may still be culpable, unindicted members of a FARA conspiracy.

### B. Count Fourteen – Money Laundering Conspiracy

Sun argues that dismissal is warranted because the "bare bones allegations . . . linking the money laundering conspiracy to Ms. Sun's alleged activity in violation of FARA" were removed from the superseding indictments. Sun further protests that the indictment fails to "allege essential facts [as to whether the proceeds] were concealed through international monetary transactions." Sun is wrong, and the indictment's description of her alleged role in catalyzing Hu's lobster exportation business is illustrative. The Government alleges that Sun "requested in return for her participation in the [All-China Federation of Returned Overseas] meeting

conference" that her coconspirators "continued to assist [Hu's] PRC business affairs," namely, "The Lobster Project Entry Agreement." The indictment describes Sun's communications with her alleged coconspirators, who "agreed to make efforts to personally intervene as to PRC customs issues and arranged a business meeting . . . to discuss the importation of lobsters into the PRC." Sun asked her coconspirator to help Hu, stating it would be his "first investment in the PRC and that [he] did not understand much." In these communications, Sun allegedly used "coded language for an economic benefit to be conferred" to Hu, including a quoted use of the word "loan." The indictment alleges that Hu's "PRC-based business activities generated millions of dollars" which Hu then "repatriated . . . into the United States" by means that "conceal[ed] the original provenance of the funds." These funds were allegedly used by Hu and Sun to "purchase real estate properties and luxury automobiles." Because it is "logically possible that some of the alleged transactions" occurred internationally, any further argument "implicates the nature of the Government's trial proof and not the sufficiency of the indictment." United States v. An, 733 F. Supp. 3d 77, 96 (E.D.N.Y. 2024) (footnote omitted).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
   October 8, 2025