

JARROD L. SCHAEFFER
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

October 15, 2025

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, S4 24 Cr. 346 (BMC) (TAM)

Your Honor:

  We represent Linda Sun in the above-referenced matter and write respectfully to request supplemental *in limine* rulings and related relief in light of the government's production of material pursuant to 18 U.S.C. § 3500 on October 6, 2025 (the "3500 Material"), and the Court's denial of Ms. Sun's motion to dismiss on October 8, 2025. (Dkt. 190.)

**I. Request for Election and Preclusion Regarding Count One**

  "An indictment is impermissibly duplicitous where . . . it combines two or more distinct crimes into one count . . . and . . . the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001); *see also United States v. Willis*, 475 F. Supp. 2d 269, 272 (W.D.N.Y. 2007) ("Duplicitous pleading may be found not only where a single count charges that the defendant committed two different offenses, but also where a count charges that a particular offense was committed on more than one occasion."). As Ms. Sun has argued (*see* Dkts. 46 at 46, 57 at 14–15, 179 at 2–3), Count One alleges "multiple separate and distinct conspiracies in a single count," *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992), by claiming that Ms. Sun conspired with different people—including, supposedly, various officials affiliated with the People's Republic of China ("PRC"), the "Relative," "CC-1," "CC-2," the "Associate," and the "Company-1 Owner"[1] (Dkt. 140 at 1 ¶ 1)—at different times over an eight-year period, in pursuit of different alleged objects, and for different alleged purposes.

---

[1] The government now also suggests that Chris Hu is a co-conspirator even though he is not charged in Count One. (*See* Dkt. 140 at 1 ¶ 1.) It is highly questionable whether evidence concerning Mr. Hu's supposed involvement in an uncharged offense would be admissible at trial given the clear unfair prejudice to him.

The government has never denied that Count One is duplicitous, and the discovery and 3500 Material that it has since produced confirms the lack of any unified scheme. The separate conspiracies encompassed in Count One thus do not fall within the "exception to the rule prohibiting the inclusion of two crimes in the same count of an indictment" for "acts that could be charged as separate counts of an indictment . . . [but] . . . could be characterized as part of a single continuing scheme." *Sturdivant*, 244 F.3d at 76 (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)). There is no allegation of "mutual dependence among the participants" in the supposed conspiracies, *United States v. Geibel*, 369 F.3d 682, 692 (2d Cir. 2004) (quoting *United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000)), nor any facts alleged to suggest that members of the purported conspiracies agreed to join "what he [or she] knew to be a collective venture directed toward a common goal." *United States v. Eppolito,* 543 F.3d 25, 47 (2d Cir. 2008) (quoting *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000)). There are no claims that PRC consular officials knew or interacted with CC-1, CC-2, or the Associate. Indeed, no allegations link officials at the PRC consulate with CC-1, CC-2, or the Associate.

"If a court [] find[s] a count of an indictment to be duplicitous, the court may dismiss that count, or it may require the government to elect to proceed upon only one of the distinct crimes charged in the count." *Willis*, 475 F. Supp. 2d at 272. The Court has denied Ms. Sun's motions to dismiss Count One. (*See* Dkts. 100, 190.) But courts recognize "that prior to a defendant's conviction, prejudice . . . can be avoided by having the government elect to proceed based upon only one of the distinct crimes included within a duplicitous count." *Sturdivant*, 244 F.3d at 79.

Here, Ms. Sun will suffer substantial prejudice at trial as a result of Count One's duplicity. "The relevant policy considerations guiding a court's determination of whether a defendant was actually prejudiced by a duplicitous indictment include," among other things:

> [A]voiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.

*Id.* at 75 (quoting *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981)). All weigh against the government here.

*First*, significant uncertainty will arise as to whether any general verdict of guilty subsumes a finding of not guilty as to one or more of the separate conspiracies encompassed by Count One. For instance, a verdict that Ms. Sun did *not* conspire with any PRC consular officials regarding political and policy advice provided to the New York Executive Chamber ("NYEC") could be concealed by a separate finding that a conspiracy existed three years earlier involving CC-1 with respect to a visiting delegation of other individuals. (*Compare* Dkt. 184 ("S-4") ¶ 133(e) *with id.* ¶ 133(c).)

