UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
  UNITED STATES OF AMERICA,                    :
                                               :
                              Plaintiff,       :
                                               :
                  - against -                  :    **ORDER**
                                               :
  LINDA SUN,                                   :    24-cr-346 (BMC)
      also known as "Wen Sun," "Ling Da        :
      Sun," and "Linda Hu," and                :
  CHRIS HU,                                     :
                                               :
                              Defendants.       :
---------------------------------------------------------- X

**COGAN**, District Judge.

      This order addresses four motions *in limine* pending before the Court.  Defendants'

motions *in limine* are granted in part and denied in part, and the Government's motions *in limine*

are granted in part and denied in part.

      1.     The Government's unopposed motion to admit defendants' statements to law

enforcement on July 22, 2024, under Bruton v. United States, 391 U.S. 123 (1968), is granted.

      2.     The Government's motion to preclude defendants from introducing two specific

portions of defendants' statements to law enforcement on July 22, 2024, as hearsay, is granted.

Although the first portion might be a present-sense impression, it is irrelevant and otherwise

unfairly prejudicial or confusing.  The second portion is not a present-sense impression because

the "contemporaneity requirement [means Hu's] then-existing state of mind cannot be offered to

prove that he had the same state of mind in the past." See United States v. Tahlil Mohamed, No.

18-cr-0603, 2022 WL 15493545, at *5 (E.D.N.Y. Oct. 26, 2022) (citing United States v.

Cardascia, 951 F.2d 474, 486 (2d Cir. 1991); see also Williamson v. United States, 512 U.S. 594,

599 (1994) ("[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts [which are hearsay]").

3.      The Government's motion to preclude defendants from offering evidence or arguing that there can be no violation of the Foreign Agents Registration Act ("FARA") where the alleged conduct at issue ostensibly conforms with current federal foreign policy is denied. Such evidence or argument is relevant to whether Sun knew she had to register with the Attorney General. See United States v. Michel, No. 19-cr-0148, 2023 WL 7140057, at *1 (D.D.C. Mar. 30, 2023) (permitting "the defense to argue that [defendant] did not act willfully or knowingly because he subjectively understood himself to be furthering American interests"); United States v. Angwang, No. 20-cr-0442, 2022 WL 3223187, at *2 (E.D.N.Y. Aug. 8, 2022) (defendant's "contention that he was working in parallel with the PRC officials rather than at their direction presents a question for the jury.").

4.      The Government's motion to preclude defendants from offering evidence or arguing that the instant FARA prosecution is improper, absent an initial FARA Letter of Inquiry ("LOI"), is mostly moot because defendants represent that they do not intend to argue "that the instant FARA prosecution is legally insufficient" on this ground. However, the Court grants the Government's motion to the extent defendants seek to introduce evidence or testimony about LOIs in other FARA cases. Although courts have allowed defendants to inquire into DOJ policy as it bears on a specific witness's credibility, it is inappropriate to do so to distinguish one prosecution from another. Compare United States v. Saipov, No. 17-cr-0722, 2023 WL 4199415, at *7 (S.D.N.Y. June 27, 2023) (allowing inquiry into DOJ "policy in place at the time of [defendant's] arrest concerning the electronic recording of custodial statement") with United States v. Benvie, No. 19-cr-1715, 2020 WL 888699 at *2 (D.N.M. Feb. 24, 2020) ("The Court

2

does not need to treat DOJ policy as law, and the decision to bring these charges . . . is within the discretion of the U.S. Attorney's Office").

5.    The Government's motion to preclude defendants from arguing that the New York Executive Chamber ("NYEC") is not a "section of the public" under FARA is granted. Although defendants may be correct that "FARA was enacted to ensure disclosure of foreign influence directed at the general public and federal decisionmakers, not to criminalize internal policy discussions at the state level," that is not what is happening here.  First, it would make no sense to exclude members of state governments from "the public."  But more germane is that when foreign agents do register with the Attorney General, attempting to influence state government officials is a commonly disclosed activity.  See, e.g., U.S. Dep't of Just., *Report of the Attorney General to the Congress of the Administration of [FARA] for the six-months ending December 31, 2024* (May 2025), at 104 (#6401 "Activities: . . . government relations assistance on policy matters before . . . select state governments"); id. at 117 (#7374 "Activities: . . . policy advice and outreach to U.S. and state government officials").

