

U.S. Department of Justice

United States Attorney
Eastern District of New York

AFM:AAS/RMP/ADR/AS  
F. #2021R00600

271 Cadman Plaza East  
Brooklyn, New York 11201

November 23, 2025

By ECF

The Honorable Brian M. Cogan  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Linda Sun, et al.  
                Criminal Docket No. 24-346 (S-4) (BMC)

Dear Judge Cogan:

        The government respectfully submits this letter in connection with the Court's November 10, 2025 decision permitting the government to offer limited evidence of the defendants' receipt of profits from New York State Department of Health ("DOH") contracts with the Associate Company that is inextricably intertwined with evidence of the Cousin Company fraud. *See* Nov. 10, 2025 Tr. at 22-23. In granting the government's motion, the Court indicated that it would permit the government to offer into evidence a spreadsheet with file name "Practice Exam," marked as Government Exhibit 104.35, that the government alleges defendant Chris Hu used to track profits from these and other contracts (the "Practice Exam Spreadsheet"). However, the Court expressed its concerns about the risks of a "mini trial" on uncharged conduct and cautioned that if the Associate Company was "taking on a life of its own or playing too prominent a role," the Court would reconsider its ruling. *Id*. The Court directed the government to be ready to present a redacted version of the Practice Exam Spreadsheet in that event. For the reasons below, the government respectfully requests that it be permitted to offer into evidence an unaltered copy of the original native Excel version of the Practice Exam Spreadsheet.

        *First*, the government respectfully submits that it has adhered strictly to the Court's decision and has proceeded as promised: it has offered limited evidence about the Associate Company in the course of proving the Cousin Company fraud, and there has been no mini trial. To the contrary, the limited evidence concerning the Associate Company has largely been drawn from the same exact exhibits and testimony as evidence concerning the Cousin Company, and there have been no significant detours into Associate Company topics.

        The government continues to believe that this limited evidence of the Associate Company transactions is "inextricably intertwined with the evidence" of the Cousin Company fraud, "arose out of the same . . . series of transactions" as evidence of the Cousin Company fraud, and is "necessary to complete the story of the crime on trial." *See* ECF No. 248, Gov't Motion at

3-5 (quoting *United States v. Edwards*, 723 F. App'x 48, 49–50 (2d Cir. 2018)). Moreover, the Associate Company evidence is admissible to demonstrate "a pattern of conduct engaged in by defendant and others of which the crime charged was part," *United States v. Mavashev*, 455 F. App'x 107, 112 (2d Cir. 2012), and to provide crucial background about the relationships among the participants in the charged schemes, *see Edwards*, 723 F. App'x at 49–50. The Cousin Company transactions and the Associate Company transactions were part of a single scheme in which defendant Linda Sun used her access and influence in New York state government to steer PPE procurement contracts toward companies owned and controlled by her inner circle, and received financial benefits from the contracts, which were tracked and managed by Hu and which Hu did not report in the couple's joint tax returns. The Associate Company transactions are crucial evidence of every part of that scheme and further demonstrate the nature of Sun's access to government procurement officials, the nature of her relationship and interactions with government accounts payable personnel, the nature of information hid by Hu from his tax preparer and from the IRS, and most importantly the nature of Sun's criminal partnership with her husband.

*Second*, and crucially, the government marked and intends to use at trial the native Excel version of the Practice Exam Spreadsheet rather than a PDF copy. That is because the native version includes formulas embedded in the spreadsheet cells that were specifically programmed into the spreadsheet to make various calculations tracking profits and receipt of those profits by the defendants. The government cannot demonstrate these calculations with a redacted PDF version of the Practice Exam Spreadsheet because the formulas embedded in the metadata of the cells only appear in the live native version. Courts have recognized this particular feature of Excel spreadsheet evidence. *See, e.g., Haywood v. Wexford Health Sources, Inc.*, No. 16-CV-3566, 2021 WL 2254968, at *8 (N.D. Ill. June 3, 2021) ("[A] printed or PDF version of a large Excel spreadsheet is often useless from an evidentiary standpoint.") (citation omitted); *Williams v. Sprint/United Mgmt. Co.*, No. 03-CV-2200, 2006 WL 3691604, at *7 (D. Kan. Dec. 12, 2006) (" . . . Plaintiffs provided valid reasons for the spreadsheets to be produced in their native format. Namely, that the contents of the spreadsheet cells could not otherwise be viewed as the cells contained formulas."). In *Haywood*, the court rightly observed that "Excel spreadsheets do not exist simply to collect and store data. 'One of the unique strengths of Excel software is the ability to implement calculations and formulae that are not evident in a PDF version, so merely a PDF imprint of the surface information is not sufficient.'" *Haywood*, 2021 WL 2254968, at *8 (citation omitted).

