

**JARROD L. SCHAEFFER**
646-970-7339 (direct dial)
jschaeffer@aellaw.com
aellaw.com

256 Fifth Avenue, 5th Floor
New York, New York 10001

December 3, 2025

**By ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Linda Sun, a/k/a "Wen Sun," "Ling Da Sun," and "Linda Hu," and Chris Hu*, S4 24 Cr. 346 (BMC) (TAM)

Your Honor:

      We represent Linda Sun in the above-referenced matter and, on behalf of both defendants, respectfully submit this letter respectfully requesting certain additions and modifications to the Court's proposed jury charge.[1]  (Dkt. 300.)

      I.    <u>GENERAL INSTRUCTIONS: Instruction II.E (Consider Only Crimes Charged)</u>

      As discussed at length during this trial, the government has introduced substantial evidence regarding various alleged crimes that were never charged and cannot form the basis of any conviction.  To the extent the Court permits counts infected by such evidence to go to the jury, the defense requests that the jury be instructed that the defendants are not charged with any crimes related to those entities.  Additionally, the government has offered evidence regarding certain state ethics laws and policies.  The defense likewise requests that the defendants are not charged with violating those state laws or policies.

      The defense therefore proposes the following addition to Instruction II.E:

> **You have also seen and heard evidence relating to certain companies and subjects that do not form the basis of any charges against the defendants.  In particular, there was evidence regarding companies called JCD Distribution, Inc., Air-City, Inc., and Seiko.  There was also evidence concerning transactions with an individual named "Sandy Hong."  The defendants are not**

---

[1] Cognizant of the Court's admonition that its proposed charge embodies rulings on matters presented in the parties' requested instructions, the defense does not repeat and reassert every position and argument previously advanced.  For the avoidance of doubt, however, the defense expressly reserves all rights with respect to those positions and arguments.

**charged with any crimes related to those companies, nor are they charged with any crimes related to transactions with Sandy Hong. Thus, you may not find any defendant guilty based solely on such evidence. I permitted that evidence so that you may consider it to the extent you find it relevant, if at all, to your determination of whether the government has proven elements of a charged offense beyond a reasonable doubt. Keep in mind, however, that you may not consider such evidence to prove that either defendant acted in accordance with any particular character or trait.**

**Similarly, you have also seen and heard evidence relating to certain state laws and policies relating to ethics and conflicts of interest. Again, you may consider such evidence to the extent you find it relevant, if at all, to your determination of whether the government has proven elements of a charged offense beyond a reasonable doubt. Remember, however, that the defendants are not charged with violating any state ethics or conflict-of-interest laws. The only acts, conduct, or offenses that you may consider are those alleged in the Indictment**.

II. GENERAL INSTRUCTIONS: Instruction III.F (Law Enforcement Techniques)

The government has frequently prefaced its introduction of exhibits by stating that certain material had been procured "pursuant to a search warrant." (*See, e.g.*, Trial Tr. at 2391:13–16 ("In preparation for your testimony, did you review text messages that fall in the range of documents that under stipulation S3 come from GX 101, the iPhone seized pursuant to a search warrant?").) Accordingly, the defense requests that, at the same time the Court instructs the jury that such evidence was obtained lawfully, it likewise instruct the jury that merely because evidence was obtained pursuant to a search warrant does not establish or suggest that any crime was committed.

The defense therefore proposes the following alterations to Instruction III.F:

You have seen evidence obtained through court-authorized search warrants. This evidence was obtained lawfully, and the Government has the right to use it in this case. **However, merely because evidence was obtained through court-authorized search warrants does not mean that any crime has been committed. In other words, the fact that evidence may have been obtained through court-authorized search warrants is irrelevant to your deliberations and may not be considered by you in reaching your verdict.**

III. GENERAL INSTRUCTIONS: Instruction III.G (Evidence or Witnesses Not Presented But Equally Available)

The defense requests that the Court omit its current Instruction III.G, and instead issue a missing witness charge as to CC-1. Such a charge is warranted for all of the reasons already discussed on the record during this trial.

In place of the current instruction, the defense requests that the Court give the following:

> **You have heard evidence about [CC-1] and seen messages with [CC-1], who was not called to testify during this trial. The defense has argued that the witness could have given material testimony in this case, and that the government was in the best position to produce this witness.**
>
> **If you conclude that [CC-1] would have given important testimony, you are permitted but not required to infer that the testimony of the uncalled witness would have been unfavorable to the government. In deciding whether to draw an inference that [CC-1] would have testified unfavorably to the government, you may consider whether [CC-1]'s testimony would have merely repeated other testimony and evidence you have already seen.**

Adapted from *Sand, et al.*, Modern Federal Jury Instructions-Criminal, Instr. 6.04.