*Second*, there is a serious risk that the jury will not be unanimous as to which, if any, of the separate conspiracies embedded in Count One might meet the required legal elements. If some jurors are persuaded that an alleged conspiracy existed with CC-1 to accomplish one purpose, while others are persuaded that a separate agreement existed with unrelated and unconnected PRC

officials to accomplish a different purpose at some other point, the jury might still vote to convict Ms. Sun after improperly aggregating their differing views across separate conspiracies.

*Third*, the amalgamation of separate conspiracies in Count One deprives Ms. Sun of adequate notice regarding the contours of each. For example, she cannot know who is alleged to be a member of which agreement, when or how each agreement supposedly was reached, which purposes allegedly were the goal of which agreement, or when those purposes were accomplished or abandoned. Shoehorning into Count One any conduct with some perceived connection to the PRC, Chinese people, or Chinese businesses or associations deprives Ms. Sun of adequate notice regarding the particulars of any alleged agreements with various unrelated co-conspirators over the course of eight years.

*Fourth*, the duplicity of Count One would confuse the appropriate basis for any sentencing. For instance, the government alleges that Ms. Sun "received substantial economic and other benefits from representatives of the PRC government and the CCP, including the facilitation of millions of dollars in transactions for the PRC-based business activities of [her] husband" while allegedly undertaking activities in concert with PRC consular officials (S-4 ¶ 16), but it alleges primarily payment of "local travel arrangements, including hotel accommodations," in connection with conduct allegedly undertaken in concert with CC-1 and CC-2 (*see id.* ¶ 81). That difference in potential loss amounts alone would have a seismic effect on any calculation of an appropriate sentence, even apart from all of the conduct-related mitigation or enhancements that might apply (or not) to conduct alleged in connection with the separate conspiracies. *Cf. Sturdivant*, 244 F.3d at 78 (finding prejudice based, *inter alia*, on uncertainty with respect to sentencing considerations).

*Fifth*, for all of the foregoing reasons—especially the lack of adequate notice regarding each of the alleged agreements with unrelated individuals—the duplicity of Count One also frustrates the clarity and specificity necessary to ensure against double jeopardy in subsequent prosecutions.

Accordingly, Ms. Sun requests that the Court require the government to elect the conspiracy on which it will proceed at trial, and to identify that conspiracy based on its co-conspirators, time frame, and objectives.

Further, because allowing evidence of other conspiracies subsumed in Count One would only reprise the same duplicity concerns, Ms. Sun requests that the government be precluded from offering evidence of the other alleged conspiracies on which it does not proceed. Such evidence also would be unfairly prejudicial propensity evidence. *See, e.g.*, *Roldan v. Artuz*, 78 F. Supp. 2d 260, 277 (S.D.N.Y. 2000) ("Evidence of uncharged crimes is generally inadmissible so that the jury does not convict the defendant based on a perceived predisposition towards criminal conduct that is deserving of punishment rather than for guilt of the charged offense."). Indeed, "the potential for prejudice is "greatly enhanced" where another alleged crime or bad act "is similar to the one for which the defendant is on trial," *Williams v. Henderson*, 451 F. Supp. 328, 331 (E.D.N.Y.), *aff'd*, 584 F.2d 974 (2d Cir. 1978) (quoting *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971)), and all of the separate conspiracies embedded in Count One purport to allege agreements to violate FARA. *See also Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("[Other bad acts that bear a close resemblance to actions alleged in the current case are likely to

run afoul of Rule 404(b), because they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts.").

## II. Request for Waiver or Preclusion of Material Reflecting Selective Privilege Assertions

Certain documents provided by the government in its 3500 Material and discovery contain redactions based on purported assertions of privilege. Specifically, the documents appear to be records obtained by the government from the NYEC as to which the state agency asserted privileges and withheld certain redacted portions prior to their production to the government.