6.    The Government's motion to preclude defendants from offering "use of pressure, authority or power" as the definition of "influence" is granted, but the Court reserves its decision on the definition to be used in jury instructions.  Defendants' interpretation would be inconsistent with FARA's legislative history, which contemplated a broader definition, including mere persuasion or inducement.  See Foreign Agents Registration Act of 1938, as amended, P.L. 104-65, 109 Stat. 699 (Dec. 19, 1995) (replacing ". . . any other activity [that could] indoctrinate, convert, induce, persuade, or in any other way influence . . ." with "any activity that [could] in any way influence . . .").

7.      The Government's motion to preclude defendants from "attacking purportedly improper motives of the prosecution team" is denied as moot because defendants represent that they do "not intend to argue that the government's motivation is relevant to the jury's determination in this case."

8.      The Government's motion to preclude defendants from arguing that the instant prosecution is improper or unsound because of a purported shift in the Justice Department's FARA enforcement priorities is mostly moot because defendants represent that they do "not presently intend to introduce the Attorney General's memorandum and understand[] that policy statements standing alone do not change the law."  However, the Court agrees with defendants that it would be improper or inequitable for the Government to prosecute a case inconsistent with its own policy.  See Rinaldi v. United States, 434 U.S. 22 (1977) (reversing district and appellate court decisions denying joint motion to vacate conviction obtained from an inconsistent application of DOJ policy).  Should this become an issue, the Court will address it at trial.

9.      The Government's motion to preclude defendants from argument or cross-examination of government witnesses regarding the purportedly improper seizure of personal property is granted in part and denied in part.  Defendants will be permitted to explore the issue on cross examination only if it bears on the testimony or credibility of the specific witness. Defendants may not elicit testimony on the issue to broadly argue about or characterize the nature of the investigation or execution of the search warrant.

10.     The Government's motion to preclude the defense from arguing that the bank fraud conspiracy charge is unsound because the victim bank did not suffer any financial loss, had unclean hands, or was negligent is moot because defendants represent that they have no intention of doing so.

11.     The Government's motion to elicit testimony through hypothetical questions on the issue of materiality for the fraud charges, from a representative of a financial institution and various NYS government employees, is granted.  "[P]ersonal knowledge of a fact 'is not an absolute' to Rule 602's foundational requirement" and so "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior."  United States v. Cuti, 720 F.3d 453, 458-59 (2d Cir. 2013) ("As this case illustrates, 'what-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud").

12.     The Government's motion to preclude defendants from arguing that there could not have been an honest services fraud scheme because the victim received the benefit of its bargain is granted.  However, defendants may make this argument as it relates to any other fraud charges as relevant, and the Court will issue an appropriate jury instruction.

13.     The Government's motion to preclude defendants from arguing that Sun could not commit honest services fraud because she lacked the ability to direct, control, or make decisions about which vendors would be awarded contracts, is granted.  An employee's honest services are delineated by their scope of employment and here, as defendant's point out, Sun's scope of employment did not include "the power or ability to approve contracts, ensure certain vendors were selected, or meaningfully promise that any particular vendor *would* be selected."  It would therefore be irrelevant and otherwise confusing to the jury for the defense to argue that something outside of Sun's scope of employment bears on whether Sun denied her employer the honest services limited to her scope of employment.