Here, Excel formulas are a key component of the most probative evidence in the case. As just one example, on a tab of the Practice Exam Spreadsheet labeled with the Cousin's name, the government will show the jury Row 22, which is labeled with the initials of the Cousin and the Cousin Company. Within that row, the government will argue that the amount in Column D, labeled "Contract amount," represents the amount of a particular contract between the Cousin Company and DOH. The government will argue that the amounts in Columns E through G, labeled "cost," "freight," and "misc," are expenses associated with fulfilling that contract, and that the amount in Column H, labeled "Profit," represents the profit on the contract, calculated as the contract amount in D22 minus the expenses in E22 through F22. To do so, the government will

show the below formula embedded in cell H22, which appears at the top of the spreadsheet when the user clicks upon cell H22:



The formula shows that cell H22 is calculated as the amount in cell D22 minus the sum of the amounts in cells E22 through G22 (in other words, profit equals contract price minus expenses). The government will then argue that the amount in Row 22 that appears in Column I, labeled "me," is programmed to be one half of the amount that appears in Column H. The government will do so by clicking upon and showing the jury the formula in cell I22, which is H22 divided by 2:



The same exercise will be performed with respect to Row 21, which is also labeled with the initials of the Cousin and the Cousin Company. The government will then show the jury that cell N31, labeled "[Cousin] owes me," is programmed to add together the "me" amounts in cells I21 and I22. In other words, the Cousin "owes" Hu Hu's half of the profits of the two DOH contracts with the Cousin Company described in Rows 21 and 22. Next, the government will demonstrate that cell O31, labeled "balance left," is programmed to take the cell N31 amount and subtract various amounts listed in the "In" tab of the Practice Exam Spreadsheet, as depicted below. In other words, Hu has received those funds from the Cousin and they can be subtracted from the total. The government will offer separate evidence supporting the inference that those amounts in the "In" tab were payments from the Cousin ultimately received by, or paid to others for the benefit of, the defendants.



3

The government cannot make these showings in a redacted PDF; it can only do so in the live version of the native Excel spreadsheet. Moreover, as the government previously relayed to the Court, the government will need to invite the jury to make the inference that the contracts listed in the rows described above are in fact the DOH contracts with the Cousin Company. In order to do so, it will need to point to other rows referencing DOH contracts with the Associate Company and other entities so that the jury can make the inference that this portion of the Practice Exam Spreadsheet does in fact relate to DOH contracts as the government argues. Lastly, some cells of the spreadsheet the government will be describing to the jury contain figures that are the sum of (i) funds traceable to the Associate Company contracts, and (ii) funds traceable to other charged offenses such as the laundering of funds through the Business Partner. In those instances, the figures simply will not make any sense at all if the government is forced to remove the amounts related to the Associate Company. Thus, any attempts to create a PDF version and then redact the Practice Exam Spreadsheet would make it impossible for the government to present this crucial exhibit to the jury. (Additionally, any proposal to alter the contents of the native spreadsheet to remove data pertaining to the Associate Company would result in an inappropriate modification of the document and its formulas and would require the government to present the jury with manipulated evidence that would reduce its credibility and, in some instances, no longer make any sense.)

For these reasons, the government respectfully requests that it be permitted to offer the Practice Exam Spreadsheet into evidence in its native Excel format, unaltered.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/ Andrew D. Reich
Alexander A. Solomon
Robert M. Pollack
Andrew D. Reich
Amanda Shami
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (by Email and ECF)
Defense counsel (by Email and ECF)

4