## IV. GENERAL INSTRUCTIONS: Instruction III.I (Multiple or Single Conspiracies)

The defense requests a minor addition to appropriately clarify for the jury that separate agreements with different individuals does not satisfy the government's burden to prove a single overarching conspiracy.

Specifically, the defense therefore proposes the following addition to the final paragraph of Instruction III.I:

> What is controlling is whether the Government has proved that there was an overall agreement on a common unlawful goal. **It is not sufficient for the government to prove separate agreements with different people.** If you do not find, with respect to a particular conspiracy in a given count, that the Government has proven beyond a reasonable doubt that the defendant you are considering was part of a single conspiracy, then you must find that defendant not guilty of that count.

## V. SUBSTANTIVE INSTRUCTIONS: Instruction IV.C (Failure to Register)

The defense requests a minor revision to the Court's instruction concerning the failure to register element under the Foreign Agents Registration Act ("FARA").

The final sentence states of that instruction states that "[i]t is enough that the Government prove that Ms. Sun had a consciousness of wrongdoing by knowingly acting to advance the interests of a foreign government." (Dkt. 300 at 31.) The use of "by" incorrectly suggests that "consciousness of wrongdoing" may be shown merely by knowing action, which dilutes the willfulness standard to a general intent requirement.[2]

---

[2] For the avoidance of doubt, the defense does not rescind its request for a willfulness instruction that "requires the [g]overnment to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that [s]he voluntarily and intentionally violated that duty," *Cheek v. United States*, 498 U.S. 192, 201 (1991), and respectfully reserves its arguments on that subject.

The defense therefore proposes the following alterations to Instruction IV.C:

It is enough that the Government prove that Ms. Sun had a consciousness of wrongdoing ~~by~~ **while** knowingly acting to advance the interests of a foreign government.

VI. <u>SUBSTANTIVE INSTRUCTIONS: Instruction VIII.A (Scheme to Defraud)</u>

The defense requests several minor revisions to the definition of a *quid pro quo* as described in its instruction regarding the meaning of a scheme to defraud.

First, "[a] jury may infer [] an agreement based on evidence of the official's 'implicit promise to use his official position to serve the interests of the bribegiver.'" *United States v. Benjamin*, 95 F.4th 60, 71 (2d Cir.), *cert. denied*, 145 S. Ct. 982 (2024) (quoting *Evans v. United States*, 504 U.S. 255, 257 (1992)) (emphasis omitted). However, "[t]he agreement constituting the *quid pro quo* must be 'explicit' in the sense that it must be clear that the official 'obtained a payment knowing that the payment was made in return for official acts.'" *Id.* (quoting *Evans*, 504 U.S. at 286 (internal alternation omitted)). In other words, a *quid pro quo* need not be express and may be proven by circumstantial evidence, but the *quid pro quo* still must be explicit.

The defense therefore requests the following alteration to Instruction VIII.A:

The Government does not have to prove that there was an express ~~or explicit~~ agreement, as a *quid pro quo* can be implied from words and actions.

Second, the defense requests a minor addition regarding the timing of any agreement vis-à-vis the alleged official act. While the proposed instruction correctly notes that "[t]he Government is not required to prove an explicit promise at the time of *payment* to perform certain acts" (Dkt. 300 at 38–39 (emphasis added)), "[i]t is the requirement of an intent to perform an act in exchange for a benefit—i.e., the quid pro quo agreement—that distinguishes extortion and bribery from legal and illegal gratuities." *United States v. Rosen*, 716 F.3d 691, 703 (2d Cir. 2013) (quoting *United States v. Ganim*, 510 F.3d 134, 146–47 (2d Cir. 2007)) (emphasis and internal alterations omitted); *see also United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404–05 (1999) ("[F]or bribery there must be a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." (emphasis in original)). Because that intent must exist before an official action is promised or undertaken, any corrupt agreement must precede such official action even if payment comes later.

As such, the defense requests the following alteration to Instruction VIII.A:

The Government is not required to prove an explicit promise at the time of payment to perform certain acts. Rather, the requisite *quid quo pro* may be satisfied upon a showing that an official received a benefit in exchange for her promise to perform official acts on a specific, focused, and concrete question or matter as specific opportunities arise. **The Government must, however, prove beyond a reasonable doubt that any promise or agreement preceded any official act that Ms. Sun allegedly took.**

Third, the defense objects to an instruction providing that "the requisite *quid quo pro* may be satisfied upon a showing that an official received a benefit in exchange for her promise to perform official acts on a specific, focused, and concrete question or matter as specific opportunities arise." (Dkt. 300 at 39.) While that is a correct statement of the law in cases where an "as opportunities arise" theory has been alleged, that is not how the government charged *this* case. Instead, Count Ten alleges that:

> In or about and between March 2020 and August 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LINDA SUN, also known as "Wen Sun," "Ling Da Sun," and "Linda Hu," and CHRIS HU, with SUN being an agent of the NYS government, together with others, did knowingly, intentionally, and corruptly solicit and demand for the benefit of SUN and HU, and accept and agree to accept, one or more things of value, to wit: United States currency, from one or more persons, to wit: the Cousin, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of the DOH involving things of value of $5,000 or more, *to wit: kickback payments from the Cousin in exchange for SUN's facilitation of contracts between the Cousin Company and the NYS government*, while the DOH was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance.