"Federal common law recognizes a variety of forms of 'executive privilege' that protect governmental information from public disclosure." *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544, 552 (S.D.N.Y. 2002). "Th[e] most commonly invoked form of executive privilege" is the "deliberative process privilege," which "allows government officials 'freedom to debate' policies in private." *Id.* (quoting *In re Sealed* Case *(Espy)*, 121 F.3d 729, 737 (D.C. Cir. 1997)). The "deliberative process privilege" applies to "certain agency records reflecting internal advisory opinions, recommendations, and deliberations," and it is intended "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the [g]overnment." *Nat. Res. Def. Council v. United States Env't Prot. Agency*, 954 F.3d 150, 155 (2d Cir. 2020) (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Generally, "[i]n order for the privilege to apply, the agency record at issue must be (1) an inter-agency or intra-agency memorandum or letter; (2) pre-decisional; and (3) deliberative." *Id.* (citing *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)).

Based on that definition and factors that courts consider, the same deliberative process privilege asserted with respect to certain 3500 Material and discovery would reach documents containing Ms. Sun's alleged deliberations and advice. Among other things, the S-4 alleges that:

- "In or about January 2019," Ms. Sun responded to an email from Politician-1's chief of staff seeking any "flags" about particular organizations, and Ms. Sun "flagged the TECO representatives as '[n]ot friends of us,'" further explaining that though they were unlikely to disrupt an event "[i]t's more a political issue because it's a China vs. Taiwan thing. If they come, they are likely to send out a political statement saying that [Politician-1] invited them hence giving the Taiwanese government recognition." (S-4 ¶ 29(c).)

- "On or about February 27, 2019," Ms. Sun told "a member of Politician-1's staff to decline a request for a meeting between a mayor of a Taiwanese city and Politician-1." (*Id.* ¶ 29(d).)

- "In late August 2019," Ms. Sun "provided an edit to a draft statement by Politician-1" by asking, "Politically can we refrain from using the phrase 'Republic of China' so as to avoid creating an international incident by recognizing Taiwan[?]" (*Id.* ¶ 29(k).)

- "On or about September 5, 2019," and "[a]fter various members of the governor's office asked [Ms. Sun] to weigh in regarding the appropriate response," she "advised against attending" a "national day event" for Taiwan "at a hotel in Manhattan." (*Id.* ¶ 29(l).)

Such communications fall within the scope of "internal advisory opinions, recommendations, and deliberations," *Nat. Res. Def. Council*, 954 F.3d at 155, that may be protected by an assertion of the deliberative process privilege. Nevertheless, the NYEC provided such material to the government and it is anticipated to be offered at trial.

In contrast, other NYEC material produced by the government contains a number of redactions. For instance, a document provided in the 3500 Material, 3500-MB-009, is an email exchange between NYEC personnel discussing an invitation to Politician-2 to attend an event. Certain internal discussion is redacted for "Deliberative Privilege." Similar redactions are present elsewhere in the government's productions. A document labeled EDNY_000901, for example, is an email from Ms. Sun to a colleague in the NYEC where she asks for "approval/guidance for a few things." One topic is a trade mission to China by the Lieutenant Governor, while the other is redacted for "Deliberative Process." Yet another, NYS-LS-EDNY-00016833, is an email chain among NYEC personnel to which Ms. Sun was added that discusses a trip to China; the contribution of the Special Counselor to the Governor—to which Ms. Sun then responds directly—is entirely redacted based on "Deliberative Process."[2]

It thus appears that NYEC chose to waive privilege over some material with respect to Ms. Sun while still attempting to assert the deliberative process privilege—with the government's blessing—as to other material that (*i*) was responsive to the government's requests for information in this case and (*ii*) is relevant enough to constitute discovery and 3500 Material for the government's witnesses.