14.     The Government's motion to allow it to offer "other acts" evidence in the form of: (a) Sun's activities in the PRC; (b) actions by the NY legislature about Taiwan; (c) the alleged

2018 visa fraud; (d) defendants' activity with the Associate Company; and (e) Sun's NYS

financial disclosures is granted in part and denied in part.

a.      The Government may offer evidence and argument about Sun's activities

in the PRC as direct evidence of the charged crimes or under Rule 404(b).  International travel to

the country for which a defendant is alleged to be an agent of is paradigmatic of direct evidence

in FARA cases.  See, e.g., United States v. Michel, No. 19-cr-0148, 2024 WL 1603362, at *17

(D.D.C. Apr. 12, 2024) (denying motion for judgment of acquittal and discussing witness's

testimony that defendant traveled to China to meet with a coconspirator and a PRC minister);

United States v. Menendez, 759 F. Supp. 3d 460, 494 (S.D.N.Y. 2024) (denying motion for

judgment of acquittal and discussing how "the government introduced evidence [of defendant's]

trip to Egypt and Qatar[.]").

b.      The Government may not offer evidence or argument about the NY

legislature's supposed actions to improve bilateral relations with Taiwan.  The Government's

proffered evidence includes various proposed resolutions, or a statement of a politician,

recognizing either "Taiwan Heritage Week" or "Taiwan Heritage Day."  None of these

resolutions, however, appear to have ever been approved by both the NY Senate and NY State

Assembly.  In New York, "executive action in enforcing . . . legislation may not go beyond

stated legislative policy" and the executive may not "prescribe a . . . device not embraced by that

policy."  Broidrick v. Lindsay, 39 N.Y.2d 641, 644 (1976); see also Rapp v. Carey, 44 N.Y.2d

157, 163 (1978) ("the executive . . . is accorded great flexibility in determining the methods of

enforcement") (citing N.Y. Const., art. IV § 3).  Here, because none of the resolutions appear to

have ever been adopted into legislation, whether the executive's actions "go beyond" or

"prescribe a device not embraced" by those resolutions is irrelevant and would likely confuse the jury.

        c.     The Government may offer evidence and argument about Sun's alleged visa fraud in 2018. In the Second Circuit, "evidence of [uncharged] crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'" United States v. Paulino, 445 F.3d 211, 221 (2d Cir. 2006) (citing Fed. R. Evid. 404(b)). But Rule 404(b) "is not controlling [when] the indictment contains a conspiracy charge [because] 'uncharged acts may be admissible as direct evidence of the conspiracy itself.'" United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) (quotations omitted). Further, evidence of the uncharged crimes is not unfairly prejudicial because it is practically identical to the charged crime. See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (rejecting a Rule 403 challenge where evidence "did not involve conduct more inflammatory than the charged crime"); United States v. Abu-Jihaad, 630 F.3d 102, 133 (2d Cir. 2010) (considering whether facts surrounding the uncharged crime were "especially worse or [more] shocking than the transactions charged"). Here, the facts underlying the uncharged crime are probative to the charged conspiracy and may therefore be offered as direct evidence thereto, and any propensity-related concerns may be mitigated by an appropriate jury instruction.

        d.     The Government may not offer evidence or argument about the uncharged fraud involving the Associate Company. Unlike the facts underlying the uncharged visa fraud, the facts underlying the uncharged fraud relating to the Associate Company are not probative of any charged conspiracy and fail under Rule 404(b). As the Government admits, "only the kickbacks from the Cousin Company give rise to standalone charges", despite Sun having allegedly "facilitated contracts between NYS and *both* companies, for the same purpose and in

the same time period[.]" But the differences between the alleged frauds are more important than their similarities. The Cousin Company fraud allegedly involved doctoring an email from a third party to make it seem as if that third party recommended the Cousin Company as a PPE vendor. The Associate Company fraud allegedly involved Sun herself recommending the Associate Company as a PPE vendor but misrepresenting that it was "referred by [the] Chinese chamber of commerce."[1] Put differently, the Cousin Company fraud is based only on an act – doctoring the third party's email – and the Associate Company fraud is also based on a mental state – knowledge that the Associate Company was never referred by the Chinese chamber of commerce. Because these frauds "involved different parties and different types of transactions[,]" they "are not inextricably linked[.]" United States v. Kurland, No. 20-cr-0306, 2022 WL 2669897, *5 (E.D.N.Y. July 11, 2022).