(Dkt. 184 ("S-4") ¶ 145 (emphasis added).) Likewise, the relevant part of Count Eleven alleges that:

> . . . SUN, being an agent of the NYS government, to corruptly solicit and demand for the benefit of SUN and HU, and accept and agree to accept, one or more things of value, to wit: United States currency, from one or more persons, to wit: the Cousin, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of the DOH involving things of value of $5,000 or more, to wit: *kickback payments from the Cousin in exchange for SUN's facilitation of contracts between the Cousin Company and the NYS government*, while the DOH was in receipt of, in any one-year period, benefits in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance, contrary to Title 18, United States Code, Section 666(a)(1)(B).

(*Id.* ¶ 146(b) (emphasis added).) In other words, the *quid pro quo* alleged in the S-4 is not charged as an "as opportunities arise" scheme, but rather as a specific exchange of alleged kickback payments in return for the facilitation of contracts between the Cousin Company and New York during a particular time period. Instructing the jury on a broader "as opportunities arise" theory therefore would be improper; because that is not what was actually charged, the addition of that new theory would constructively amend the S-4.

VII.   SUBSTANTIVE INSTRUCTIONS: Instruction VIII.B (Knowledge)

The defense requests several minor revisions to the knowledge element of the honest services fraud instruction.

First, while the Proposed Charge correctly states that "the government need not prove that the defendant intended to cause economic or financial harm or that any such harm actually resulted from the fraud." (Dkt. 300 at 40.) However, the Second Circuit caselaw holds that while the government "need not prove that the victims of the fraud were actually injured," it must show "that defendants contemplated some actual harm or injury to their victims" related to the services provided. *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006) (internal quotation marks omitted); *see also id.* at 157 (quoting *United States v. Starr*, 816 F.2d 94, 99–100 (2d Cir. 1987) (requiring that that the contemplated harm be some deprivation tied to the "nature or quality of the services . . . that w[ere] the basis of the . . . bargain").

The defense therefore requests the following alteration to the second paragraph of Instruction VIII.B:

The government need not prove that the defendant intended to cause economic or financial harm or that any such harm actually resulted from the fraud. **However, the government must show that the defendant at least contemplated some actual harm or injury might result in connection with any deprivation of honest services.**

Second, the government's theory of fraud in this turns on a belief that Ms. Sun did not disclose certain information. In the context of wire fraud, however, the U.S. Supreme Court has cautioned that "[b]ecause potentially valuable economic information necessary to make discretionary economic decisions is not a traditional property interest," a deprivation of such information "is not a valid basis for liability under § 1343." *Ciminelli v. United States*, 598 U.S. 306, 309 (2023).

The defense therefore requests the following addition to the Court's instruction:

**I caution you, however, that merely depriving someone of potentially valuable economic information necessary to make discretionary economic decisions is not sufficient.**

Third, the defense requests that the Court excise the sentence reading, "Nor is it a defense that the acts or promises undertaken were actually lawful, desirable, or even beneficial to the organization." (Dkt. 300 at 41.) While such an instruction is sometimes given in the context of pure bribery offenses, the relevant count charges honest services wire fraud, which is "is not something different from wire fraud" but rather "a type of wire fraud . . . ." *United States v. Napout*, 963 F.3d 163, 179 (2d Cir. 2020). And "the federal fraud statutes criminalize only schemes to deprive people of traditional property interests. *Ciminelli*, 598 U.S. at 309. The above statement, however, impermissibly allows the jury to convict the defendants of fraud without finding any deprivation or intent to deprive.