Privilege, however, "cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). "In order to prevent such use, the 'at issue' doctrine precludes a party from 'disclosing only self-serving communications,' while 'barring discovery of other communications that an adversary could use to challenge the truth of the claim.'" *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 74 (S.D.N.Y. 2009) (quoting *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *3 (Bankr. S.D.N.Y. Feb. 20, 2007)). Additionally, "[t]he deliberative process privilege is qualified" and "it may be overcome by a showing of need, which is determined on a case by case basis." *In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d 544 at 553. And "[c]ourts in this Circuit have found implied waiver where the privilege holder asserts a claim that in fairness requires examination of protected communications." *Cuomo v. Off. of New York State Att'y Gen.*, 754 F. Supp. 3d 334, 365

---

[2] A number of other documents also reflect redactions for "Attorney-Client Privilege" that remove portions of discussions involving Ms. Sun about highly relevant topics, including donations of personal protective equipment ("PPE") from the Henan and Jiangsu provinces that feature prominently in the S-4. (*See, e.g.*, S-4 ¶¶ 43 (alleging that Ms. Sun acted "to further the public interests, policies, or relations of the PRC . . . by fostering a closer economic and political relationship between Henan Province and New York State"), 95 (alleging that Ms. Sun "helped draft a memorandum of understanding between Jiangsu Province and New York State").)

(E.D.N.Y. 2024) (quoting *In re Grand Jury Procs.*, 219 F.3d 175, 182 (2d Cir. 2000)) (cleaned up).

The government permitted selective waiver by the NYEC in this case. Its production of redacted 3500 Material and discovery suggests that it has not challenged the NYEC's skewed privilege assertions. *Compare Madanes v. Madanes*, 199 F.R.D. 135, 152 (S.D.N.Y. 2001) ("Where selective disclosure results in the privilege being used as a sword as well as a shield or where it will prejudice the adversary at trial, the remedy is to declare the privilege waived as to all other communications concerning the same subject matter."). Ms. Sun was not in any position to do so, because the documents were not produced pursuant to her request. And Ms. Sun could not make her own requests, because the government successfully moved to quash subpoenas that she served, including on the NYEC. (*See* Dkts. 181, 191.)

As a result, Ms. Sun is relegated to receiving only documents obtained and produced by the government, which currently reflect selective privilege assertions that prejudice her defense. *Contra In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (explaining that "the fairness doctrine" operates "to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information"). The redactions deprive Ms. Sun of full visibility into potential exhibits and what the government has affirmatively designated as 3500 Material for its witnesses. The redactions also deprive Ms. Sun of evidence that might be used to compare other internal policy discussions to those the government seeks to criminalize here. Drawing such comparisons may be relevant and helpful, because they could confirm that Ms. Sun's alleged communications are consistent with other political judgments and advice offered to advance her employer's interests—and not those of some foreign principal. *See* Fed. R. Evid. 401; 22 U.S.C. §§ 611(c)(1), (c)(1)(i) (requiring that the government prove beyond a reasonable doubt that Ms. Sun "act[ed] . . . at the order, request, or under the direction or control, of a foreign principal" by "engag[ing] within the United States in political activities for or in the interests of such foreign principal").

Ms. Sun presently is hampered by the NYEC's selective privilege assertions that the government—which alone was in a position to challenge them—endorsed. It would be unfair to permit Ms. Sun to be prejudiced by those decisions. *Cf. In re Grand Jury Subpoena dated Aug. 9, 2000*, 218 F. Supp. 2d at 553 (quoting *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 885 (1st Cir. 1995)) ("When alleged misconduct is at issue, . . . 'the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process.'").

The NYEC is not a party to this case, but the government is. Ms. Sun respectfully requests that the Court (*i*) direct the government to procure and produce unredacted copies of all material as to which the deliberative process privilege was asserted; or (*ii*) in the alternative, preclude the government from offering into evidence communications pertaining to Ms. Sun that otherwise would come within the deliberative process privilege.

We thank the Court for its attention to this matter.

                                                    Respectfully submitted,

*/s/ Jarrod L. Schaeffer*

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

*Counsel for Linda Sun*

cc:     Counsel of Record (via ECF)