        e.      The Government may offer evidence and argument about Sun's NYS financial disclosures because it is inextricably intertwined with the alleged fraud. As the Government points out, this evidence is probative of Sun's "intent to conceal her conduct." Courts in this Circuit routinely find that uncharged acts showing a defendant concealing unlawfully obtained money is direct evidence of the offense related to that money. See, e.g., United States v. Guo, No. 23-cr-0118, 2024 WL 1862022, at *9 (S.D.N.Y. Apr. 29, 2024) (admitting evidence of uncharged conduct done "to obscure and conceal the [defendant's] assets, including fraud proceeds"); United States v. Barrett, 153 F. Supp. 3d 552, 567 (E.D.N.Y. 2015) ("Failure to report significant sums of money in tax filings can be direct evidence of[,] and is relevant to defendant's participation in, money laundering").

---

[1] Ostensibly, the Government would also have to prove that it was Sun who represented that the Associate Company was referred by the Chinese chamber of commerce. The indictment is vague on this point, noting only that the document reflecting that representation was "found in the computer owned by [both] defendants."

15.     The Government's motion to allow cross examination of Hu, if he testifies, about the 2017 decision by a NYS administrative law judge finding that Hu willfully made false representations in order to obtain unemployment benefits and subsequently lied about his conduct in an administrative hearing, is granted.  The Second Circuit has ruled twice that an adverse credibility finding by another judge is proper for cross examination under Rule 608(b).  See United States v. Terry, 702 F.2d 299, 316 (2d Cir. 1983) (affirming propriety of cross examination into "prior occasions when [the witness's] testimony in other cases had been criticized by the court as unworthy of belief"); United States v. Cedeño, 644 F.3d 79, 83 (2d Cir. 2011) (finding abuse of discretion to prevent defendant from questioning government witness about state court's finding that the witness "expressly contradicted an incident report he wrote on the day of the arrest and that his effort to explain the contradiction was 'unconvinc[ing].'").

16.     The Government's motion to preclude evidence or argument about the existence or non-existence of specified classified information is granted.

17.     The Government's motion to preclude evidence or argument inconsistent with facts known to defense counsel, including facts made known in classified discovery, is granted.

18.     Defendants' motion to preclude any evidence or argument regarding CC-1's conduct or any involvement of Association-1 unless the Government proffers evidence that CC-1 was supervised or controlled by the PRC is reserved until trial.  The Government represented that it would proffer electronic communications and other evidence to support such a finding.  The Government must first do so before offering evidence or argument that CC-1 was supervised or controlled by the PRC.

19.     Defendants' motion to preclude evidence or argument regarding gifts or benefits allegedly received by Sun absent a sufficient showing of some connection between that benefit

and a directive or request by the PRC is granted in part and denied in part.  The gifts and

benefits, without more, are not probative of an agency relationship.[2]  The Government "must

establish the existence of an agency relationship" because FARA "is not intended to cover

persons . . . whose acts may incidentally be of benefit to foreign interests." Att'y Gen. v. Irish N.

Aid Comm., 530 F. Supp. 241, 256 (S.D.N.Y. 1981), aff'd, 668 F.2d 159 (2d Cir. 1982).

Agency under FARA does not require control, and "it is sufficient to establish agency [by

showing] that defendant is a 'representative' of the [foreign entity], or acts at its 'request.'" Irish

N. Aid Comm., 668 F.2d at 161.  As it applies here, the indictment offers both – that Sun's

actions made her a representative of the PRC because she allegedly acted in furtherance of PRC

policy about Taiwan, or that Sun's actions followed a specific request by a PRC principal.  The

allegations about gifts and benefits, if offered to prove the agency relationship, must be

connected to a fact – one of Sun's actions – supporting the agency relationship.