VIII. <u>SUBSTANTIVE INSTRUCTIONS: Instruction VIII.C (Material Misrepresentation)</u>

The defense requests the following addition to the material misrepresentation element of the honest services fraud instruction:

> The third element the government must prove beyond a reasonable doubt is that the scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense or concealment of fact. A representation, statement, false pretense, omission or concealment of fact is material if it would reasonably be expected to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision, or if it is one that would reasonably be expected to influence an employer to change its behavior. **You should not presume that something is material merely because it is required by some statutory, regulatory, or contractual requirement as a condition of payment. Nor should you assume materiality because the government would have the option to decline to pay if it knew of the defendant's noncompliance.**

That additional instruction is supported by recent pronouncements from the U.S. Supreme Court, which emphasize that [t]he materiality standard is demanding," *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016), and "substantially narrows the universe of actionable misrepresentations." *Kousisis v. United States*, 605 U.S. 114, 135 (2025); *see also Universal Health Servs., Inc.*, 579 U.S. at 194 (explaining that materiality is not presumed "merely because the [g]overnment designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment" or because "the [g]overnment would have the option to decline to pay if it knew of the defendant's noncompliance").

IX. <u>SUBSTANTIVE INSTRUCTIONS: Instruction X.D (Corrupt Act)</u>

The defense proposes the following alteration to the Court's federal program bribery instruction, in order to make the language more consistent with the facts of this case:

> To act with corrupt intent means to act voluntarily and intentionally with an improper motive or purpose to be influenced or rewarded in connection with ~~some~~ **the alleged** business or transaction ~~of the local Government~~ at issue. This involves conscious wrongdoing or a nefarious state of mind.

X. <u>SUBSTANTIVE INSTRUCTIONS: Instruction XV (Conspiracy to Commit Money Laundering)</u>

The defense requests that the Court modify the portion of its instruction concerning Count Fourteen, which states, "I have already instructed you on the elements of the crime of conspiracy, *and the object offense of the conspiracy here is to commit the offense described in Counts Fifteen through Seventeen*." (Dkt. 300 at 58 (emphasis added).)

The object of the conspiracy charged in Count Fourteen is not the same offense charged in Counts Fifteen through Seventeen; rather, those latter counts are charged under a different money

laundering statute. (*Id.* at 58–59.) Specifically, Count Fourteen charges the defendants with conspiring to violate Title 18 U.S.C. § 1956(a)(2)(B)(i), which provides in relevant part:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds *from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States* . . . knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . .

18 U.S.C. § 1956(a)(2)(B)(i) (emphasis added). In contrast, the substantive money laundering offenses charged against Mr. Hu in Counts Fifteen through Seventeen allege a violation of Title 18 U.S.C. §§ 1957(a), 1957(b), and 1957(d)(1), which provide in relevant part:

> Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

And Counts Fifteen through Seventeen specifically cite as their basis § 1957(d)(1), which provides that "[t]he circumstances referred to in subsection (a) are . . . that the offense under this section *takes place in the United States or in the special maritime and territorial jurisdiction of the United States* . . . ." 18 U.S.C. § 1957(d)(1) (emphasis added).

Because the relevant offenses are different crimes with different elements, the defense respectfully requests that the Court use the defense's proposed charge for the object offense charged in Count Fourteen. Further, the defense notes that its proposed instructions regarding for Count Fourteen did not materially differ from those proposed by the government. (*Compare* Dkt. 280 at 80–84, *with* Dkt. 282 at 82–84.)

XI. <u>Venue</u>

The defense notes that the Court's Proposed Charge does not contain any instruction regarding venue. Accordingly, the defense requests that the Court include the following in its instructions:

> The indictment alleges that some act in furtherance of each offense charged occurred here in the Eastern District of New York. There is no requirement that all aspects of an offense take place in this District. But for you to return a guilty verdict, the government must convince you that some act in furtherance of the crime charged took place here.
>
> Unlike all the elements that I have described, this fact only has to be proved by a preponderance of the evidence. This means the government only has to convince you that it is more likely than not that some act in furtherance of each offense took

place here.  Remember, however, that the government must prove all of the other elements that I have described beyond a reasonable doubt.

Adapted from *Sand, et al.*, Modern Federal Jury Instructions-Criminal, Instr. 3.09.

Finally, on a less substantive note, the defense observes that there are several instances where the Proposed Charge appears to refer specifically to Ms. Sun or a female defendant when the instruction applies more broadly to both defendants. (*See, e.g.*, Dkt. 300 at 24 ("Mere similarity of conduct or the fact that Ms. Sun may have communicated, worked, or assembled with members of a conspiracy and discussed common aims and interests does not necessarily establish their membership in any conspiracy."); *id.* at 25 ("You need not find that the defendant herself committed the overt act.").)  The defense respectfully requests that such references be revised to refer generically to either defendant.

We thank the Court for its attention to this matter.

Respectfully submitted,

*Jarrod L. Schaeffer*

Jarrod L. Schaeffer

ABELL ESKEW LANDAU LLP
256 Fifth Avenue, 5th Floor
New York, NY 10001
(646) 970-7339
jschaeffer@aellaw.com

cc: Counsel of Record (via ECF)