> 20.     Defendants' motion to preclude argument about unindictable co-conspirators is

denied as moot because of the Court's order on defendants' motion to dismiss on those grounds.

See United States v. Sun, No. 24-cr-0346, 2025 WL 2857987, at *6 (E.D.N.Y. Oct. 8, 2025).

> 21.     Defendants' motion to preclude evidence or argument regarding the defendants'

wealth and luxury items is denied.  The Government's representation that it "does not

contemplate introducing lifestyle evidence to appeal to class resentments" answers half the

question.  See United States v. Motovich, No. 21-cr-0497, 2024 WL 3303723, at *2 (E.D.N.Y.

July 2, 2024) ("appeals [to class prejudice] are improper and have no place in a court room").

---

[2] They might be probative of bribery or another relationship sounding of *quid pro quo*.  See Menendez, 759 F. Supp. 3d at 479 ("extortion and bribery *quid pro quo* does not require a link between each specific benefit and a single official act, and instead may be proven through evidence of a scheme involving payments at regular intervals in exchange for specific official acts as the opportunities to commit those acts arise – i.e., this for these or these for these, not just this for that.") (cleaned up). But that is not the question here.

The Government's next representation that it intends to admit such evidence "as direct proof of the FARA, money laundering, and [PPE] fraud charges, and as evidence . . . under Rule 404(b)" answers the other half. See United States v. James, 607 F. Supp. 3d 246, 264 (E.D.N.Y. 2022) ("The evidence may show that Defendant's funding for his personal spending came from a pre-existing, legitimate source of income, or, conversely from his business through which he carried out the alleged scheme. If the latter, then the wealth evidence is relevant to Defendant's motive to commit the alleged offenses.").

22.     Defendants' motion to preclude argument or suggesting that Sun's alleged conduct constituted "espionage" or implicated national security is granted. Because "this is not an espionage prosecution," any reference to espionage or spying would be inflammatory and unfairly prejudicial. See United States v. Tao, No. 19-cr-20052, 2022 WL 252019, at *6 (D. Kan. Jan. 27, 2022). Moreover, the Government's position that "Sun's political activities would have been legal had she registered and disclosed them publicly" is not entirely accurate. For a FARA charge, the "actus reus is not 'engaging in political activities' but rather the omission of failing to register." United States v. Michel, No. 19-cr-0148, 2022 WL 4182342, at *15 (D.D.C. Sept. 13, 2022). Allowing national security rhetoric would shift focus to the political activities, not the failure to register, thereby peppering "the trial with national security overtones." Tao, 2022 WL 252019, at *6. Evidence on the issue is a separate question. If "evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." United States v. Yousef, 327 F.3d 56, 111 (2d Cir. 2003). So, the Court will preclude argument about espionage or national security unless such verbiage appears in otherwise admissible evidence.

23. Defendants' motion to preclude certain portions of the proposed expert testimony from Professor Julian Ku is denied. Most of defendants' concerns are addressed by the Government's representations that it would not elicit testimony about:

- Professor Ku's review of the First Superseding Indictment and press release

- Professor Ku's linkage between the UFWD and the overseas associations headed by CC-1 and CC-2

- The Chinese People's Political Consultative Conference ("CPPCC") beyond qualifications for membership

- CC-2's membership in the CPPCC

- Canadian judicial finding that the UFWD engages in espionage and intelligence gathering

- the meetings between Association-1 and the UFWD

- CC-1's interactions with Sun

Defendants' remaining concerns about Professor Ku's testimony boil down to relevance and unfair prejudice. Professor Ku's testimony is relevant because it will "help the jury determine a critical fact at issue: whether [Sun] acted subject to the direction or control of the PRC government or its officials." See United States v. Liang, No. 23-cr-10130, 2025 WL 92634, at *4 (D. Mass. Jan. 14, 2025). Indeed, Professor Ku's anticipated testimony is practically on all fours with the purpose of the expert testimony in Liang:

> Determining whether [defendant] acted subject to the PRC government's direction requires understanding whether and how the PRC government is connected with various individuals and entities with whom [defendant] purportedly met. The indictment alleges that [defendant] coordinated with and provided information to officials at the . . . PRC consulate in New York, and the United Front Work Department ("UFWD") [and that] the UFWD works to further the goals of the Chinese Communist Party . . . [The expert's] anticipated testimony is probative of the relationship between these entities and the PRC government and the role that each plays in supporting PRC government initiatives.

Id.  Although the <u>Liang</u> court did exclude portions of expert testimony threatened to "infect . . .

the trial with anti-China sentiment," that is not an issue here given the Court's ruling on the use

of "espionage" and "national security" and the Government's representations on Ku's testimony.

Should either party seek to provide Professor Ku's report to the jury, the parties will propose

redactions based on the Government's representations.

24.     The Government's motion to compel disclosure of Rule 16(b) and defense trial

exhibits is denied as moot because defendants represent that they "will promptly produce to the

government any required reciprocal discovery and defense exhibits once they are identified" but

that "defendants have not yet determined what evidence, if any, they may offer" during their

cases-in-chief.  As stated in the Court's order denying defendants' motion to compel, "[a]t some

point, the integrity of the process resides in the hands of the attorneys who represent to the Court

that they [will] diligently perform[] their ethical and professional responsibilities."  <u>United States</u>

<u>v. Sun</u>, No. 24-cr-0346, 2025 WL 3006797, at *3 (Oct. 27, 2025).  Counsel for the Government

must trust counsel for the defense in a similar vein here.  If that trust proves misplaced, it will

mean a delay of the trial while the Government assesses late-produced evidence.

25.     Defendants' motion to direct the government to procure and produce unredacted

copies of all material as to which the deliberative process privilege was asserted by the NYEC

or, in the alternative, preclude the government from offering into evidence communications

pertaining to Sun that otherwise would come within the deliberative process privilege, is granted

in part and denied in part.  The deliberative process privilege typically arises in Freedom of

Information Act cases, and the privilege is inapplicable when the deliberative process is "closely

tied to the underlying litigation", at which point the "privilege evaporates."  <u>See</u> <u>Lawrence v.</u>

<u>Suffolk Cnty.</u>, No. 19-cv-2887, 2022 WL 855380, at *11 (E.D.N.Y. Mar. 23, 2022) (citations

and quotations omitted); <u>Torres v. City Univ. of New York</u>, No. 90-cv-2278, 1992 WL 380561, at *8 (S.D.N.Y. Dec. 3, 1992) ("When the decision making process is itself at issue . . . the deliberative process privilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information"). Sun is the former Deputy Chief of Staff for the NYEC, so her own communications within the NYEC might well fall under that privilege. And indeed, several documents redacted by the NYEC are Sun's own emails. In one email, Sun asks for "approval/guidance for a few things", one of which is "a trade mission to China by the Lieutenant Governor", and the other is redacted for privilege. In another email, the Special Counselor to the Governor ostensibly asked Sun about a trip to China. Sun's response was not redacted, but the Special Counselor's inquiry was. This raises obvious problems under Rules 106 and 403, and the Government should have recognized this when it received these documents from the NYEC. If the Government cannot obtain unredacted versions of these materials, it will not be permitted to enter the redacted versions into evidence without first showing why the redacted version should not be excluded under Rules 106 or 403.

26.     Defendants' motion to require the Government to elect a conspiracy on which it will proceed at trial and to identify that conspiracy based on its co-conspirators, time frame, and objectives, is not appropriate for a motion *in limine*. "Whether the government has proven the existence of the conspiracy charged in the indictment and [the] defendant's membership in it, or, instead, has proven several independent conspiracies is a question of fact for a properly

instructed jury." <u>United States v. Johansen</u>, 56 F.3d 347, 350 (2d Cir. 1995). The issue

defendants raise here will be addressed in the Court's instructions to the jury.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      November 3, 2025